EXHIBIT A

Civil Action Cover Sheet - Case Initiation                    12-Personal Injury  (05/27/16) CCL 0520

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

City of Chicago

v.                                                                          4662325

Jussie Smollett                                          No. _____2019L003898_____

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand  ■ Yes  ☐ No

```
┌──────────────────────────────────────┐
│ FILED                                │
│ 4/11/2019 5:19 PM                    │
│ DOROTHY BROWN                        │
│ CIRCUIT CLERK                        │
│ COOK COUNTY, IL                      │
│                                      │
└──────────────────────────────────────┘
                              (FILE STAMP)
```

**PERSONAL INJURY/WRONGFUL DEATH**
CASE TYPES:
- ☐ 027  Motor Vehicle
- ☐ 040  Medical Malpractice
- ☐ 047  Asbestos
- ☐ 048  Dram Shop
- ☐ 049  Product Liability
- ☐ 051  Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052  Railroad/FELA
- ☐ 053  Pediatric Lead Exposure
- ☐ 061  Other Personal Injury/Wrongful Death
- ☐ 063  Intentional Tort
- ☐ 064  Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065  Premises Liability
- ☐ 078  Fen-phen/Redux Litigation
- ☐ 199  Silicone Implant

**TAX & MISCELLANEOUS REMEDIES**
CASE TYPES:
- ☐ 007  Confessions of Judgment
- ☐ 008  Replevin
- ☐ 009  Tax
- ☐ 015  Condemnation
- ☐ 017  Detinue
- ☐ 029  Unemployment Compensation
- ☐ 031  Foreign Transcript
- ☐ 036  Administrative Review Action
- ☐ 085  Petition to Register Foreign Judgment
- ☐ 099  All Other Extraordinary Remedies

By: __Edward N. Siskel__
     (Attorney)                          (Pro Se)

**COMMERCIAL LITIGATION**
CASE TYPES:
- ☐ 002  Breach of Contract
- ☐ 070  Professional Malpractice
  (other than legal or medical)
- ☐ 071  Fraud (other than legal or medical)
- ☐ 072  Consumer Fraud
- ☐ 073  Breach of Warranty
- ■ 074  Statutory Action
  (Please specify below.**)
- ☐ 075  Other Commercial Litigation
  (Please specify below.**)
- ☐ 076  Retaliatory Discharge

**OTHER ACTIONS**
CASE TYPES:
- ☐ 062  Property Damage
- ☐ 066  Legal Malpractice
- ☐ 077  Libel/Slander
- ☐ 079  Petition for Qualified Orders
- ☐ 084  Petition to Issue Subpoena
- ☐ 100  Petition for Discovery

** Municipal Code of Chicago, § 1-21-010, et seq. & § 1-20-010, et seq.

Primary Email: __edward.siskel@cityofchicago.org__

Secondary Email: __laura.coffey@cityofchicago.org__

Tertiary Email: _____

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address: _____

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
4/11/2019 5:19 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, ) | |
| ) | |
| Plaintiff, ) | No. 2019L003898 |
| v. ) | |
| ) | |
| JUSSIE SMOLLETT, an individual ) | |
| ) | |
| Defendant. ) | |

### COMPLAINT

Plaintiff the City of Chicago ("City"), by its Corporation Counsel, Edward N. Siskel, brings this Complaint under the City's False Statements Ordinance ("FSO"), § 1-21-010, *et seq.* of the Municipal Code of Chicago ("MCC"), and the City's Cost Recovery Ordinance ("CRO"), MCC § 1-20-010, *et seq.* against Defendant Jussie Smollett ( "Defendant"), seeking relief against Defendant for false statements he made to the City, and seeking recovery of the costs of necessary services provided by the City due to Defendant's violations of the MCC, and in support alleges as follows:

### NATURE OF THE CASE

1.      This action is brought by the City to recover civil penalties, statutory treble damages, and attorney's fees and costs arising from Defendant's false statements to the City.  On January 29, 2019, Defendant submitted a false police report claiming that he was the victim of a racist and homophobic beating by unknown attackers.  In reality, Defendant knew his attackers and orchestrated the purported attack himself.  Later, when police confronted him with evidence about his attackers, he still refused to disclose his involvement in planning the attack.   In investigating Defendant's false statements and false police report, the City incurred significant costs in order to provide services reasonably related to Defendant's conduct.

