**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUSSIE SMOLLETT, an individual,<br><br>Defendant. | Case No. 1:19-cv-04547 |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)</u>**

Defendant Jussie Smollett, by and through undersigned counsel, respectfully submits this Memorandum in Support of his motion to dismiss Plaintiff City of Chicago's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and states as follows:

**<u>BACKGROUND</u>**

By its Complaint, the City alleges two causes of action. In Count 1 the City alleges that Defendant made false statements of material fact to Chicago Police Department ("CPD") officers in violation of the Municipal Code of Chicago ("MCC") False Statements Ordinance ("FSO"), § 1-21-010. The City claims that "[b]ecause of Defendant's false statements, the City expended significant resources and manpower, including, but not limited to, $130,106.15 in CPD overtime pay that the City paid solely due to Defendant's false statements." (Compl., ¶ 61.) Count 2 piggybacks on Count 1, alleging that under the MCC Cost Recovery Ordinance ("CRO"), § 1-20-020, the City is entitled to recover costs of necessary services the City provided in investigating and responding to Defendant's

1

allegedly false statements in violation of the MCC. For the reasons set forth below, the Court should dismiss the Complaint in accordance with Rule 12(b)(6).

## LEGAL STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts in the complaint are accepted as true, and the court draws all reasonable inferences in the plaintiff's favor. *Id.* (citing *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016)). However, the court is not bound to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A claim is facially plausible when the pleading contains sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable. *See Webb*, 906 F.3d at 576 (quoting *Iqbal*, 556 U.S. at 678).

## ARGUMENT

The City's Complaint appears to be an unprecedented effort to seek penalties and resources expended in connection with allegedly false statements made to the police where the related criminal case concerning the statements was dismissed *nolle pros* on all counts. This perverse tactic is entirely at odds with the form, function, and prior use of the FSO and CRO, which by design allow the City to impose penalties and recover costs where a party has violated the law. For example, in March 2019, while contemplating these claims against Defendant, the City's Law Department spokesman stated that the City has a "successful track record" recovering costs under the ordinance, citing the 2010 case where

2

Gary Hunninghake filed a false police report that he had been stabbed. Michael Sneed, *City demands $130K from Jussie Smollett for investigation costs*, CHICAGO SUN-TIMES (Mar. 28, 2019), *available at* https://chicago.suntimes.com/2019/3/28/18416790/ city-demands-130k-from-jussie-smollett-for-investigation-costs. In Hunninghake's case, however, unlike here, the defendant pleaded guilty, and the criminal court ordered him to pay $15,565 to the city to cover the cost of the investigation. *See* James Meisner, *Iowa professor pleads guilty in fake mugging case*, CHICAGO TRIBUNE (Jan. 24, 2011), *available at* https://www.chicagotribune.com/news/breaking/ct-bn-xpm-2011-01-24-28533083-story.html. Here, not only did Defendant maintain his innocence and the prosecution dropped the charges, but also the Circuit Court of Cook County held that the criminal proceedings in its entirety were improper. *See* Order, *In re Appointment of Special Prosecutor*, No. 19 MR 00014, at 20 (Ill. Cir. Ct. June 21, 2019) (noting that "the ship of the State ventured from its protected harbor" and "floundered through uncharted waters").

Apart from the City's improper attempt to prosecute charges that the State's Attorney dismissed, the City fails to adequately plead claims against Defendant under the FSO and CRO. Both claims fail to state sufficient factual allegations to support a reasonable inference that Defendant's allegedly false statements caused the CPD 1,836 overtime hours and the City paying $130,106.15 in overtime pay. The alleged false statements are limited, and the Complaint is devoid of any factual allegation to support that overtime hours are an ordinary, natural—i.e., foreseeable—consequence therefrom. This pleading defect is fatal to the FSO claim. Similarly, for the CRO claim, the City asserts that it is entitled to recover the costs of necessary services provided in investigating and responding to Defendant's allegedly false statements, but its pleading lacks any factual

3

allegation describing what investigation costs were necessary or how they were directly caused by Defendant's actions. This lack of specificity and failure to adequately allege causation warrants dismissal for failure to state a claim. In addition, the City's FSO claim is deficient because it is not plead with the requisite particularity required under Federal Rule of Civil Procedure 9(b). Finally, the City's CRO claim should be dismissed because it is an improper pleading seeking double recovery for the same conduct and costs sought in the FSO claim. For these reasons, the Complaint should be dismissed under Rule 12(b)(6).

