**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____

|  |  |  |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:19-cv-04547 |
| v. | ) | |
| | ) | Honorable Virginia M. Kendall |
| JUSSIE SMOLLETT, | ) | |
| | ) | |
| Defendant. | ) | |

## CITY OF CHICAGO'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### SUMMARY OF ARGUMENT

This lawsuit seeks to recover costs that Plaintiff City of Chicago ("City") incurred because Defendant Jussie Smollett ("Defendant") lied when he told Chicago Police Department ("CPD") officers that he was the victim of a racist and homophobic attack. Defendant filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the Complaint inadequately pleads causation, that Count 1 under the City's False Statements Ordinance ("FSO") violates Fed. R. Civ. P. 9(b), and that Count 2 under the City's Cost Recovery Ordinance ("CRO") seeks a double recovery of the damages sought in Count 1. Defendant's arguments fail.

First, the Complaint adequately pleads causation. The City's allegations are straightforward: Defendant falsely told CPD officers that he was the victim of a racist and homophobic attack, causing CPD to investigate Defendant's claims and incur commensurate costs. Indeed, the entire purpose of submitting a police report is to cause police to investigate the report. The CPD investigation and commensurate costs were therefore the natural and foreseeable result of Defendant's claim that he was the victim of a heinous hate crime.

1

Second, the Complaint satisfies Rule 9(b) by identifying the speaker, content, and timing of the false statements. The Complaint thus gives Defendant more than enough factual context surrounding his false statements to give Defendant fair notice of the City's claim.

Finally, the recovery sought in Count 2 is not duplicative of Count 1. The Cost Recovery Ordinance allows the City to recover relief that may be unavailable under the False Statements Ordinance. And even if Count 2 sought a double recovery, the appropriate remedy would be a reduction in any judgment, not dismissal. For these and other reasons described below, the Court should deny Defendant's motion.

## STATEMENT OF FACTS

Defendant was an actor on the popular television show, "Empire," which is filmed in the City. (Compl. ¶ 2.) On January 29, 2019, Defendant returned to his Streeterville apartment and informed his manager, Frank Gatson, that Defendant was the victim of a physical attack. (*Id.* ¶¶ 2, 35.) Gatson promptly called CPD on Defendant's behalf, and responding officers arrived at Defendant's apartment within minutes. (*Id.* ¶ 35-36.) Defendant told the responding officers and subsequent investigating officers that he was the victim of a racist and homophobic attack by two unknown individuals. (*Id.* ¶¶ 37, 38, 43.) Defendant asserted that his attackers placed a rope around Defendant's neck, poured liquid on him, yelled this is "MAGA Country," and physically assaulted him. (*Id.* ¶¶ 37, 40, 45.) Defendant also told officers that his alleged attackers wore ski masks but appeared to be white-skinned. (*Id.* ¶ 45.)

In response to Defendant's report of a hate crime, CPD immediately initiated a thorough investigation that ultimately discovered that Defendant's police report and subsequent statements to CPD were false. (*Id.* ¶¶ 48-50.) Contrary to Defendant's statements to CPD, the evidence demonstrated that Defendant not only was friends with his attackers, but in fact had orchestrated

the entire attack because Defendant was unhappy with how his employers had addressed a racist and homophobic letter that Defendant supposedly received a few days before. (*Id.* ¶¶ 10, 50.) GPS, text message, bank records, and video evidence, along with witness testimony, showed that Defendant paid his attackers to assault him, gave them details about how and when to stage the attack, met with them in the days before to discuss the attack, and communicated with them in the hours before the attack to alert them to Defendant's exact location. (*Id.* ¶¶ 7-25, 50.) Due to Defendant's multiple false statements, CPD conducted a thorough investigation that resulted in costs including—but not limited to—$130,106 in overtime pay. (*Id.* ¶ 48.)

To recover the costs it incurred as a result of Defendant's false statements, the City filed this two-count complaint. Count 1 alleges that Defendant violated the City's FSO, Municipal Code of Chicago ("MCC") § 1-21-010, by knowingly making false statements of material fact to Chicago police. (*Id.* ¶¶ 56-61.) Count 2 alleges that Defendant violated the CRO, MCC § 1-20-020, by causing the City to incur costs investigating Defendant's false statements. (*Id.* ¶¶ 63-67.)

