IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>JUSSIE SMOLLETT, an individual,<br><br>Defendant. | Case No. 1:19-cv-04547 |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant Jussie Smollett, by and through undersigned counsel, respectfully submits this Reply in Support of his motion to dismiss Plaintiff City of Chicago's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

The City of Chicago seeks to recoup investigative and other costs from Mr. Smollett despite the fact that all criminal charges against him were dismissed in their entirety and he is presumed innocent under the law. This unprecedented civil case was filed simply because former Chicago Mayor Rahm Emanuel disagreed with the Cook County State's Attorney's decision to dismiss the false police report charges against Mr. Smollett. *See* Aamer Madhani, *Jussie Smollett investigation cost $130,000 in OT. Rahm Emanuel says Chicago will make 'Empire' actor pay*, USA TODAY (Mar. 28, 2019), *available at* https://www.usatoday.com/story/news/nation/2019/03/28/jussie-smollett-rahm-emanuel-bill-investigation-costs/3299899002/. Mr. Smollett has always maintained

1

and continues to maintain his innocence.[1] Yet the City's claims and purported damages are a vindictive effort to prosecute charges that the State's Attorney pursued and then chose to drop.

As an initial matter, the Opposition (ECF No. 21) asserts that only two allegedly false statements caused the damages sought in the Complaint, namely that Mr. Smollett: (1) told the Chicago Police Department ("CPD") officers that he was the victim of a racist and homophobic attack; and (2) misdescribed his attacker's appearance. (*See* Opposition at 8 (citing Compl. ¶¶ 38, 45).) While the Complaint also alleges that Mr. Smollett falsely stated that the Osundairos could not have been his attackers, the City does not allege any investigation or other response that resulted from that statement. (*See* Compl. ¶¶ 53-54 (concluding factual allegations with this third alleged false statement).) The City asserts that the aforementioned two statements foreseeably caused 1,836 hours of CPD overtime hours plus untold hours of non-overtime police work. But the filing of a police report, in and of itself, does not necessitate a sprawling investigation nor does it, as a practical matter, usually result in an investigation as extensive as the one the CPD chose to undertake in this case; rather, the filing of a police report enables **the police and prosecutors** to decide whether and how to investigate. Accordingly, the connection between Mr. Smollett's two statements and the damages the City alleges is too attenuated. Moreover, the City fails to allege Mr. Smollett's false statements with sufficient particularity.

## **ARGUMENT**

Similar to the Complaint, the City, in its Opposition, fails to identify any allegations that would plausibly show that Mr. Smollett, as opposed to the officials at the CPD or the State's

---

[1] Mr. Smollett understands the standard applied in reviewing a motion to dismiss is to presume the allegations in the Complaint to be true. That being said, and to ensure nothing in this filing is misconstrued, Mr. Smollett disputes any and all assertions that he made a false statement and was not a victim of a crime.

Attorney's office, caused the City to incur the alleged costs. The Opposition merely reiterates the Complaint's conclusory allegations and circular logic that are fatal to the element of causation necessary to state a claim in Count 1, under the City's False Statements Ordinance ("FSO") and in Count 2, under the City's Cost Recovery Ordinance ("CRO"). In addition, the Opposition betrays the fact that the Complaint only vaguely identifies the circumstances of the alleged false statements; accordingly, Count 1 fails to meet the particularity required under Federal Rule of Civil Procedure 9(b). Finally, despite the Opposition's efforts to parse distinctions between the recovery available under the FSO and the CRO, Count 2 plainly seeks recovery duplicative of Count 1. For all of these reasons, the Court should grant Mr. Smollett's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

    **I.    The Complaint Fails to Adequately Plead that the Alleged False Statements by Mr. Smollett, Rather than Separate Decisions by the CPD or State's Attorney's Office, Caused the Alleged Damages.**

The Court is not bound to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). It is insufficient for a plaintiff to simply allege that it sustained damages as a consequence of alleged false reports. *See White v. Keely*, 814 F.3d 883, 888 (7th Cir. 2016) (affirming dismissal under Rule 12(b)(6) and reasoning that: "The complaint does allege that [plaintiffs] have sustained damages as a consequence of false reports, but that is a legal conclusion about proximate cause, and thus insufficient to state a claim."). Here, the Complaint and Opposition only allege bare legal conclusions of proximate causation for Counts 1 and 2, which are insufficient to state a claim.

