IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:19-cv-04547 ) |
| JUSSIE SMOLLETT, | ) Honorable Virginia M. Kendall ) |
| Defendant. | ) ) ) |
| JUSSIE SMOLLETT, | ) ) |
| Counterclaim-Plaintiff, | ) ) |
| v. | ) ) |
| CITY OF CHICAGO, MICHAEL THEIS, EDWARD WODNICKI, EDDIE JOHNSON, JOHN and JANE DOE DEFENDANTS 1-10, ABIMBOLA OSUNDAIRO, and OLABINJO, OSUNDAIRO | ) ) ) ) ) ) |
| Counterclaim-Defendants. | ) |

**THE CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPORT OF ITS MOTION TO DISMISS SMOLLETT'S COUNTERCLAIMS**

Counterclaim-Defendants Eddie Johnson, Edward Wodnicki, Michael Theis, and John and Jane Doe Defendants 1-10, and the City of Chicago (collectively "the City Defendants"), move to dismiss Counterclaim-Plaintiff Jussie Smollett's Counterclaims with prejudice because Smollett has failed to allege the elements of a malicious prosecution claim. As explained more fully below, Smollett's claims fail because (1) he cannot plausibly allege that the criminal proceedings against him terminated in his favor; (2) his own allegations demonstrate the

1

existence of probable cause; and (3) he failed to sufficiently allege that the City Defendants acted with malice.

## BACKGROUND

Smollett's Counterclaims allege that on January 29, 2019, Smollett informed his artistic director, Frank Gatson, that moments earlier he had been the victim of a physical attack. (Countercl. ¶ 15.) Gatson promptly called the Chicago Police Department ("CPD") on Smollett's behalf. (*Id.*) When responding officers arrived, Smollett told them that he was the victim of a racist and homophobic attack by unknown individuals. (*Id.* ¶¶ 13-14, 16.) Smollett told officers that his attackers placed a rope around his neck, poured liquid on him, yelled racist, homophobic, and political slurs, and physically assaulted him. (*Id.* ¶¶ 13, 16-17.) Smollett also told officers that his alleged attackers wore ski masks but appeared to be white-skinned. (*Id.* ¶¶ 14, 16.)

Two weeks after Smollett's police report, CPD arrested Abel and Ola Osundairo (the "Osundairo Brothers") for attacking Smollett. (*Id.* ¶¶ 23.) The Osundairo Brothers were acquaintances of Smollett; Smollett had known and socialized with Abel Osundairo for more than a year. (*Id.* ¶ 24.) After a lengthy interrogation, the Osundairo Brothers admitted to CPD that they had attacked Smollett and that the attack was a hoax orchestrated by Smollett. (*Id.* ¶¶ 36, 46.) CPD also uncovered evidence that Smollett texted Abel Osundairo days before the attack asking for his help "on the low," that Smollett met with the Osundairo Brothers and paid them $3,500 in the days leading up to the attack, and that Smollett spoke on the phone and texted with Abel Osundairo shortly before and after the attack. (*Id.* ¶¶ 73, 74, 82, 86-88.) CPD officers presented this and other evidence to the Cook County State's Attorney's Office and to a grand jury, which returned a felony indictment against Smollett for 16 counts of disorderly conduct, specifically for filing a false police report. (*Id.* ¶¶ 49-51.) Two weeks after Smollett's indictment, the Cook

County State's Attorney's Office dismissed the criminal charges against Smollett *nolle prosequi* in exchange for Smollett's agreement to perform community service and forfeit his $10,000 bond.[1] (*Id.* ¶¶ 111, 113; *see also* Smollett's Ans. ¶¶ 68-70 (asserting estoppel affirmative defenses because Smollett paid $10,000 in connection with the dismissal of charges against him)) (*see also* Ex. A, Certified Statement of Disposition 2019 CR 310401.)