1

## PARTIES

1.      The City is a municipal corporation organized and existing under the laws of the State of Illinois.

2.      Defendant is an actor on the television show "Empire," which is primarily filmed in Chicago. While working on "Empire," and at all times relevant to this Complaint, Defendant resided in the Streeterville neighborhood in Chicago, Illinois.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to the Illinois Constitution art. VI, § 9.

4.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant violated the MCC by making false statements in Chicago, Illinois, and the City incurred significant costs in order to provide services reasonably related to Defendant's false statements.

5.      Venue in Cook County is proper because this cause of action arose in Cook County, Illinois.

## FACTUAL ALLEGATIONS

**A.**      **Defendant orchestrates and plans a fake attack.**

6.      In the fall of 2017, Defendant became friends with an individual named Abimbola Osundairo ("Abel"), who is 25 years old and has worked with Defendant on Empire. During the course of their friendship, Defendant and Abel socialized and exercised together, and Defendant occasionally asked for Abel's assistance in obtaining recreational drugs.

7.     On the morning of January 25, 2019, Defendant texted Abel asking when Abel would be leaving on his upcoming trip to Nigeria with his 27-year-old brother, Olabinjo Osundairo ("Ola").

8.     Abel responded to Defendant via text message that he and Ola were scheduled to depart the evening of January 29, 2019.

9.     After Abel confirmed the date and time of his trip, Defendant texted Abel, "Might need your help on the low.  You around to meet up and talk face to face?"

10.     That same day, January 25, 2019, GPS records and video evidence indicate that Defendant drove Abel from Empire's Cinespace Studio to Abel's apartment.  During the ride, Defendant stated that he was unhappy with the way his employers handled a racist and homophobic letter he had allegedly received three days earlier, and, as a result, he wanted to stage an attack where Abel would appear to batter him.

11.     Video evidence shows that Defendant and Abel reached Abel's apartment at approximately 5:00 P.M. on January 25th.  When they arrived, Ola, who was then living with Abel, came out of the apartment and sat with Defendant and Abel in Defendant's vehicle.  Once inside, Defendant asked Ola if he could trust him and Ola assented.

12.     After Ola attested to his trustworthiness, Defendant and Abel and Ola (the "Osundairo Brothers") discussed their plan to stage a fake racist and homophobic attack on Defendant.  Defendant directed the Osundairo Brothers to stage the fake attack on the evening of January 28, 2019, near his apartment building in Streeterville.  Defendant and the Osundairo Brothers agreed that the Osundairo Brothers would catch Defendant's attention, and the fake attack would begin when the Osundairo Brothers called Defendant an "Empire F----- Empire N-----."

3

13.     On January 27, 2019, video, GPS, and text message evidence indicates that Defendant again met with the Osundairo Brothers to finalize the details of the staged attack. On that day, Defendant drove the Osundairo Brothers to the location where he wanted the staged attack to take place, which was the corner of New Street and North Water Street in Chicago, Illinois.

14.     While at that location, Defendant directed the Osundairo Brothers' attention to a surveillance camera, which Defendant believed would capture the incident.

15.     Defendant and the Osundairo Brothers coordinated the details of the fake attack. They agreed that Abel would attack Defendant, but would not hurt him too badly and would give Defendant a chance to appear to fight back.

16.     They also discussed having the Osundairo Brothers place a rope around Defendant's neck and pour liquid on him.

17.     Defendant told the Osundairo Brothers that he wanted the attack to take place the following night at 10:00 P.M., and instructed them not to bring their cell phones with them.