**I.  Claims Asserted**

**A. Count 1: Violation of the FSO**

Count 1 of the Complaint alleges that Defendant violated the FSO. Subsection 1-21-010(a) of the FSO provides that:

> Any person [1] who knowingly makes a false statement of material fact to the city in violation of any statute, ordinance or regulation, or [2] who knowingly makes a false statement of material fact to the city in connection with any application, report, affidavit, oath, or attestation, including a statement of material fact made in connection with a bid, proposal, contract or economic disclosure statement or affidavit, is liable to the city for a civil penalty of not less than $500.00 and not more than $1,000.00, plus up to three times the amount of damages which the city sustains because of the person's violation of this section.

MCC § 1-21-010(a). In addition, § 1-21-010(d) of the FSO provides that:

> For the purposes of Chapter 1-21 of this Code, a person knowingly makes a false statement of material fact when that person (i) makes a statement of material fact with actual knowledge that the statement was false, or (ii) makes a statement of material fact with knowledge of facts or information that would cause a reasonable person to be aware that the statement was false when it was made, or (iii) signs, certifies, attests, submits or otherwise provides assurances, or causes any other person to sign, certify, attest, submit or otherwise provide assurances, that a statement of material fact is true or accurate in deliberate ignorance or reckless disregard of the truth or falsity of

4

>the statement. For purposes of this section, a person who fails to make a reasonable investigation to determine the accuracy, truthfulness or completeness of any material fact acts in deliberate ignorance or reckless disregard of the truth or falsity of the material fact.

MCC § 1-21-010(d).

The City's claim under the FSO is limited to the latter provision of § 1-21-010(a)—i.e., alleging that Defendant made "a false statement of material fact to the city in connection with any . . . report." MCC § 1-21-010(a). The Complaint alleges that Defendant made a false police report to the City. (Compl., § C, ¶¶ 35-47.) The City does not allege that Defendant made any false statement of material fact in violation of any statute, ordinance, or regulation. (*See id.*)

The Complaint alleges three false statements that Defendant made to the CPD in connection with the police report. First, the City alleges that Defendant told CPD officers "he was a victim of a racist and homophobic attack" "despite knowing that the purported attack was not for racist or homophobic motives . . . ." (Compl. ¶¶ 38-39.) The second allegedly false statement was that Defendant told the CPD officers that his attacker "was white-skinned . . . despite knowing that the Osundairo Brothers are not white-skinned." (*Id.* ¶ 45.) Third, and finally, the City alleges that on February 14, 2019, Defendant made a false statement to CPD, "claiming that his only relationship with the Osundairo Brothers was as trainers and social acquaintances, claiming that they could not have been his attackers." (*Id.* ¶ 53.)

Yet Count 1 ambiguously expands the scope of the allegations, asserting that "Defendant knowingly made *numerous* false statements of material fact in violation of the FSO," "*including* when he made a police report alleging that he was the victim of a racist

5

and homophobic attack." (*See id.* ¶¶ 58-59 (emphasis added).) As noted above, the Complaint only pleads three false statements by Defendant. To the extent that the City seeks to recover for other statements by the Defendant, the Complaint does not contain sufficient factual content to allow the Court to reasonably infer that Defendant is liable.

With respect to the allegedly false statements pleaded in the Complaint, the City claims that "[b]ecause of Defendant's false statements, the City expended significant resources and manpower, including, but not limited to, [1,836 overtime hours and] $130,106.15 in CPD overtime pay that the City paid solely due to Defendant's false statements." (Compl. ¶¶ 48, 61.) As discussed further below, the Complaint does not suggest or allege that CPD overtime hours were an ordinary and reasonable consequence of Defendant's alleged false statements.

### B. Count 2: Violation of the CRO

Count 2 of the complaint concerns the alleged violation of the City's CRO. The CRO provides that:

> Any person who causes the city or its agents to incur costs in order to provide services ***reasonably related*** to such person's violation of any federal, state or local law, or such person's failure to correct conditions which violate any federal, state or local law when such person was under a legal duty to do so, shall be liable to the city for those costs.

MCC § 1-20-020 (emphasis added).