## ARGUMENT

In considering a motion to dismiss under Rule 12(b)(6), the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmovant's favor." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 612 (7th Cir. 2019) (citation omitted). To state a claim, the plaintiff need only "allege 'enough facts to state a claim to relief that is plausible on its face.'" *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put differently, the plaintiff must merely raise the possibility that it has a right to relief "above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (citation and quotation omitted). "Specific facts are unnecessary"; rather, the

complaint must merely "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015) (citation omitted).

## I.     The Complaint Adequately Pleads Causation.

### A.   The City's Costs Were the Natural, Ordinary, and Reasonable Consequence of Defendant's False Statements to CPD.

Defendant argues that the City's FSO claim should be dismissed for lack of proximate causation, asserting that the complaint does not "establish[]" that the City's overtime costs were the foreseeable consequence of Defendant's actions.  (Def.'s Mem. in Supp. of Mot. to Dismiss ("Mem.") at 7-10.)  But this case is at the pleading stage.  "Whether or not the defendant's conduct proximately caused the plaintiff's injury ordinarily is a question for the finder of fact to decide; only rarely are the facts so clear that the court can resolve the issue as a matter of law." *Palay v. United States*, 349 F.3d 418, 432-33 (7th Cir. 2003); *see Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1152 (7th Cir. 2010) ("'[P]roximate cause is preeminently an issue of fact to be decided by the jury'").

This is not the rare case where proximate cause can be resolved on the pleadings.  Under the FSO proximate cause standard, "a defendant is answerable for 'the natural, ordinary and reasonable consequences of his conduct.'" *City of Chi. v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1080-81 (N.D. Ill. 2016) (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)).  The complaint satisfies this standard by alleging that (1) Defendant falsely told CPD officers that he was the victim of a legitimate hate crime, and (2) CPD officers then incurred costs investigating Defendant's false report.  (Compl. ¶¶ 37, 38, 43, 45, 48-50.)  Indeed, the entire purpose of reporting a crime is to enable the police to investigate.  The complaint therefore adequately pleads that CPD's investigation was "the natural, ordinary and reasonable

consequence" of Defendant's false report. *Allison Engine*, 553 U.S. at 672; *see, e.g.*, *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 740-41 (N.D. Ill. 2010) (upholding claim that defendant's bribes to healthcare providers caused false claims for reimbursement to be submitted to the government because defendant was "well aware" that bribe recipients would seek reimbursement, making government payments a "natural and reasonable consequence" of defendant's actions); *Purdue Pharma*, 211 F. Supp. 3d at 1080-81 (similar).

Defendant focuses his argument on the notion that CPD overtime costs were not foreseeable. (Mem. at 8-9.) This argument fails. As an initial matter, the complaint seeks all damages "in an amount to be proven at trial . . . incurred by the City because of Defendant's false statements," "which includes, **but is not limited to**" overtime costs. (Compl. ¶¶ 61-62 (emphasis added).) Thus, even if the City's overtime costs were not foreseeable, the City's FSO claim would survive because the City also seeks costs incurred performing work during regular business hours.

Moreover, the City's overtime costs *were* foreseeable. The City alleges that Defendant orchestrated a fake attack featuring racist and homophobic slurs, racist props, and a reference to "MAGA Country." (*Id.* ¶¶ 12, 16, 18, 40.) Defendant then reported the fabricated details of that heinous attack to police several times. (*Id.* ¶¶ 40-46, 51-54.) Given these facts—a reported heinous hate crime against a high-profile victim featuring derogatory slurs and a slogan employed by the President of the United States—it is reasonably foreseeable that police would investigate thoroughly and would incur overtime costs.