**A. For Count 1, Apart from Ipse Dixit, the Complaint Does Not Adequately Plead that Mr. Smollett's Statements to the CPD Proximately Caused the City's Costs.**

In its Opposition, the City contends that Mr. Smollett proximately caused the City to incur 1,836 of CPD overtime hours plus untold hours of non-overtime police work because Mr. Smollett allegedly made two false statements in his initial report to the police. For Count 1, under the FSO, "a defendant is answerable for 'the natural, ordinary and reasonable consequences of his conduct,' though not for anything beyond that." *U.S. ex rel. Kennedy v. Aventis Pharmaceuticals, Inc.*, 610 F. Supp. 2d 938, 943-44 (N.D. Ill. 2009) (citing *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)). Proximate cause is not established where actions occur that are "not foreseeable in the normal course of events, or independent of or far removed from defendant's conduct." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 473 (2d Cir. 1995).

As noted above, the Complaint does not suggest or allege that the CPD investigation was an ordinary and reasonable consequence of Mr. Smollett's allegedly false statements. The Opposition attempts to remedy this omission by asserting that "the entire purpose of reporting a crime is ***to enable*** the police to investigate." (Opp. at 4 (emphasis added).) But this supposition betrays the reality of the situation—a police report alone does not cause a CPD investigation nor does it cause the City to incur other costs.

*Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730 (N.D. Ill. 2010), a case cited by the City, fails to support the City's assertions. In that case, the Court found that it was a "natural, ordinary and reasonable" consequence of the defendant's payment of bribes to healthcare providers that those providers would file false claims with the government seeking reimbursement because the defendant was "alleged to have been well aware that healthcare providers receiving its bribes and kickbacks" would do exactly that and "file claims for reimbursement with the federal government." *Mason*, 731 F. Supp. 2d at 740. By contrast, in the present case, as the Motion noted,

4

the City has failed to allege that Mr. Smollet was similarly "well aware" that his statements to police would result in 1,836 hours of police overtime, or any other reasons why he should have known this would have been the case.

For the overtime costs, the City misunderstands the significance of the authority cited in Mr. Smollett's Memorandum in support of his motion to dismiss. *People v. Derengoski*, 247 Ill. App. 3d 751, 617 N.E.2d 882 (Ill. App. Ct. 1993), supports the proposition that a police department's overtime expenditures are extraordinary, and thus not foreseeable in the normal course of events. *See* 617 N.E.2d at 885. Similarly, *Anderson v. United States*, 201 Ct. Cl. 660 (1973), *overruled on other grounds by Doe v. United States*, 372 F.3d 1347 (Fed. Cir. 2004), supports the proposition that overtime hours are not a foreseeable occurrence. 201 Ct. Cl. at 665 (recognizing that "overtime may be 'regular' and 'regularly scheduled', though it is irregular and unforeseeable in its actual occurrence.").

The CPD overtime alleged here is particularly unforeseeable. Indeed, nothing from alleged false statements that preceded the investigation allows for a reasonable inference to be drawn that CPD overtime was a foreseeable, ordinary consequence of Mr. Smollett's statements. Nor does the Complaint allege other facts to draw the conclusion that CPD overtime was foreseeable. The City simply concludes that "[g]iven these facts . . . it is reasonably foreseeable that police would investigate thoroughly and would incur overtime costs." (Opp. at 5.) This cursory assertion of proximate causation is a legal conclusion that is insufficient to state a claim. *See White*, 814 F.3d at 888.

Accordingly, the City's claim in Count 1 under the FSO fails to adequately plead causation and so the Complaint should be dismissed under Rule 12(b)(6).[2]

---

[2] Because Count 2 hinges on Count 1, the deficiency in Count 1 forecloses Count 2 as well.

5

### B. In Count 2 the City Fails to Plausibly Plead that the Costs the City Incurred Were Necessary Services Reasonably Related to CPD's Investigation.

With regard to Count 2, under the CRO, the City fails to plausibly plead that Mr. Smollett's statements directly caused the costs that the City incurred and that such costs were necessary services reasonably related to the CPD's investigation. The City must show a causal link between Mr. Smollett's statements and the costs the City incurred to sufficiently plead causation under the CRO. *See City of Chicago v. Purdue Pharma L.P.*, 211 F. Supp. 3d 1058, 1083 (N.D. Ill. 2016) (granting motion to dismiss the City's CRO claim without prejudice for failure to adequately allege causation). Yet the City's Complaint only presents threadbare, conclusory allegations regarding causation.