After Smollett's charges were dismissed, former Illinois appellate judge Sheila O'Brien filed a petition for the appointment of a special prosecutor to reinstate and further prosecute the criminal case against Smollett as well as to investigate the decision to drop the charges. (Ex. B, June 21, 2019 Order, 2019 MR 00014.)[2] In June 2019, Judge Toomin of the Circuit Court of Cook County granted O'Brien's petition and ordered the appointment of a special prosecutor to re-investigate Smollett's case. (*Id.*) Judge Toomin stated that "if reasonable grounds exist to further prosecute Smollett, in the interest of justice the special prosecutor may take such action as may be appropriate to effectuate that result." (*Id.* at 21.) In August 2019, Judge Toomin appointed Dan Webb as special prosecutor. Webb's investigation is ongoing.

In April 2019, the City filed this lawsuit against Smollett, seeking to recover costs incurred in connection with CPD's investigation of Smollett's police report under two City ordinances.

---

[1] Smollett does not attach a dismissal order to his counterclaims, nor does he allege any reasons for the prosecutor's dismissal. The City, however, has attached the Certified Statement of Disposition to this motion. The Court may take judicial notice of this publicly available record. *See In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006) (noting courts may take judicial notice of court dockets and opinions).

[2] While Smollett does not mention the appointment of a special prosecutor in his counterclaims, as noted above "[a] court may take judicial notice of matters of public record on a motion to dismiss without converting it to a motion for summary judgment." *Loughnane v. Rogers*, No. 19 C 0086, 2019 WL 4242486, at *5 (N.D. Ill. Sept. 6, 2019) (citing *Doherty v. City of Chi.*, 75 F.3d 318, 324 (7th Cir. 1996)). "This includes state or federal court documents where those proceedings 'have a direct relation to matters at issue.'" *Id.* (quoting *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)). Judge Toomin's order is available at https://assets.documentcloud.org/documents/6165046/Final-Order-Re-Smollett-Case.pdf.

(Countercl. ¶ 115.) Smollett has now brought counterclaims against the City Defendants and others for malicious prosecution under both federal and state law. (*Id.* ¶¶ 116-59.)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chi. Park Dist.*, 875 F.2d 609, 611 (7th Cir. 1989). A Rule 12(b)(6) motion to dismiss a counterclaim is subject to the same standard as a motion to dismiss a complaint. *N. Trust Co. v. Peters*, 69 F.3d 123, 127 (7th Cir. 1995). As such, the Court must "construe all well-pleaded allegations of the counterclaim in the light most favorable" to Smollett. *United Cent. Bank v. Davenport Estate, LLC*, 815 F.3d 315, 317 (7th Cir. 2016). "That said, to survive a motion to dismiss under Rule 12(b)(6), a counterclaim not only must provide fair notice of the claim's basis, but also must state facts showing that the requested claim is plausible, and not just possible, on its face." *United States ex rel. Cieszynski Lifewatch Servs., Inc.*, No. 13 CV 4052, 2016 WL 2771798, at *1 (N.D. Ill. May 13, 2016) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory statements of law" and "unwarranted inferences" contained in the counterclaim are insufficient to defeat a 12(b)(6) motion. *Peters*, 69 F.3d at 129. While the counterclaim need not set forth "detailed factual allegations," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Smollett has alleged two counts in his counterclaims, one for malicious prosecution under Illinois law and one for malicious prosecution under 42 U.S.C. § 1983. The Court should dismiss both counts as to the City Defendants.

**I.  The Court Should Dismiss Smollett's State Law Malicious Prosecution Claim as He Has Failed to Adequately Plead Several Elements.**

In Illinois, "suits for malicious prosecution are not favored." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 24 (2019). "Public policy encourages the exposure of crimes," so courts have "narrowly circumscrib[ed] the instances in which malicious prosecution actions may be brought." *Allen v. Berger*, 336 Ill. App. 3d 675, 678 (1st Dist. 2002). Under Illinois law, to plead a malicious prosecution claim, a plaintiff must allege that: "(1) the defendant commenced or continued a criminal proceeding against him, (2) the proceeding was terminated in his favor, (3) there was no probable cause for the proceeding, (4) the defendant acted maliciously, and (5) he was damaged by the proceeding." *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). Failure to plead any one of these elements requires dismissal. *Id.* Here, Smollett fails to adequately allege three elements.