18.     Defendant provided Abel with a $100 bill to purchase the clothing and materials needed for the staged attack.

19.     During the same conversation in which Defendant and the Osundairo Brothers planned the fake attack, Defendant also gave Abel a three thousand five hundred dollar ($3,500) personal check made payable to Abel. The memo line of the check contained the words, "5 week nutrition/ workout program (don't go)."

20.     Video evidence confirms that on January 28, 2019, the Osundairo Brothers purchased a rope at a hardware store and clothing items at a beauty supply store.

4

21.     Abel deposited the check Defendant gave him into Abel's bank account on January 28, 2019.  The following day, Abel transferred half of that amount ($1,750) to Ola's bank account.

**B.      Defendant and the Osundairo Brothers execute the staged attack.**

22.     After the "run-through" of the staged attack, Defendant traveled to New York, and was scheduled to return on January 28, 2019.

23.     On the evening of January 28, 2019, Defendant's flight into Chicago was delayed, and he called Abel telling him he needed to delay the staged attack, and Abel agreed.

24.     Defendant's plane landed at Chicago O'Hare International Airport ("O'Hare") at 12:30 A.M., on January 29, 2019.

25.     Cell phone records indicate that at 12:49 A.M., Defendant and Abel spoke by telephone.  During this call, Defendant told Abel the attack should take place at 2:00 A.M. at the agreed-upon location.  Minutes later, Ola ordered an Uber to pick the Osundairo Brothers up at their home.

26.     The Osundairo Brothers took an Uber to the 1400 block of North Wells, where they flagged down a taxi that took them to within three blocks of the agreed-upon location of the staged attack.  The taxi's in-car video captures the Osundairo Brothers flagging the car and riding in the back seat.

27.     From approximately 1:22 A.M. until approximately 2:03 A.M., video evidence shows the Osundairo Brothers on foot in an area bordered by Lake Shore Drive, Columbus Drive, Illinois Street, and the Chicago River.

28.     Video evidence also shows Defendant returning to his Streeterville apartment at approximately 1:30 A.M.

29.     At 1:45 A.M., Defendant left his building to walk to a nearby Subway restaurant at Illinois Street and McClurg Court.

30.     At 2:00 A.M., surveillance video evidence shows the Osundairo Brothers waiting near New Street and North Water Street.

31.     During an interview Defendant gave on ABC's Good Morning America, which aired on February 14, 2019, he positively identified the people shown in a still of this surveillance video (the "Still Photo") as his attackers.

32.     The two men in this Still Photo are the Osundairo Brothers.

33.     Shortly after 2:00 A.M., the Osundairo Brothers staged their attack on Defendant.

34.     After the staged attack, the Osundairo Brothers ran from the location, flagged a taxi, and were dropped off near their home at approximately 2:25 A.M.

**C.     Defendant makes a false police report to the City.**

35.     At 2:27 A.M., after Defendant told his manager, Frank Gatson, that he had been attacked, Gatson called the Chicago Police Department ("CPD") to report the incident as a *bona fide* attack on Defendant.

36.     At 2:42 A.M., CPD officers arrived at Defendant's apartment and found Defendant with a rope draped around his neck.

37.     Defendant proceeded to make a false police report.

38.     Defendant told CPD officers that he was the victim of a racist and homophobic physical attack.

39.     Defendant made this report to the CPD officers despite knowing that the purported attack was not for racist or homophobic motives, that his purported attackers were, in

fact, his acquaintances, and that he had asked his purported attackers, the Osundairo Brothers, to stage the attack.

40.     Defendant told the CPD officers that, during the attack, his purported attackers had placed a rope around his neck, poured a liquid chemical on him, and told him this is "MAGA Country."

41.     Defendant did not tell the CPD officers that his attack was staged at his direction and with the cooperation of the Osundairo Brothers.

42.     Defendant told the CPD officers that the incident happened near a camera that should have captured the attack.   That is the same camera Defendant pointed out to the Osundairo Brothers on January 27, 2019.