The City alleges that it "is entitled to recovery of the costs of necessary services provided by the City in order to provide services in investigating and responding to Defendant's violations of the MCC[.]" (Compl. ¶ 67.) And it asks the Court to determine "that the City incurred necessary costs investigating and responding to Defendant's statements made in violation of the MCC." (*Id.*, Count 2 prayer for relief.) Accordingly,

6

the Complaint seeks recovery under the CRO for the alleged violations of the FSO. As noted above, the City's Complaint alleges three false statements in connection with Defendant's police report—(1) that he was the victim of a racist and homophobic attack, (2) his attacker was white-skinned, and (3) that his relationship with the Osundairo Brothers was as trainers and social acquaintances, and they could not have been his attackers. (*Id.* ¶¶ 38-30, 45, 53.)

On that basis, the City alleges that CPD expended significant resources over two weeks investigating Defendant's allegedly false report. (Compl. ¶ 48.) Over two dozen CPD officers and detectives participated in the investigation of Defendant's allegedly false statements, during which CPD allegedly logged 1,836 overtime hours—or 131 overtime hours each day for two weeks. (*Id.*) The Complaint, however, makes no allegations to establish what costs were necessary, much less any causal connection between Defendant's statements and the CPD overtime hours, as discussed further below.

## II. The City Fails to Plausibly Allege Causation Under the FSO or CRO.

The City's Complaint fails to plausibly allege proximate causation because the connection between the alleged false statements by Defendant and the City's purported injury—overtime hours—is too attenuated. For the FSO claim, the City baldly asserts that it spent a significant amount on CPD overtime pay because of the alleged false statements by Defendant, without establishing how the statements caused the unforeseeable overtime expenditures. The CRO claim is similarly deficient. It fails to include factual allegations to plausibly show that Defendant's statements caused the City or its agents to incur costs to provide services reasonably related to illegal conduct, both because it does not identify the necessary services it seeks recovery for and it does not allege how or why the statements link to the costs that the City seeks to recover.

7

### A. The City's FSO Claim Fails to Allege Causation As a Matter of Law Because the CPD Overtime Hours Are Not a Foreseeable Consequence of the Alleged False Statements to the Police.

The FSO is part of the Chicago False Claims Act ("Chicago FCA"), MCC § 1-21-010, *et seq.* To evaluate the sufficiency of a complaint under the Chicago FCA, courts look to federal law addressing the federal False Claims Act ("FCA"). *See, e.g.*, *City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1080 (N.D. Ill. 2016) (evaluating claims under MCC §§ 1-21-010 and 1-22-020 using FCA precedent). "A False Claims Act violation includes four elements: falsity, causation, knowledge, and materiality." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016)). "Under the FCA, a defendant is answerable for 'the natural, ordinary and reasonable consequences of his conduct,' though not for anything beyond that." *U.S. ex rel. Kennedy v. Aventis Pharmaceuticals, Inc.*, 610 F. Supp. 2d 938, 943–44 (N.D. Ill. 2009) (citing *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)). "[T]he causation element cannot be met merely by showing 'but for' causation." *Petratos*, 855 F.3d at 491 (citing *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006), *Paroline v. United States*, 134 S. Ct. 1710, 1720 (2014)). An intervening act between the defendant's conduct and the alleged injury may break the causal nexus if it is extraordinary under the circumstances, "not foreseeable in the normal course of events, or independent of or far removed from defendant's conduct." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 473 (2d Cir. 1995).

Here, the City fails to adequately allege causation because it fails to allege facts to state a claim that the overtime hours and costs incurred were ordinary and reasonable consequences of Defendant's conduct. Instead, the City simply alleges that Defendant

8

falsely stated the he was the victim of an attack, and then he denied that the Osundairo Brothers could be his attackers. (*See* Compl. ¶¶ 59-60.) From there the City asserts in conclusory fashion that "[b]ecause of Defendant's false statements, the City expended significant resources . . . in CPD overtime pay that the City paid solely due to Defendant's false statements." (*Id.* ¶ 61.) This is a textbook example of the *post hoc ergo propter hoc* fallacy—the City is pleading that because the police investigation followed Defendant's statements it was therefore caused by the statements. That correlation does establish causation and, by the same token, inadequately pleads causation.