Defendant relies on two inapposite cases in arguing that overtime costs are not foreseeable. (*See* Mem. at 9.) In *People v. Derengoski*, 247 Ill. App. 3d 751 (Ill. App. Ct. 1993), the court did not address whether overtime costs are foreseeable, instead holding that the State could not be reimbursed as a "victim" under a criminal restitution statute for money expended policing

protestors arrested for disturbing the peace. *Id.* at 754. This case is easily distinguished. First, the City need not show that it is a "victim" under a statute that makes restitution available for crime victims generally. *See* 730 ILCS 5/5-5-6. Rather, the FSO expressly authorizes the City specifically to recover damages for false statements made to the City. MCC §§ 1-21-010(a), 1-21-030. Second, *Derengoski* was a post-conviction action, while this is a civil case at the pleading stage. Third, in *Derengoski*, the court emphasized that the State could not recover costs for monitoring protestors because those police duties were part of the State's normal operating costs. 247 Ill. App. 3d at 754. Here, in contrast, CPD's investigation was not part of its normal operations and occurred only because Defendant concocted a fake hate crime and reported it to police.

The other case relied upon by Defendant, *Anderson v. United States*, 201 Ct. Cl. 660 (1973), has since been overruled. *See Mercier v. United States*, 786 F.3d 971, 975-78 (Fed. Cir. 2015). Moreover, *Anderson* addressed a federal labor law action by nursing assistants for overtime pay and did not hold that overtime is always unforeseeable even in that context. *Anderson* thus has no bearing on the City's Ordinances or the foreseeability of police overtime costs in relation to a fake police report.

At this stage, the City must only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Roberts v. City of Chi.*, 817 F.3d 561, 564-65 (7th Cir. 2016). Drawing all reasonable inferences in its favor, the City sufficiently alleges that the City's costs, including overtime, were the natural and foreseeable consequence of Defendant's fabricated police report of a heinous hate crime.

## B. Defendant's False Statements Caused the City to Pay Necessary Services Reasonably Related to Its Investigation.

The CRO provides that any person "who causes the city . . . to incur costs in order to provide services reasonably related to such person's violation of any federal, state, or local law . .

. shall be liable to the City for those costs." MCC § 1-20-020. Defendant, relying entirely on *Purdue Pharma*, 211 F. Supp. 3d 1058, argues that the City's CRO claim fails because it does not allege a direct link between his false statements and the costs it incurred. (Mem. at 10.) In *Purdue Pharma*, a false claims case against opioid drug manufacturers, the court dismissed the CRO claim because it failed to "identify the prescribers who were exposed to defendants' misrepresentations as the same as [those] who prescribed defendants' drugs and thereby caused the City to incur costs." *Id.* at 1083. Like its FSO arguments, Defendant's argument fails because the City sufficiently alleges that it incurred costs as a direct result of Defendant's false statements to CPD officers.

Here, unlike in *Purdue Pharma*, there is no middle-man prescriber required to connect Defendant's false statements to the City's costs. Instead, as explained above, the City alleges that Defendant orchestrated a staged hate crime and then falsely reported that crime to CPD officers. (Compl. ¶¶ 56-61.) The City alleges that Defendant's FSO violation—his false police report and subsequent false statements to CPD officers—directly and inevitably caused the City to incur significant expenses investigating the fake crime and identifying Defendant's hired attackers. (Compl. ¶¶ 58-62.) The City therefore sufficiently alleges that its services (investigating the fake crime) and costs (overtime and other costs) were the natural and obvious consequence of Defendant's FSO violation (his false statements to police). Accordingly, the Court should deny Defendant's motion to dismiss the City's CRO claim for failure to allege causation.

## II.     Count 1 Satisfies Rule 9(b).

A complaint alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, plaintiffs must describe "the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). The City's complaint does that:

7

- *Who*: Defendant made the misrepresentations. (Compl. ¶¶ 38-54.)

- *What*: Defendant falsely stated that "he was the victim of a racist and homophobic physical attack" (*id.* ¶ 38), misdescribed his purported assailants' appearances (*id.* ¶ 45), and falsely stated that the Osundairos could not have been his attackers (*id.* ¶ 53).

- *When*: Defendant made the misrepresentations on January 29, 2019 (*id.* ¶¶ 24, 36-47), and February 14, 2019 (*id.* ¶ 51-54).

- *Where*: Defendant made some of the misrepresentations at Defendant's apartment. *Id.* ¶¶ 36-48.

- *How*: Defendant made the misrepresentations orally. (*Id.* ¶¶ 36-45, 51-54 (alleging what Defendant "told" CPD officers).)