The Opposition only highlights that deficiency in its attempt to rehabilitate the City's position. The Complaint alleges that "[b]ecause of Defendant's false statements, the City expended significant resources . . . solely due to Defendant's false statements." (Compl. ¶ 58.) The City attempts to recast this in the Opposition, arguing that Mr. Smollett's allegedly false statements "directly and inevitably caused the City to incur significant expenses[.]" (Opp. at 7 (citing Compl. ¶¶ 58-62).) But the Complaint does not plead that Mr. Smollett's statements "directly and inevitably" caused the City to incur expenses, nor could it, since investigations are a discretionary function of police departments. *See, e.g.*, *Kafafian v. Young*, 477 F. App'x 762, 763-64 (2d Cir. 2012) (affirming qualified immunity to police officer because investigation into a complaint is a matter of police discretion). Therefore, the City cannot plausibly claim that the CPD's extensive investigation directly or inevitably resulted from Mr. Smollett's statements.

Nonetheless, the City continues on that flawed premise to argue that it "sufficiently alleges that its services (investigating the [purported] fake crime) and costs (overtime and other costs) were the natural and obvious consequence" of Mr. Smollett's statements to the CPD. (Opp. at 7.)

6

This argument fails too because the City did not plead that the investigation and its resulting costs, including police overtime, were the natural or obvious consequences of Mr. Smollett's statements. It simply asserts that it expended significant resources because of Mr. Smollett's statements (Compl. ¶ 61), which is a legal conclusion on proximate causation that is insufficient to state a claim. *See White*, 814 F.3d at 888.

Accordingly, the Court should dismiss Count 2 under Rule 12(b)(6) for failing to adequately plead causation.

### II. The City's Opposition Shows that the Complaint Fails to Meet the Particularity Required Under Fed. R. Civ. P. 9(b).

Reading the Complaint and the Opposition together, it is unclear where and to whom the alleged false statements were made, which is fatal to a fraud claim under Rule 9(b). *See Connick v. Suzuki Motor Co., Ltd.,* 174 Ill. 2d 482, 496–97, 675 N.E.2d 584, 591 (Ill. 1996) ("A successful common law fraud complaint must allege, with specificity and particularity . . . what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made."). The Opposition illustrates that the Complaint lacks the particularized information about the City's claim required to enable Mr. Smollett to understand it and effectively prepare a responsive pleading and an overall defense. *See* 5A Wright & Miller, FED. PRAC. & PROC. CIV. § 1296 (4th ed.); *see also Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 782-83 (7th Cir. 1999) (Rule 9(b) ensures that a party accused of fraud is given notice of the specific activity so that the accused party may file an effective responsive pleading). This ambiguity in the City's fraud allegations renders it impossible to ascertain how many false statements it contends Mr. Smollett has made, which prevents Mr. Smollett from understanding and effectively responding and preparing a defense.

7

The Opposition underscores the problematic lack of particularized information in the Complaint. First, as to where the statements occurred, the City states that "Defendant made *some* of the misrepresentations at Defendant's apartment." (Opp. at 8 (emphasis added).) It does not identify which statements were made at the apartment or where any other statements were made. Second, the City now asserts that "Defendant told the responding officers and subsequent investigating officers that he was the victim of a racist and homophobic attack." (Opp. at 2 (citing Compl. ¶¶ 37, 38, 43).) Notwithstanding the citations, the Complaint makes no distinction between "responding officers" and "investigating officers"—rather, it simply states that "Defendant told CPD officers" he was the victim of an attack. (Compl. ¶ 38.) The Opposition thus suggests a different story than the Complaint. The Complaint alleges that Mr. Smollett made one false statement to CPD officers that he was the victim of an attack. The Opposition suggests that the Complaint *actually* alleges at least two such false statements, first to responding officers and then to subsequent investigating officers. Which is it?

The City cites two additional cases *Swervo Entm't Group, LLC v. Mensch*, No. 16-CV-4692, 2017 WL 1355880 (N.D. Ill. Apr. 13, 2017), and *Ray v. Citigroup Glob. Markets, Inc.*, No. 03 C 3157, 2003 WL 22757761 (N.D. Ill. Nov. 20, 2003), for the proposition that it has sufficiently identified the individuals to whom the allegedly false statements were made for the purposes of Rule 9(b) by stating that they were made to "CPD Officers." (Opp. at 8-9.) In both of those cases, however, the complaints specifically identified a small group of individuals to whom the statements were made. For instance, in *Swervo*, the complaint specifically identified the statements at issue as having been made to the plaintiff, "a small limited liability company with only a single member," meaning that "the universe of specific individuals to whom the representations were likely made is relatively limited, and the complaint thus gives Defendants adequate notice under