**A. The Criminal Proceeding Was Not Terminated in Smollett's Favor.**

Smollett fails to satisfy the favorable termination element for two reasons. First, Smollett's criminal proceedings have not terminated. Under Illinois law, criminal proceedings do not terminate until the State is "precluded from seeking reinstatement of the charges." *Ferguson v. City of Chi.*, 213 Ill. 2d 94, 104 (2004); *see also Rivera v. Lake Cnty.*, 974 F. Supp. 2d 1179, 1188 (N.D. Ill. 2013). Here, Smollett's charges may still be reinstated. Judge Toomin ordered that "if reasonable grounds exist to further prosecute Smollett, in the interest of justice the special prosecutor may take such action as may be appropriate to effectuate that result." (Ex. B at 21.) The special prosecutor's investigation is ongoing.

Smollett's criminal proceeding is thus not over—an investigation into his potential crimes is ongoing and criminal charges may well be re-instituted. For this reason alone, Smollett's malicious prosecution claim fails. *See, e.g.*, *Vincent v. Williams*, 279 Ill. App. 3d 1, 4

(1st Dist. 1996) (upholding dismissal of malicious prosecution claim because plaintiff's criminal case was stricken on leave to reinstate, leaving no "final determination in his favor"); *Berlin v. Nathan*, 64 Ill. App. 3d 940, 945, 947 (1st Dist. 1978) (finding plaintiff had not sufficiently stated claim for malicious prosecution because underlying litigation had "not been terminated when the [claim] was filed"); *Singleton v. N.Y.*, No. 98 Civ. 414, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) ("Because plaintiff has not alleged that the state court proceedings have terminated in his favor—indeed, they appear to be ongoing—his false arrest . . . and malicious prosecution claims must be dismissed.").

Second, even if the criminal proceedings had terminated, Smollett's claim fails because the proceedings terminated in a *nolle prosequi* that was not *in his favor* as required for a malicious prosecution claim. Under Illinois law, it is the plaintiff's burden to adequately plead "that the circumstances surrounding the abandonment of the criminal proceedings would compel an inference that a lack of reasonable grounds led to the dismissal of the criminal proceedings." *Berger*, 336 Ill. App. 3d at 680-81; *see also Coleman v. Vill. of Evergreen Park*, 2017 IL App (1st) 161492-U, ¶ 20 (upholding dismissal of malicious prosecution action because State's decision to *nolle pros* charge was not indicative of plaintiff's innocence). Notably, the Illinois Supreme Court has held that a voluntary dismissal "is not indicative of the innocence of the accused when [it] is the result of an agreement or compromise with the accused[,] . . . mercy requested or accepted by the accused, or the impossibility or impracticability of bringing the accused to trial." *Swick*, 169 Ill. 2d at 513; *see also Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) ("A *nolle prosequi* entered as the result of an agreement or compromise with the accused is not considered indicative of a plaintiff's innocence.") (citations omitted); *Sparing v.*

6

*Vill. of Olympia Fields*, 266 F.3d 684, 692 (7th Cir. 2001) (rejecting malicious prosecution claim because criminal case's termination was not in manner "indicative of innocence").

The circumstances surrounding the dismissal of Smollett's criminal charges are *not* indicative of his innocence. Quite the contrary, as Smollett alleges, Cook County prosecutors dismissed the criminal charges against Smollett in exchange for Smollett's agreement to perform community service and forfeit his $10,000 bond. (Smollett's Countercl. ¶¶ 111, 113; Smollett's Ans. ¶¶ 68-70 (stating that Smollett paid $10,000 in connection with the dismissal of charges against him)). The dismissal of Smollett's criminal charges was thus the result of a negotiated "agreement or compromise with the accused" and the State's Attorney's Office, not a proclamation that Smollett was innocent.[3] *Swick*, 169 Ill. 2d at 513; *see also Rich v. Baldwin*, 133 Ill. App. 3d 712, 714-16 (5th Dist. 1985) ("a plaintiff who enters into or procures a compromise or agreement for dismissal of the charges against him may not bring an action for malicious prosecution based upon those charges").