43.     At no point did Defendant inform police that he knew his attackers or recognized their appearance or voices.

44.     Instead, Defendant misled the CPD officers when he described his attackers.

45.     Defendant told the CPD officers that his primary attacker (now known to be Abel) was wearing a ski mask that covered his entire face, with the exception of the area around his eyes, by which Defendant could tell the attacker was white-skinned.  Defendant made this statement despite knowing that the Osundairo Brothers are not white-skinned.

46.     By providing this false description, Defendant purposely misled the CPD officers to believe that his attackers were white, when, in fact, Defendant knew that his attackers were the Osundairo Brothers.

47.     Defendant and the Osundario Brothers continued to be in contact after the staged attack, including on January 29, 2019 at 7:45 P.M. and on January 30, 2019 at 10:46 A.M.

**D.**       <u>**CPD investigates Defendant's false report at significant expense to the City.**</u>

48.       For the next two weeks, the CPD expended significant resources investigating Defendant's false report of a high-profile hate crime and physical assault. Over two dozen CPD officers and detectives participated in the investigation, ultimately spending weeks investigating Defendant's false statements. During the course of CPD's investigation into Defendant's false statements, CPD has incurred 1,836 overtime hours, which resulted in the City paying $130,106.15 in overtime pay as result of Defendant's false statements.

49.       Eventually, after an extensive investigation using interviews, surveillance videos, Office of Emergency Management pod videos, in-car taxi camera videos, rideshare records, bank records, and a store receipt, CPD identified the Osundairo Brothers as the perpetrators of the alleged attack.

50.       On February 13, 2019, the Osundairo Brothers returned from Nigeria. They were immediately and separately detained upon their arrival at O'Hare. CPD investigators thereafter obtained testimony and corroborating evidence from the Osundairo Brothers that showed Defendant had orchestrated and staged the attack with the cooperation of the Osundairo Brothers, and that Defendant's police report was false.

51.       On February 14, 2019, CPD officers interviewed Defendant again about the Still Photo that he had said on Good Morning America showed his attackers. Defendant again stated that he was certain that the Still Photo depicted the men who had attacked him.

52.       CPD officers then told Defendant that the men in the Still Photo had been identified as the Osundairo Brothers.

53.     Defendant made further false statements by claiming that his only relationship with the Osundairo Brothers was as trainers and social acquaintances, claiming that they could not have been his attackers.

54.     During the February 14, 2019 interview, Defendant again failed to inform the CPD officers that he knew that the Osundairo Brothers were his attackers and that he had orchestrated the attack with the Osundairo Brothers' assistance.

## COUNT 1: Violation of the FSO

55.     The City incorporates all preceding allegations as if they were set forth herein.

56.     Subsection 1-21-010(a) of the FSO provides that:

[a]ny person who knowingly makes a false statement of material fact to the city in violation of any statute, ordinance or regulation, or who knowingly makes a false statement of material fact to the city in connection with any application, report, affidavit, oath, or attestation, including a statement of material fact made in connection with a bid, proposal, contract or economic disclosure statement or affidavit, is liable to the city for a civil penalty of not less than $500.00 and not more than $1,000.00, plus up to three times the amount of damages which the city sustains because of the person's violation of this section. A person who violates this section shall also be liable for the city's litigation and collection costs and attorneys' fees.

MCC § 1-21-010(a).

57.     Subsection 1-21-010(d) of the FSO provides that:

[f]or the purposes of Chapter 1-21 of this Code, a person knowingly makes a false statement of material fact when that person (i) makes a statement of material fact with actual knowledge that the statement was false, or (ii) makes a statement of material fact with knowledge of facts or information that would cause a reasonable person to be aware that the statement was false when it was made, or (iii) signs, certifies, attests, submits or otherwise provides assurances, or causes any other person to sign, certify, attest, submit or otherwise provide assurances, that a statement of material fact is true or accurate in deliberate ignorance or reckless disregard of the truth or falsity of the statement. For purposes of this section, a person who fails to make a reasonable investigation to determine the accuracy, truthfulness or completeness of any material fact acts in deliberate ignorance or reckless disregard of the truth or falsity of the material fact.