Generally, a police department's overtime expenditures are not foreseeable in the normal course of events, or at least they are independent of or far removed from a defendant's conduct. *See, e.g.*, *People v. Derengoski*, 247 Ill. App. 3d 751, 755, 617 N.E.2d 882, 885 (Ill. App. Ct. 1993) (reversing restitution order, including overtime, despite the State's position that "overtime expenses are extraordinary expenditures for which the State ought to be reimbursed"); *accord Anderson v. United States*, 201 Ct. Cl. 660, 665 (1973) (recognizing that "overtime may be 'regular' and 'regularly scheduled', though it is irregular and unforeseeable in its actual occurrence."). The CPD overtime alleged here is particularly unforeseeable or independent of or far removed from Defendant's conduct here. As noted above, the City alleges three false statements by Defendant—his reporting that he was attacked, that his attacker was white-skinned, and that the Osundairo Brothers could not be his attackers. Nothing from those facts allows for a reasonable inference to be drawn from those facts that CPD overtime was a foreseeable, ordinary, and normal consequence of Defendant's statements. Accordingly, the City's claim for overtime expenditures under the FSO fails for lack of causation.

9

Consequently, the Court should dismiss the City's claim seeking recovery of CPD overtime expenditures under the FSO due to its failure to adequately plead causation.

### B. The City Also Fails to Plead that Defendant's Allegedly False Statements Caused the City to Pay Necessary Services Reasonably Related to Its Investigation.

To state a claim for recovery of its overtime costs, the City must allege that Defendant "cause[d] the city . . . to incur [overtime] costs in order to provide services reasonably related to . . . [his] violation of any federal, state or local law." MCC § 1-20-020. The City must show a direct link between Defendant's statements and the costs the City incurred to sufficiently plead causation under the CRO. *See City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1083 (N.D. Ill. 2016) (granting motion to dismiss the City's CRO claim without prejudice for failure to adequately allege causation).

*Purdue Pharma* is instructive here. In that case, the City alleged that the defendant pharmaceutical companies made false representations regarding opioids to doctors, which resulted in doctors prescribing opioids that the City incurred costs for under the City's health plans. 211 F. Supp. 3d at 1063. The court concluded that the City's CRO claim "failed to identify the prescribers who were exposed to defendants' misrepresentations as the same prescribers who prescribed defendants' drugs and thereby caused the City to incur costs. Without this link, plaintiff has not adequately alleged that defendants caused the City to incur costs." *Id.* at 1083.

Here, the City's claim under the CRO is more deficient than that in *Purdue Pharma*. First, as to the target for recovery, the CRO only allows the City to recover costs for services provide that are reasonably related to a person's violation of the law. *See* MCC § 1-20-020. The City vaguely asserts that it is "entitled to recovery of the costs of necessary

10

services provided by the City" in connection with investigating and responding to Defendant's allegedly false statements. (Compl. ¶ 67.) It does not, however, provide any indication of what constitutes "necessary services" or how any services provided are reasonably related to Defendant's statements. Second, as in *Purdue Pharma*, the City does not allege anything more than a presumed link between Defendant's statements and the costs incurred by the City. This is precisely the sort of threadbare recital of conclusory statements that are insufficient to state a cause of action. *See Iqbal*, 556 U.S. at 678. Because the Complaint fails to adequately allege causation in its claim under the CRO, the Court should dismiss such claim under Rule 12(b)(6).

### III. The City Also Fails to Plead the FSO Claim with Particularity as Required under Fed. R. Civ. P. 9(b).

Under the Federal Rules of Civil Procedure, for a claim alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Rule 9(b) applies to 'averments of fraud,' not claims of fraud." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). As noted above, the Court looks to federal law construing the FCA to evaluate claims under the Chicago FCA, including the FSO. The Seventh Circuit applies Rule 9(b)'s heightened pleading requirements to claims under the FCA. *See, e.g.*, *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1105-06 (7th Cir. 2014) (affirming grant of motion to dismiss relator's claim under the FCA for failing to plead fraud with requisite particularity under Rule 9(b)). To survive a motion to dismiss, the City's FSO claim must describe "the 'who, what, when where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *Purdue Pharma*, 211 F. Supp. 3d at 1064 (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)); *accord Connick*

11

*v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 496–97, 675 N.E.2d 584, 591 (Ill. 1996) ("A successful common law fraud complaint must allege, with specificity and particularity . . . what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made."). The City fails to satisfy this pleading requirement.