The complaint thus provides "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019) (citation and quotation omitted). Defendant does not dispute this, waiving any objection. Defendant instead asserts that Count 1 violates Rule 9(b) because the complaint supposedly does not identify "to whom" Defendant made the misrepresentations. (Mem. at 12.) In fact, the complaint does allege to whom Defendant made the misrepresentations: CPD officers. (Compl. ¶¶ 38-45, 53-54.)

Defendant apparently argues that the City must go further by identifying the individual officers to whom Defendant lied. Courts in this District have repeatedly rejected this argument. *See Swervo Entm't Group, LLC v. Mensch*, 2017 WL 1355880, at *4 (N.D. Ill. Apr. 13, 2017) (rejecting argument that plaintiff organization "must offer the name of the specific individual to whom [defendant] made . . . representations," citing case law from this District finding compliance with Rule 9(b) "even though plaintiff had not identified the specific individuals to whom the allegedly fraudulent representations were made") (citing *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 793-94 (N.D. Ill. 2015)); *see also Ray v. Citigroup Global Markets, Inc.*,

2003 WL 22757761, at *2 (N.D. Ill. Nov. 20, 2003) (rejecting argument that complaint violated Rule 9(b) by failing to "specifically identify to whom [defendant] made a number of his alleged misrepresentations").[1]

Defendant's position incorrectly suggests that a complaint must include every detail of the fraud to satisfy Rule 9(b). The Seventh Circuit has "warned" that in applying Rule 9(b), "courts and litigants often erroneously take an overly rigid view of the formulation." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (citation and quotation omitted). And this Court has made clear that a "plaintiff satisfies Rule 9(b) by providing a '**general outline** of the alleged fraud scheme . . . sufficient to reasonably notify the defendants of their purported role.'" *Melikhov v. Drab*, 2017 WL 3234808, at *9 (N.D. Ill. July 31, 2017) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)) (emphasis added). Thus, a "plaintiff who provides the dates as well as the speaker and substance of the statement meets the heightened pleading standard for fraud," even if some other details are omitted. *Id.* at *10; *see McNichols v. Weiss*, 2018 WL 5778413, at *5 (N.D. Ill. Nov. 2, 2018) (denying Rule 9(b) motion even though complaint identified three-year period when fraud occurred and "did not pinpoint a specific location where these conversations were had (many via telephone or email) or an account where the funds were placed") (Kendall, J.).

Moreover, the City has fulfilled the purpose underlying Rule 9(b)—"to require 'the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of

---

[1] Other courts in this District have likewise rejected Rule 9(b) challenges to complaints that apparently did not identify the individual organizational employees to whom the defendant lied. *E.g.*, *Sirazi v. Gen. Mediterranean Holding, SA*, 2013 WL 812271, at *8 (N.D. Ill. Mar. 5, 2013) (complaint alleged individual made misrepresentations "to Plaintiffs[,]" which included two companies); *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 945, 957-60 (N.D. Ill. 2011) (complaint alleged individual made misrepresentations "to PharMerica"); *Commc'ns Assocs., Inc. v. Novatel Commc'ns, Inc.*, 1985 WL 2542, at *7 (N.D. Ill. Sept. 16, 1985) (complaint alleged individual made misrepresentations "to CAI representatives").

fraud is responsible and supported.'" *Scan Top Enter. Co. v. Winplus N. Am., Inc.*, 2015 WL 4945240, at *5 (N.D. Ill. Aug. 19, 2015) (Kendall, J.) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). The complaint describes a weeks-long pre-complaint investigation conducted by CPD into Defendant's claims, involving more than two dozen officers spending 1,836 overtime hours. (Compl. ¶ 48.) The investigation included many witness interviews as well as the collection and review of surveillance videos, rideshare records, and bank records. (*Id.* ¶ 49.) Further indicating that the investigation was "responsible and supported," a grand jury indicted Defendant on 16 charges based on the CPD investigation. *See In re Appointment of Special Prosecutor*, No. 19 MR 00014, at 4 (Ill. Cir. Ct. June 21, 2019).