8

Rule 9(b) of the nature of the claim against them." *Swervo Entm't Grp., LLC*, 2017 WL 1355880, at *4. Similarly, in *Ray*, it was "readily apparent from the complaint" that all of the allegedly false statements were made to one of six people identified in the complaint, the three plaintiffs and their respective agents, which the court found to be sufficient because "Rule 9(b) does not require surgical precision." *Ray*, 2003 WL 22757761 at *2. By contrast, in this case, for two of the three allegedly false statements, the Complaint merely states that they were made to "CPD Officers," which, far from a "relatively limited" universe of individuals, could include anyone in an approximately 10,000-person urban police department. (Mem. at 12.) And for the third allegedly false statement, the Complaint fails to provide any indication whatsoever of whom it was made to. (*Id.*)

Unlike the case law relied upon in the Opposition, *to whom* the alleged false statements were made is also necessary here because the City seeks a civil penalty for each allegedly false statement made to the City. (Compl. at Count 1 prayer for relief.) The City fails to plead the alleged false statements with particularity because it ambiguously identifies to whom Mr. Smollett made the alleged false statements. As discussed above, the Complaint articulates three allegedly false statements, yet the City goes on to repeatedly allege that "Defendant knowingly made ***numerous*** false statements" to the CPD. (*See id.* ¶¶ 58-59 (emphasis added).) The City also asserts that Mr. Smollett reported "fabricated details about that heinous attack to police ***several*** times." (Opp. at 5 (emphasis added).) Either the City considers three statements to be "numerous" or the Complaint fails to adequately plead all the statements at issue. The Opposition's distinction between responding officers and investigating officers and its references to numerous statements and several reports show that the Complaint fails to adequately plead the instances of the alleged false statements with particularity.

9

Rule 9(b) protects Mr. Smollett from the need to divine the particular alleged fraudulent statements or to draw them out from the City in motion practice. Therefore, the Complaint should also be dismissed because Count 1 under the FSO fails to plead fraud with the requisite particularity.

### III. Count 2 Should Also Be Dismissed Because It Seeks Impermissible Double Recovery for the Relief Sought in Count 1.

Count 2, under the CRO, is predicated on the success of Count 1, under the FSO, and seeks to recover costs included in the relief sought under the FSO. The CRO claim thus seeks double recovery of compensatory costs, which violates Illinois public policy. *See Fed. Ins. Co. v. Binney & Smith, Inc.*, 393 Ill. App. 3d 277, 296, 913 N.E.2d 43, 59 (Ill. App. Ct. 2009).

The City argues that it is premature at the pleading stage to determine whether Count 2 seeks an impermissible double recovery, citing *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F. Supp. 2d 387, 406 (N.D.N.Y. 2013). In that case, the court concluded that it was premature to dismiss state-law claims under Rule 12(b)(6) because there was only a possibility that the state-law claims would recover the same costs as the claims brought under CERCLA. 931 F. Supp. 2d at 406. The court's reasoning, however, was that it would be appropriate to dismiss the state-law claims when it became evident that there would be double recovery. *Id.*

Here, unlike in *MPM Silicones*, there is no question that Count 2 seeks to recover the same costs as Count 1. Both claims seek to recover the City's costs incurred in the CPD investigation. Count 1 seeks "trebled damages in an amount to be proven at trial (which includes, but not limited to, overtime compensation paid by the City) incurred by the City because of Defendant's false statements." (Compl. at Count 1 prayer for relief.) Count 2 seeks an Order for "Defendant to pay the City's response costs in an amount to be proven at trial." (*Id.* at Count 2 prayer for relief.) Despite the differences in verbiage, both Counts seek to recover the costs the City allegedly

incurred in responding to Mr. Smollett's allegedly false statements. The City's Counts are not plead in the alternative; rather, the City must prevail on Count 1 in order to prevail on Count 2. Consequently, it is evident now that the costs sought under Count 2 are duplicative of the costs sought in Count 1. Because it is presently clear that Count 2 seeks double recovery, Count 2 should be dismissed.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant Jussie Smollett respectfully requests that the Court enter an order granting this motion and dismissing Plaintiff City of Chicago's Complaint in its entirety, with prejudice, and enter any other relief that the Court deems fair and just.

Respectfully submitted,

Date: September 3, 2019

/s/ William J. Quinlan
William J. Quinlan
David E. Hutchinson
THE QUINLAN LAW FIRM, LLC
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 883-5500
wjq@quinlanfirm.com
dhutchinson@quinlanfirm.com
*Attorneys for Defendant Jussie Smollett*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

/s/ Nicole Griesbach