Indeed, Illinois courts have repeatedly held that a financial payment made in connection with the dismissal of a criminal case—such as Smollett's forfeiture of his bond—demonstrates that the case did not terminate in the payor's favor. In *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 46–47 (1980), for example, the plaintiff was charged with criminal theft for failing to remit

---

[3] Indeed, the Cook County prosecutors who reached the agreement to drop the charges against Smollett have repeatedly emphasized that the decision was not because they determined Smollett was innocent or because there was insufficient evidence to prosecute. *See* Megan Crepeau, Madeline Buckley, and Jason Meisner, *In Latest Plot Twist, Cook County Prosecutors Abruptly Drop All Charges Against Jussie Smollett*, CHI. TRIB., Mar. 26, 2019, *available at* https://www.chicagotribune.com/news/breaking/ct-met-jussie-smollett-charges-dropped-20190326-story.html (quoting lead prosecutor as saying "we stand behind the decision to charge [Smollett]" and Smollett "feels that we have exonerated him, we have not."); Elahe Izadi, Bethonie Butler, and Mark Berman, *Prosecutors Drop Charges Against Jussie Smollett, Drawing Strong Rebuke From Chicago's Mayor and Police*, WASH. POST., Marc. 26, 2019, *available at* https://www.washingtonpost.com/arts-entertainment/2019/03/26/charges-against-empire-actor-jussie-smollett-dropped-his-attorney-says/ (quoting lead prosecutor as saying that the decision to drop the charges "should not be considered by anyone as a statement, a signal, a hint, anything, that the case is weak or the case fell apart.").

the proceeds from his used car sales to his lender as required by the loan. The plaintiff brought a malicious prosecution claim after prosecutors dismissed charges against him. *Id.* The court rejected the plaintiff's malicious prosecution claim because prosecutors dismissed the theft charges only after the plaintiff agreed to repay his lender, thus demonstrating that his criminal case did not terminate in his favor. *Id.*; *see also Gray v. Burke*, 466 F. Supp. 2d 991, 995 (N.D. Ill. 2006) (rejecting malicious prosecution claim where plaintiff was charged with theft for refusing to pay parking fee in part because plaintiff agreed to pay parking fee).

Accordingly, the Court should dismiss Smollett's Illinois malicious prosecution claim because his criminal case has not terminated in his favor. *Swick*, 169 Ill. 2d at 512.

### B. Based on Smollett's Own Allegations, There Was Probable Cause to Bring Criminal Charges Against Him.

Smollett's malicious prosecution claim also fails because his allegations show that the City Defendants had probable cause in proceeding against him in the underlying criminal case. Probable cause is an absolute bar to an action for malicious prosecution. *Turner v. City of Chi.*, 91 Ill. App. 3d 931, 9341 (1st Dist. 1980). Illinois courts define probable cause in this context as a "state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Kim v. City of Chi.*, 368 Ill. App. 3d 648, 654 (1st Dist. 2006) (citation omitted). The focus is not on "the actual facts of the case or the guilt or innocence of the accused"; it is on what the defendants knew when they commenced their prosecution. *Id.* (citation omitted). "When there is an honest belief by the [prosecuting party] that the accused is probably guilty of the offense, a mistake or error that is not grossly negligent will not affect the question of probable cause." *Id.* (citations omitted). Further, "information from other persons" is a reasonable basis for probable cause; it "is not necessary to verify the correctness of each item of information so obtained" from other

8

persons to support probable cause. *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72-73 (1st Dist. 2003) (citation and quotation omitted).