MCC § 1-21-010(d).

58.     Defendant knowingly made numerous false statements of material fact in violation of the FSO.

59.     Defendant knowingly made numerous false statements of material fact to CPD officers, including when he made a police report alleging that he was the victim of a racist and homophobic attack, when he knew that he had staged the attack with the assistance of the Osundairo Brothers.

60.     In addition, when presented with evidence that his statements were false, Defendant again refused to inform CPD officers that he knew the Osundairo Brothers were his attackers, and that he had orchestrated his staged attack with them.

61.     Because of Defendant's false statements, the City expended significant resources and manpower, including, but not limited to, $130,106.15 in CPD overtime pay that the City paid solely due to Defendant's false statements.

62.     Defendant is liable to the City for a $1,000 civil penalty for each false statement he made to the City, in addition to three times the amount of the damages that the City sustained, as well as litigation and collection costs, and attorneys' fees.

WHEREFORE, the City respectfully requests that the Court:

A.     Find Defendant liable for violating the FSO;

B.     Fine Defendant a civil penalty of $1,000 for each false statement he made to the City;

C.     Enter judgment against Defendant and in favor of the City for the civil penalties assessed, and trebled damages in an amount to be proven at trial (which includes,

but is not limited to, overtime compensation paid by the City) incurred by the City

because of Defendant's false statements;

D.     Order Defendant to pay the City's reasonable attorneys' fees and costs; and

E.     Award such further relief as this Court deems just and equitable.

## COUNT 2: Violation of the CRO

63.     The City incorporates all preceding allegations as if they were set forth herein.

64.     The CRO provides that "[a]ny person who causes the city or its agents to incur costs in order to provide services reasonably related to such person's violation of any federal, state or local law, or such person's failure to correct conditions which violate any federal, state or local law when such person was under a legal duty to do so, shall be liable to the city for those costs." MCC § 1-20-020.

65.     Under the CRO, "'costs' includes all costs of the city incurred in relation to the provision of services by the city or its agents, regardless of whether the city would have otherwise incurred those costs, including but not limited to wages and benefits of personnel involved in providing such services, reasonable costs of equipment used in the provision of such services, costs of materials expended in providing such services, costs of storing hazardous or any other materials recovered during the course of providing such services, or any other costs allocable to the provision of services." MCC § 1-20-010.

66.     In addition, "[i]n any action brought under [the CRO], the City of Chicago shall also be entitled to recover a penalty in an amount equal to the city's litigation and collection costs and attorney's fees." MCC § 1-20-060.

67.     The City is entitled to recovery of the costs of necessary services provided by the City in order to provide services in investigating and responding to Defendant's violations of the MCC, together with its litigation and collection costs and attorney's fees.

WHEREFORE, the City respectfully requests that the Court:

A.     Find that the City incurred necessary costs investigating and responding to Defendant's statements made in violation of the MCC;

B.     Order Defendant to pay the City's response costs in an amount to be proven at trial;

C.     Order Defendant to pay the City a penalty in amount equal to the City's litigation and collection costs and attorney's fees; and

D.     Award such further relief as this Court deems just and equitable.

Dated: April 11, 2019.                           Respectfully submitted,

                                                 EDWARD N. SISKEL
                                                 Corporation Counsel, City of Chicago

                                                 /s/ Edward N. Siskel
                                                 City of Chicago Department of Law
                                                 121 North LaSalle Street, Suite 600
                                                 Chicago, IL 60602
                                                 312-744-6076
                                                 Edward.Siskel@cityofchicago.org

EXHIBIT B

**Notice and Acknowledgment of
Receipt of Summons and Complaint** (10/12/18) CCG 0063 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

City of Chicago
_____
                              Plaintiff(s)    Case No.  2019L003898
                vs.                           _____
                                              Defendant(s)
Jussie Smollett                               Amount Claimed:  $ _____
_____
                              Defendant(s)

## NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

To: Mark J. Geragos                   Address: 644 South Figueroa Street
    _____                  _____
         (Name)

City: Los Angeles _____    State: CA  Zip: 90017

The enclosed summons and complaint are served pursuant to section 2--213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within _____30_____ * days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within _____30_____ * days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within _____60_____ ** days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been mailed on _____5/13/19_____ .