The City fails to identify to whom the statements were made for each of the three false statements alleged in the Complaint. For the first alleged false statement the City pleads only that "Defendant told CPD officers that he was the victim of a racist and homophobic attack." (Compl. ¶ 38.) Similarly, in the second alleged false statement the City pleads that "Defendant told the CPD officers that his primary attacker . . . was white-skinned." (*Id.* ¶ 45.) For the third alleged false statement, the City ambiguously pleads that "Defendant made further false statements by claiming that his only relationship with the Osundairo Brothers was as trainers and social acquaintances, claiming that they could not have been his attackers." (*Id.* ¶ 53.) This last instance is further deficient in its particularity because it fails to state both to whom the statement was made and the context of the statement other than that it occurred on February 14, 2019. (*Id.* ¶ 51.)

To whom the alleged false statements were made is an essential component of the particularity required for pleading under Rule 9(b). "[A] defendant needs a substantial amount of particularized information about the plaintiff's claim in order to enable him to understand it and effectively prepare a responsive pleading and an overall defense of the actions." 5A Wright & Miller, FED. PRAC. & PROC. CIV. § 1296 (4th ed.); *see also Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 782-83 (7th Cir. 1999) (noting that Rule 9(b) ensures that a party accused of fraud is given notice of the specific activity so

12

that the accused party may file an effective responsive pleading). Therefore, in addition to the failure to sufficiently plead causation, the FSO claim should also be dismissed for failing to plead the requisite particularity.

### IV. The City's Claim Under the CRO Should Be Dismissed Because It Seeks Double Recovery for the Relief Sought in the FSO Claim.

Count 2 of the Complaint, seeking recovery under the CRO, should also be dismissed because it improperly seeks double recovery for the relief sought in Count 1. The City does not plead Count 2 in the alternative. On the contrary, Count 2 seeks to recover the costs of necessary services provided by the city "in investigating and responding to Defendant's violations of the MCC," i.e., Count 1, seeking relief under the FSO.[1] (Compl. ¶ 67.) Accordingly, as pleaded, the City can only prevail on Count 2 if it also prevails on Count 1.

Since Count 2 cannot stand alone, any recovery for costs on that basis would be duplicative of the damages sought under Count 1. Count 1 seeks treble damages incurred by the City because of the alleged false statements by Defendant. (Compl., at Count 1 prayer for relief.) Count 2 essentially seeks to recover the same compensatory costs that serve as the basis for the treble damages sought in Count 1—i.e., "costs investigating and responding to Defendant's statements made in violation of the MCC." (*Id.* at Count 2 prayer for relief.)

Illinois law recognizes that treble damages are one third compensatory, and two thirds punitive. *People ex rel. Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1080, 428

---

[1] Given that Mr. Smollett was previously charged criminally with the same conduct at issue in this case, there is a question whether the City can seek additional penalties here. *See People ex rel. Fahner v. Climatemp, Inc.*, 101 Ill. App. 3d 1077, 1080, 428 N.E.2d 1096, 1098 (Ill. App. Ct. 1981).

N.E.2d 1096, 1098 (Ill. App. Ct. 1981) (rejecting the State's argument that treble damages are wholly compensatory, and citing Judge Learned Hand's comment in *Lyons v. Westinghouse Elec. Corp.*, 222 F.2d 184, 189 (2d Cir. 1955), that two thirds of treble damages recovery are punitive, not remedial). The treble damages sought under the FSO therefore include the compensatory costs sought under the CRO in Count 2.

Hence, the CRO claim, which is predicated on the FSO claim, only seeks to recover costs included in the relief sought under the FSO. The CRO claim thus seeks double recovery of compensatory costs, and "Illinois public policy prohibits double recovery." *Fed. Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 296, 913 N.E.2d 43, 59 (Ill. App. Ct. 2009). Count 2 should be dismissed, therefore, because it improperly seeks double recovery of the relief sought under the FSO in Count 1.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant Jussie Smollett respectfully requests that the Court enter an order granting this motion and dismissing Plaintiff City of Chicago's Complaint in its entirety, with prejudice, and enter any other relief that the Court deems fair and just.

Respectfully submitted,

Date: August 5, 2019

/s/ William J. Quinlan
William J. Quinlan
David E. Hutchinson
THE QUINLAN LAW FIRM, LLC
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 883-5500
wjq@quinlanfirm.com
dhutchinson@quinlanfirm.com

*Attorneys for Defendant Jussie Smollett*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

/s/ Nicole Griesbach