Ultimately, "fair notice is the 'most basic consideration underlying Rule 9(b).'" *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). For the reasons described above, the complaint provides Defendant with fair notice of the allegations underlying the City's claims. That is particularly true given "the facts of [this] case." *Presser*, 836 F.3d at 776. Unlike some cases against organizational defendants, Defendant knows when, where, and how the challenged representations were made because Defendant made them. And while fraud defendants often deny making the challenged representations, Defendant admits them, insisting only that his representations are true. (*See* Mem. at 3 ("Defendant maintain[ed] his innocence").) If Defendant desires additional information about the City's claims, he can obtain it through discovery, not through Rule 9(b).[2]

---

[2] Although unnecessary to resolve this motion, the City notes that Defendant already has the information that he purports to need. Pursuant to the Freedom of Information Act, CPD has released hundreds of pages of files regarding this investigation. Those files identify, among many other things, individual police officers to whom Defendant lied. *See* Matt Masterson, *Chicago Police Release First Wave of Jussie Smollett Documents* (May 30, 2019) (linking to CPD's FOIA production), available at https://news.wttw.com/2019/05/30/read-chicago-police-department-documents-jussie-smollett.

### III.     Count 2 Does Not Seek A Double Recovery.

Defendant argues that Count 2 (asserting violations of the CRO) should be dismissed because it supposedly seeks a "double recovery" for relief that the City seeks under Count 1 (asserting violations of the FSO).  (Motion at 13-14.)  That argument fails because Count 2 seeks relief that may be unavailable under Count 1.

First, the CRO expressly allows the City to recover its costs "regardless of whether the city would have otherwise incurred those costs."  MCC § 1-21-010(a).  The FSO lacks this express authorization.  Defendant therefore may argue at a later stage of this case that the FSO does not allow the City to recover costs associated with work performed during regular business hours.  These damages, however, are expressly recoverable under the City's CRO claim in Count 2.

Second, the CRO establishes a mandatory remedy: anyone who violates the Ordinance "**shall** be liable to the city for [its] costs."  *Id.* § 1-20-020 (emphasis added).  The FSO authorizes "up to three times the amount of damages which the city sustains."  *Id.* § 1-21-010(a).  Defendant thus may argue in later proceedings that the FSO provides a discretionary remedy, allowing for damages in an amount less than the damages that the City sustained.  If that argument were accepted, Count 2 would allow the City to recover relief beyond that authorized under Count 1.

Third, the CRO provides: "An administrative penalty of .75 percent of the amount of debt remaining unpaid on the date the judgment is entered shall be assessed for each month or portion thereof in which the debt remained unpaid."  *Id.* § 1-20-090(a).  The FSO lacks a similar provision.  Count 2 thus may enable the City to recover a larger post-judgment award.  Accordingly, because the CRO authorizes relief that might not be available under the FSO, it is premature at the pleading stage to determine whether Count 2 seeks an impermissible double recovery.  *See MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 406 (N.D.N.Y. 2013) ("the Court concludes

that it would be acting prematurely if it were to dismiss Plaintiff's state-law claims merely because it is *possible* for Plaintiff to recover the same costs, and only the same costs, under those claims as it could under [federal law]") (emphasis in original).

Even if a judgment could result in a double recovery, however, the case that Defendant cites indicates that the appropriate relief is a reduction in the final judgment—not dismissal of the claims. *Fed. Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 296 (2009) (remanding case to circuit court to determine whether plaintiffs received an impermissible double recovery, and if so, to reduce the judgment accordingly).

## CONCLUSION

The Court should deny Defendant's motion. If, however, the Court grants Defendant's motion in whole or in part, the City respectfully requests that the Court's order be without prejudice so that the City may cure any pleading flaws through an amended complaint. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("an order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right").

Dated: August 26, 2019                    Respectfully submitted,

                                          /s/ Renai S. Rodney
                                          Renai S. Rodney
                                          Elie T. Zenner
                                          City of Chicago Department of Law
                                          121 North LaSalle Street, Room 600
                                          Chicago, IL 60602
                                          312-744-0200
                                          renai.rodney@cityofchicago.org
                                          elie.zenner@cityofchicago.org

                                          *Attorneys for Plaintiff City of Chicago*

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/ Elie T. Zenner