According to Smollett's own allegations, Smollett reported to police that he was the victim of a racist, homophobic, politically-motivated attack at the hands of two unknown attackers, one of whom appeared to be white-skinned. (Countercl. ¶¶ 13-17.) After investigating, CPD identified the Osundairo Brothers, who are dark-skinned Nigerians and one of whom is friends with Smollett, as Smollett's attackers. (*Id.* ¶ 23.) The Osundairo Brothers admitted that they had attacked Smollett and that the attack was a hoax orchestrated by Smollett. (*Id.* ¶ 36.) Under Illinois law, the Osundairo Brothers' statements incriminating Smollett would be enough on their own to demonstrate probable cause. *See Johnson*, 341 Ill. App. 3d at 72-73 ("information from other persons" is a reasonable basis for probable cause).

Here, however, the counterclaims allege additional facts that incriminate Smollett. For example, the counterclaims allege that Smollett knew his attackers well, communicated and met with them before the attack, asked for their help "on the low," and paid them $3,500 shortly before the attack. (*Id.* ¶¶ 73, 74, 82, 86, 87-88.) These allegations confirm that it was not just reasonable, but entirely logical for the City Defendants to believe that Smollett made a false report to CPD.

Smollett alleges that there was additional context for his communications with the Osundairo Brothers, that the Brothers were not reliable witnesses, and that there were alternative suspects CPD should have investigated. But probable cause does not require that police chase down every lead or verify every statement made by a witness; it requires only that, acting with reasonable prudence and caution, the City Defendants honestly believed that Smollett made a false police report. *See Johnson*, 341 Ill. App. 3d at 73, 75-76 (finding probable cause existed

9

and rejecting malicious prosecution claim despite factual inconsistencies and alternative theories identified by plaintiff); *Stockley v. Joyce*, No. 4:18-CV-873 CAS, 2019 WL 630049, at *23 (E.D. Mo. Feb. 14, 2019) (finding probable cause existed despite "minor inconsistencies or omissions by a malicious prosecution defendant"). Here, not only did the Osundairo Brothers' statements incriminate Smollett, but CPD's investigation uncovered several pieces of circumstantial evidence, discussed above, that also led the City Defendants to reasonably believe Smollett's police reports were false. Accordingly, the Court should dismiss Smollett's claim because Smollett's own allegations demonstrate that the City Defendants had probable cause. *See Coleman*, 2017 IL App (1st) 161492-U, ¶¶ 22-23 (upholding dismissal of malicious prosecution claim on probable cause element where a single witness incriminated plaintiff and circumstantial evidence corroborated the witness's statement).

### C. Smollett Has Not Sufficiently Alleged That the City Defendants Acted with Malice.

Smollett's claim also fails because he has not sufficiently alleged that the City Defendants acted with malice. To plead malice in this context, Smollett must allege facts plausibly showing "that the prosecutor was actuated by improper motives." *Turner*, 91 Ill. App. 3d 931 at 937; *see also Johnson*, 341 Ill. App. 3d at 76-77 (defining malice as when "proceedings were commenced . . . with the purpose of injuring [plaintiff]"); *Mack v. First Sec. Bank of Chi.*, 158 Ill. App. 3d 497, 501 (1st Dist. 1987) (defining improper motive as "any reason other than to bring a party to justice"); *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) (malice may be shown "by evidence of personal animosity or inferred from . . . a failure to conduct an adequate investigation under the circumstances"). Importantly, "malice may not be inferred where probable cause exists." *Turner*, 91 Ill. App. 3d 931 at 937 (citation omitted). As explained above, the City Defendants had probable cause to

believe that Smollett made a false police report. Malice therefore cannot be inferred, so Smollett's claim should be dismissed. *Id.*

Even if probable cause were lacking, the counterclaims do not plausibly plead facts supporting Smollett's conclusory allegation that the City Defendants acted with improper motives. Smollett attempts to support an inference of malice by alleging that the City Defendants made false public statements about the evidence, including statements that Smollett paid the Osundairo Brothers $3,500 to attack him because he was dissatisfied with his salary and that Smollett sent himself a threatening letter. (Countercl. ¶¶ 66-73, 126-29.) Smollett also alleges that the City Defendants ignored key evidence undercutting the Osundairo Brothers' statements and providing context to his communications with them. (*Id.* ¶¶ 81-89, 126-29.)