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 2

**Notice and Acknowledgment of**
**Receipt of Summons and Complaint**                            **(10/12/18) CCG 0063 B**

E-filing is now mandatory for documents in civil cases with limited exemptions.  To
e-file, you must first create an account with an e-filing service provider.  Visit http://efile.
illinoiscourts.gov/service-providers.htm to learn more and to select a service provider.  If
you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/
gethelp.asp.

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in
the above captioned matter at:

(Please print or type)

Name: _William J. Quinlan_

Address: _233 S. Wacker 61st Floor_

City: _Chicago_        State: _IL_   Zip: _60606_

Email: _WSQQ.Quinlanlaw.com_

Relationship to Entity/Authority to Receive Service of Process: _____
(Not applicable if your are the named Defendant or Respondent.)

Dated: _____

_____
Signature

\*   (To be completed by the person sending the notice.) Date for return of waiver must be at least 30 days from the date
    on which the request is sent, or 60 days if the defendant is addressed outside the United States.

\*\*  (To be completed by the person sending the notice.) Date for answering complaint must be at least 60 days from the
    date on which the request is sent, or 90 days if the defendant is addressed outside the United States.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

City of Chicago
Plaintiff(s),                         )
                                      )
                                      )
                                      )          No. 19 L 003898
                  vs.                 )
                                      )
                                      )
Jussie Smollett                       )
            Defendant(s).             )
                                      )

## ORDER SETTING STATUS DATE

This cause coming to be heard on Calendar "Y" Call, this matter is hereby

**4315** continued for Status on _August 7_, 2019 at _9:00_ a.m./p.m.

**4304** The Status date of _____, 20___ at _____a.m./p.m. is hereby st...

Other: Defendant acknowledged service and shall have 60 days ...
from 6/3/19 which is 8/5/19 to answer or otherwise plead.

ENTERED
JUDGE JAMES E. SNYDER-1970
JUN 03 2019
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL
DEPUTY CLERK

Attorney No. _60509_

Attorney Name _Cornell K...man_

Attorney For _Plaintiff_

Attorney Address _30 N. LaSalle St #1400_

City, State _Chicago IL 60602_

Attorney Phone No. _312 - 742 - 0330_

Enter:

_____

James E. Snyder,
Circuit Court Judge - 1970

EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | |
| v. | Case No. _____ |
| JUSSIE SMOLLETT, an individual, | |
| Defendant. | |

**AFFIDAVIT OF JUSSIE SMOLLETT**

I, Jussie Smollett, upon being duly sworn, depose and state as follows:

1.  I am over 18 years of age and competent to testify to the matters set forth herein.

2.  I have personal knowledge of the facts set forth in this Affidavit and if called as a witness would testify competently to such facts.

3.  Since August of 1990, my permanent residence has been in Los Angeles, California.

4.  I am an actor employed under contract executed and based in Los Angeles, California.

5.  In connection with that contract, I obtained a temporary residence in Chicago for purposes of filming in Chicago.

6.  At all times when I had temporary residence in Chicago for filming, I intended to return to my permanent residence in California.

1

7.    I currently reside in California, as I did when my attorneys accepted service of the City's Complaint on June 3, 2019.

8.    I file income taxes to the State of California as a resident.  I also pay property taxes to the State of California.

9.    I am registered to vote in the State of California.

10.   I receive mail at my home in California.

11.   My bank account and personal property are located in California.

FURTHER AFFIANT SAYETH NOT.

Respectfully submitted,

JUSSIE SMOLLETT

Subscribed and Sworn to
Before me this 2ⁿᵈ day
of July __, 2019.

Notary Public

My Commission expires 10-15-2021

JOSE V. ARCOS
Commission No. 2215349
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires OCTOBER 15, 2021

2