These allegations do not support an inference of malice. The counterclaims do not allege that the City Defendants knew Smollett personally before this incident, so there could not have been any personal animus or pre-existing motive to target Smollett. *See Johnson*, 341 Ill. App. 3d at 76-77 (finding lack of malice where defendants had "never met plaintiff" prior to criminal proceedings and "bore plaintiff [no] ill will"). The counterclaims at most suggest only that the City Defendants erred in arresting Smollett and then publicly discussed some of the reasons for the arrest. If that were enough to plead malice, then every allegedly erroneous arrest involving press coverage would result in a malicious prosecution claim. That is not the law. *See Khan v. Ryan*, 145 F. Supp. 2d 280, 286 (E.D.N.Y. 2001) (rejecting malicious prosecution claim for lack of malice where officers made mistake in applying ordinance but acted on good faith belief that plaintiff violated the law); *Harris v. News-Sun*, 269 Ill. App. 3d 648, 653 (2d Dist. 1995) (explaining, in libel action, that a police officer cannot be held liable for statements to media about investigation made within scope of official duties).

11

Here, the counterclaims do not plausibly allege that the City Defendants acted in bad faith or with personal animus. Rather, the counterclaims suggest only that the City Defendants drew reasonable conclusions from the available evidence. Accordingly, the Court should dismiss Smollett's claim against the City Defendants for lack of malice.

## II. Smollett's Federal Malicious Prosecution Claim Also Fails.

Count II asserts a claim for malicious prosecution under 42 U.S.C. § 1983. "A § 1983 claim must be rooted in a constitutional violation." *Neita v. City of Chi.*, No. 19 C 595, 2019 WL 5682838, at *4 (N.D. Ill. Nov. 1, 2019). Smollett does not, however, make clear which constitutional amendment underlies his claim. For that reason alone, the Court should dismiss Smollett's federal malicious prosecution claim.

To the extent Smollett is attempting to plead a malicious prosecution claim rooted in the Fourth Amendment, it should be dismissed because "there is no right of action for malicious prosecution based on the Fourth Amendment." *Id.* (citing *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("There is no such thing as a constitutional right not to be prosecuted without probable cause") (quotation omitted)); *see also Myers v. Bresnahan*, No. 18 C 8312, 2019 WL 2450489, at *2 (N.D. Ill. June 12, 2019) (same). There is similarly no federal malicious prosecution right of action based on the Due Process Clause. *See Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019) (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918-19 (2017)).

Even if a constitutional claim for malicious prosecution did exist, at minimum, its elements would include a lack of probable cause and a favorable outcome. *See Watkins v. Vill. of Maywood*, No. 17 C 8750, 2018 WL 1898459, at *2-3 (N.D. Ill. Apr. 20, 2018) (noting Seventh Circuit has not recognized federal malicious prosecution claim but describing elements other Circuits use) (citing *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99, 101 (1st Cir. 2013)).

12

As discussed above, Smollett has not sufficiently alleged either of these elements, so this claim would still fail.

Finally, to the extent Smollett is trying to allege some other type of constitutional claim—which he has not done—that claim would also fail. At a minimum, any constitutional claim would require allegations showing that probable cause was lacking. *See Lewis*, 914 F.3d at 476. As we have explained, Smollett failed to plead a lack of probable cause. For that and other reasons, the Court should dismiss Smollett's federal claim against the City Defendants.

## CONCLUSION

For the aforementioned reasons, the Court should dismiss Smollett's counterclaims against the City Defendants in their entirety with prejudice.


Dated: December 16, 2019

Respectfully submitted,

/s/ Renai S. Rodney
Renai S. Rodney
Jennifer K. Bagby
Elie T. Zenner
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, IL 60602
312-744-0200
renai.rodney@cityofchicago.org
elie.zenner@cityofchicago.org

*Attorneys for Counterclaim City Defendants*

**CERTIFICATE OF SERVICE**

I certify that on December 16, 2019, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/ Elie T. Zenner