IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> JUSSIE SMOLLETT, an individual, <br><br> Defendant. | Case No. 1:19-cv-04547 |
| JUSSIE SMOLLETT, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, MICHAEL THEIS, EDWARD WODNICKI, EDDIE JOHNSON, JOHN and JANE DOE DEFENDANTS 1-10, ABIMBOLA OSUNDAIRO, and OLABINJO OSUNDAIRO <br><br> Counterclaim-Defendants. | |

## RESPONSE TO THE CITY DEFENDANTS' MOTION TO DISMISS SMOLLETT'S COUNTERCLAIM

Counterclaim-Plaintiff Jussie Smollett, by and through his attorneys, The Quinlan Law Firm LLC, hereby respectfully submits his response in opposition to the motion to dismiss his Counterclaim filed by Counterclaim-Defendants the City of Chicago, Eddie Johnson, Edward Wodnicki, Michael Theis, and John and Jane Doe Defendants 1-10 (collectively "the City Defendants"), and states as follows:

1

**INTRODUCTION**

The Court should deny the City Defendants' motion to dismiss because Mr. Smollett has plausibly alleged that the City Defendants maliciously prosecuted him and deprived him of his constitutional rights protecting him from detention without probable cause. *See* U.S. Const. amend. IV. At best, the City Defendants focus on whether Mr. Smollett will ultimately be able to prove his claims. Such matters, however, are properly decided on a motion for summary judgment or at trial, not at this stage pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which challenges whether a party has plausibly stated a claim. For these reasons, as discussed further below, the Mr. Smollett respectfully submits that the Court should deny the City Defendants' motion to dismiss in its entirety.[1]

**LEGAL STANDARD**

To evaluate a motion to dismiss a complaint under Rule 12(b)(6), the Court "'accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the plaintiffs' favor.'" *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) (citation omitted). "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a plaintiff must plead facts sufficient to show that his claim has substantive plausibility. *Id.* at 12. To survive a motion to dismiss under 12(b)(6), a pleading need only contain allegations which "plausibly suggest that the plaintiff has a right to relief, raising that possibility

---

[1] If the Court grants the City Defendants' motion in whole or in part, Mr. Smollett respectfully requests that the Court's order be without prejudice so that Mr. Smollett may cure any pleading defects through an amended Counterclaim. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 519-20 (7th Cir. 2015) (reiterating that a party should be given an opportunity to try to amend her complaint before the entire action is dismissed).

above a speculative level." *Hill v. Serv. Employees Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017) (internal quotation marks and citation omitted).

## ARGUMENT

By his claim for state law malicious prosecution, Mr. Smollett seeks to recover damages as a result of the City Defendants' role in bringing an unprecedented 16-count indictment against Mr. Smollett, the victim of a racist and homophobic attack, based on plainly unreliable testimony, which Cook County prosecutors quickly dismissed in its entirety. In their motion to dismiss, the City Defendants argue that Mr. Smollett failed to adequately plead several elements of a state law malicious prosecution claim. Specifically, they argue that Mr. Smollett has not pled that the criminal proceeding terminated in his favor, that there was no probable cause for the proceeding, or that the City Defendants acted with malice. The City Defendants predicate each point on purported contentions as to what Mr. Smollett may or may not ultimately prove, not the substance of the allegations in Mr. Smollett's counterclaims.

Contrary to the City Defendants' Motion, Mr. Smollett adequately pleads each of the elements for state law malicious prosecution, including those that the City Defendants dispute. The Cook County prosecutors dismissed all charges against Mr. Smollett *nolle prosequi* and by so doing, terminated the proceedings against him. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242-43 (Ill. 1996). Mr. Smollett alleges that the lack of reliable or corroborated evidence that he committed any crime, coupled with the prompt dismissal of the 16-count indictment against him, are sufficient to show that the proceedings terminated in his favor in a manner indicative of his innocence because it was improbable that he could be found guilty. *Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, 2016 WL 6270768, at *21 (N.D. Ill. Oct. 26, 2016), *aff'd*, 931 F.3d 592 (7th Cir. 2019). As for the lack of probable cause, Mr. Smollett alleges that the facts show that none of the statements proffered to support probable cause were reliable. Finally, Mr. Smollett alleges that the City Defendants prosecuted him without probable cause to conclude their investigation into the high-

profile attack after the City Defendants' investigation failed to locate a white-skinned individual identified at or near the scene of the attack by Mr. Smollett and two independent witnesses. In the process, the City Defendants took various actions that illustrate that they attempted to prosecute Mr. Smollett rather than attempting to bring a guilty party to justice. That combined with the allegations that City Defendants lacked probable cause sufficiently establish malice for purposes of the malicious prosecution claim.

In Mr. Smollett's second claim, under 42 U.S.C. § 1983, the substance of the allegations adequately state a claim for the deprivation of Mr. Smollett's constitutional rights. While the Seventh Circuit does not recognize Section 1983 malicious prosecution, per se, Mr. Smollett alleges that City Defendants, under color of law, wrongfully arrested and detained him without probable cause. These allegations state a claim for the deprivation of Mr. Smollett's rights under the Fourth Amendment so that the Section 1983 claim should therefore stand. *See Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019) (reversing dismissal of Section 1983 claim and holding that "[t]o the extent that her claim is one for unlawful detention without probable cause, it may survive beyond the pleading stage . . . .").

**I. Mr. Smollett's Counterclaim States a Claim for State Law Malicious Prosecution, Including that the Proceedings Terminated in His Favor, the Absence of Probable Cause, and Malice by the City Defendants.**

**A. Mr. Smollett plausibly alleges that the criminal proceedings against him terminated in a manner indicative of his innocence.**

1. *The dismissal nolle prosequi of all charges against Mr. Smollett terminated the proceedings against him.*

The City Defendants' initial argument—that the criminal proceedings against Mr. Smollett have not terminated—is wrong and contrary to Illinois law, including authority they cite. In *Swick v. Liautaud*, 662 N.E.2d 1238 (Ill. 1996), the Illinois Supreme Court recognized that "a *nolle prosequi* 'is not a final disposition of a case but * * * is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution.'" 662 N.E.2d at

1242 (quoting *People v. Woolsey*, 564 N.E.2d 764 (Ill. 1990)). Importantly, in *Swick* the court adopted the majority rule "that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Id.* at 1242-43 (citations omitted); *see also Ferguson v. City of Chicago*, 820 N.E. 2d 455, 460 (Ill. 2004) ("Because the charges in *Swick* were nol-prossed, there was no dispute that the criminal proceeding had been terminated."). This "majority rule best reflects the need to balance an individual's right to be free from unreasonable criminal prosecutions with the public policy which favors the exposure of crime." *Swick*, 662 N.E.2d at 1243 (citing *Joiner v. Benton Cmty. Bank*, 411 N.E.2d 229 (Ill. 1980)).

None of the cases the City Defendants cite in support of their argument involve criminal charges dismissed *nolle prosequi*; rather, they conflate dismissal *nolle prosequi* with cases stricken on leave to reinstate ("SOL"). (*See* City Defs.' Mem. In Supp., at 5-6.) *Ferguson*, which involved charges that were SOL, is instructive on the distinction between the two procedures. "In contrast to an SOL order, which leaves the criminal proceedings pending, a *nolle prosequi* order terminates the charge and requires the institution of a new and separate proceeding to prosecute the defendant." *Ferguson*, 820 N.E.2d at 460.

Here, as Mr. Smollett alleges, the Cook County prosecutors promptly dismissed all 16 counts of the criminal indictment against him a mere two and a half weeks after filing the high-profile indictment. (*See* Counterclaim ¶¶ 111, 135.) The City Defendants note that the criminal proceedings terminated via a *nolle prosequi* order and were not SOL. (*See* City Defs.' Mem. In Supp., at 3 & Ex. A, at 5.) As explained in *Swick*, the *nolle prosequi* reverts the matter back to the pre-prosecution condition. Consequently, the City Defendants' injection of Judge Toomin's Order and the subsequent investigation of special prosecutor Dan Webb have no bearing on the issue of whether the proceedings against Mr. Smollett terminated.[2] The Cook County prosecutors'

---

[2] To the extent the City Defendants contend that Mr. Smollett's criminal case did not terminate in his favor, such a position is based on their improper effort to inject allegations about the purported circumstances surrounding the dismissal of charges, rather than the pleading itself, which is inappropriate for a motion to dismiss. *See Kinney v. Dominick's Finer Foods, Inc.*, 780 F. Supp.

abandonment *nolle prosequi* of the proceedings against Mr. Smollett terminated the proceedings for purposes of a malicious prosecution claim.

> 2. *The allegations plausibly state that the proceedings terminated in a manner indicative of Mr. Smollett's innocence.*

The City Defendants inaccurately state that "Smollett alleges[] Cook County dismissed the criminal charges against Smollett in exchange for Smollett's agreement to perform community service and forfeit his $10,000 bond." (City Defs.' Mem. In Supp., at 7.) However, this allegation is not contained anywhere in Mr. Smollett's Counterclaim. The City Defendants also assert that the dismissal of the criminal charges was "not a proclamation that Smollett was innocent," and they improperly cite statements Cook County prosecutors made following the dismissal. (*See* City Defs.' Mem. In Supp., at 7.) However, the City Defendants again try to inject extraneous facts that have no bearing on the facts Mr. Smollett pleaded nor are these extraneous facts properly subject to judicial notice. While the *existence* of news articles is a proper subject for judicial notice, the *content* of the publications is not. *See Bardney v. United States*, 151 F.3d 1032 (7th Cir. 1998) (noting that it would be improper for the district court to take judicial notice and rely on the content of articles). Here, discovery is necessary to substantiate the reasons for the prosecutors' abandonment of the criminal proceedings. As it stands, Mr. Smollett has plausibly pleaded that the City Defendants lacked any reliable evidence or probable cause to commence proceedings against him, as discussed further below, and the prosecutors' prompt dismissal of the 16-count indictment in such a high-profile case indicates that they recognized they had no case to prosecute.

Under *Swick*, the critical inquiry is whether "abandonment is for reasons not indicative of the innocence of the accused." 662 N.E.2d at 1243 (citing, *inter alia*, RESTATEMENT (SECOND) OF TORTS §§ 659, 660, 661 (1977)). "The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise

---

1178, 1182 (N.D. Ill. 1991) ("The introduction, however, of additional facts in [defendant's] brief was improper in a Rule 12(b)(6) motion which is strictly a procedural device to test the sufficiency of the plaintiff's pleadings.") (citing *Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir.1990)).

6

with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* (citing RESTATEMENT (SECOND) OF TORTS §§ 660, 661 (1977)). The foregoing situations, however, are not absolute; rather they must be viewed in the context of the prosecutor's reason for abandonment. *See* RESTATEMENT (SECOND) OF TORTS § 660, cmt. d ("The abandonment of the proceedings because the accuser believes that the accused is innocent or that a conviction has, in the natural course of events, become impossible or improbable, is a sufficient termination in favor of the accused. In that case it is immaterial that the proceedings were abandoned at the request of the accused rather than upon the uncontrolled initiative of the private prosecutor."); *see also Bridewell v. Eberle*, 720 F.3d 672 (7th Cir. 2013) (Wood, J., concurring) (noting she would find that a plea bargain would not "categorically bar[ plaintiff] from showing that her *nolle prosequi* reflected her innocence" because it is not clear if the *Swick* court "meant to create an absolute rule" in those situations).

The reasons for abandonment of proceedings are matters of fact suited to summary judgment or trial, not a motion to dismiss. In *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976 (N.D. Ill. 2009), for example, the court denied a motion to dismiss a malicious prosecution claim, based on the plaintiff's arrest for false impersonation of a peace officer, because it was premature to decide whether the proceedings terminated in plaintiff's favor. 674 F. Supp. 2d 976. The plaintiff did not indicate the manner in which the proceedings were terminated "beyond alleging that they were terminated in a manner indicative of Plaintiff's innocence." *Id.* at 987. The defendants moved to dismiss because the prosecution was terminated *nolle prosequi*, following a motion to suppress hearing. The court concluded that "[b]ecause it is not clear why the prosecutor elected not to prosecute Plaintiff for false personation of a peace officer, it would be premature to dismiss Plaintiff's malicious prosecution claim at this time." *Id.* Similarly, in *Lindsey v. Tews*, No. 09 C 1078, 2009 WL 2589524 (N.D. Ill. Aug. 19, 2009), the court denied a motion to dismiss a malicious prosecution claim because community service in connection with *nolle prosequi* was

not necessarily a compromise inconsistent with innocence. In that case, the defendants argued that a resisting arrest charge was not terminated in Lindsey's favor because the *nolle prosequi* was dependent upon a compromise in which Lindsey was required to complete twenty hours of community service. 2009 WL 2589524, at *2. Rejecting that argument, the court found that the defendants had not shown that the *nolle prosequi* "was necessarily a compromise" nor did they supply any authority to support their assertion that a compromise would necessarily mean that Lindsey received an unfavorable termination. *Id.* The court reasoned:

> Though [*Washington v. Summerville*, 127 F.3d 552 (7th Cir. 1997)] clearly states that an agreement or compromise does not indicate innocence, an agreement or compromise does not require a finding of unfavorable termination. *Id.* Lindsey must be afforded the opportunity to prove a favorable termination. Therefore, it cannot be said that it appears beyond doubt that Lindsey cannot support his claim of favorable termination.

*Id.* Accordingly, the bare existence of an agreement in connection with a *nolle prosequi* does not defeat a malicious prosecution claim, particularly at this stage.

The City Defendants rely on authority that is consistent with the foregoing. For example, in *Logan v. Caterpillar, Inc.*, 246 F.3d 912 (7th Cir. 2001), the Seventh Circuit affirmed summary judgment in favor of defendant on a malicious prosecution claim against plaintiff's former employer based on a compromise leading to the *nolle prosequi* dismissal of a criminal trespass charge. The State's Attorney agreed not to prosecute Logan for the trespass and the alleged violations of an order of protection in exchange for Logan entering into a new, more restrictive protective order. 246 F.3d at 925. In *Joiner v. Benton Community Bank*, 411 N.E.2d 229 (Ill. 1980), which predates *Swick*, the Illinois Supreme Court reversed the appellate court and affirmed the circuit court's grant of summary judgment for defendant on a malicious prosecution claim where a used car dealer entered into an agreement to pay the bank *full restitution* after which the prosecutor would dismiss charges. 411 N.E.2d at 230. Common to these cases are the disposition at the summary judgment stage and agreements that are tantamount to some admission of guilt for the prior offense charged. *See also Gray v. Burke*, 466 F. Supp. 2d 991 (N.D. Ill. 2006) (granting

summary judgment where plaintiff agreed to pay parking fee from charge resulting from refusal to pay parking fee in connection with guilty plea to disorderly conduct).

Here, the City Defendants misconstrue the Counterclaim and incorrectly assert that "Cook County prosecutors dismissed the criminal charges against Smollett in exchange for Smollett's agreement to perform community service and forfeit his $10,000 bond."[3] (City Defs.' Mem. In Supp., at 7.) On the contrary, the Counterclaim details how the City Defendants made false statements, intentionally ignored evidence that undercut the hoax narrative, and initiated proceedings against Mr. Smollett even though they lacked any reliable evidence that Mr. Smollett made a false police report, all so that the City Defendants could close a high-profile investigation to avoid further public scrutiny. (*See* Countercl. ¶¶ 66-110, 125-32.) Shortly after turning the matter over to the State's Attorney, the prosecutors dropped all the charges. (*Id.* ¶¶ 111, 135.)

The City Defendants' effort to argue the facts related to the termination of the proceedings is wrong, premature at best, and should be rejected.

### B. In the absence of any reliable evidence to support the criminal charges against Mr. Smollett, the City Defendants lacked probable cause.

Mr. Smollett adequately pleads that the City Defendants lacked probable cause. The City Defendants argue that Mr. Smollett's malicious prosecution claim fails because his allegations show that the City Defendants had probable cause in proceeding against him in the underlying criminal case. (City Defs.' Mem. In Supp., at 8-10.) Apart from misrepresenting the pleading, the City Defendants do not address whether Mr. Smollett has plausibly stated a claim for relief, the standard under Rule 12(b)(6).

---

[3] Notwithstanding the assertions by the City Defendants (City Defs.' Mem. In Supp., at 3, 7) and CPD spokesperson Anthony Guglielmi (Countercl. ¶ 113) that Mr. Smollett agreed to perform community service in exchange for the dismissal of criminal charges, Mr. Smollett did not, nor has he alleged, that he agreed to do community service in exchange for the dismissal of charges. Mr. Smollett acknowledges that his $10,000 bond went to the City in connection with the dismissal of charges, but in no way alleges that the dismissal of the charges depended on that agreement, that it amounted to restitution in any way, or that it was otherwise in a manner inconsistent with his innocence.

For state law malicious prosecution, "[p]robable cause is a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Smith v. Burge*, 222 F. Supp. 3d 669, 690 (N.D. Ill. 2016) (internal citations and quotations omitted). "Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime." *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000) (citing *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir.1999)). Whether probable cause exists or is lacking is a factual determination. *See, e.g.*, *Guzell v. Hiller*, 223 F.3d 518, 522 (7th Cir. 2000) (reversing as premature district court's Rule 12 (b)(6) dismissal of false arrest claim based on lack of probable cause).

The *Burge* case is instructive on the sufficiency of pleading the lack of probable cause. In that case, as here, the plaintiff alleged that the defendants lacked probable cause to prosecute him for crimes he did not commit. *Burge*, 222 F. Supp. 3d at 690-91. The allegations stated that the defendants coerced the plaintiff's confession based on a story that the defendants invented, and then defendants memorialized that fabricated evidence to use against the plaintiff in criminal proceedings. *Id.* at 691. Under the circumstances in that case, the court found that it could reasonably infer that the confession was not reliable, and so the plaintiff sufficiently alleged lack of probable cause under the federal pleading standards. *Id.*; *accord Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642-646, 784 N.E.2d 258, 266-271 (1st Dist. 2002) (reversing the trial court's order granting summary judgment in favor of defendants on malicious prosecution claim on the basis that the facts failed to show that any of the statements proffered to support probable cause were reliable).

The City Defendants improperly argue that Mr. Smollett's malicious prosecution claim should be dismissed under Rule 12(b)(6) because they contend probable cause existed, relying essentially on *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 791 N.E.2d 1206 (1st Dist. 2003), which is inapposite here. In *Johnson*, the appellate court reversed judgment on a jury verdict for malicious prosecution based on the court's assessment of the evidence, not the sufficiency of the

pleading. 341 Ill. App. 3d 56, 76, 791 N.E.2d 1206, 1222. The unpublished decision the City Defendants cite, *Coleman v. Village of Evergreen Park*, 2017 IL App (1st) 161492-U (1st Dist. Sept. 6, 2017), which affirmed the dismissal of malicious prosecution based on an underlying charge of fleeing the scene of an automotive accident, is distinguishable in two critical respects. In that case, the court found that probable cause existed based on the presumption that information from a crime victim is inherently reliable, and the plaintiff admitted that he had been involved in an accident. *Coleman*, 2017 IL App (1st) 161492-U, ¶¶ 22-23.

Here, Mr. Smollett alleges that the City Defendants initiated proceedings against him based on the Osundairo Brothers' false, self-serving, and "clearly not reliable" statements in order to close the sprawling, high-profile investigation into the attack on Mr. Smollett. (*See* Countercl. ¶¶ 43-44, 79-81, 132, 144-45.) Unlike *Coleman*, the Osundairo Brothers were not providing statements as victims of a crime—rather, their statements were "false and self-serving to avoid criminal charges being filed against them." (*Id.* ¶ 43.) City Defendants Wodnicki and Johnson "unreasonably authorized the felony complaint against Mr. Smollett based on the Osundairo Brothers' unreliable and self-serving statements without any further investigation and any independent corroboration." (*Id.* ¶ 145.)

In addition, the City Defendants "possessed substantial evidence which supported Mr. Smollett's account of the attack and undercut the Osundairo Brothers' story that the attack was a hoax, which [the City Defendants] ignored so that they could close the investigation . . . ." (*Id.* ¶ 81.) Apart from the Osundairo Brothers' statements, Mr. Smollett alleges that the City Defendants knew that the evidence showed that the $3,500 check from Mr. Smollett was for training and nutrition (*see id.* ¶ 73) and that the "on the low" text message concerned obtaining herbal steroids in Nigeria (*see id.* ¶¶ 87-93).

In sum, Mr. Smollett alleges that the City Defendants lacked any reasonable basis to believe that he made a false police report, and so the Court should reject their argument that the Counterclaim fails to adequately plead lack of probable cause.

### C. Mr. Smollett sufficiently alleges that the City Defendants acted with malice.

Mr. Smollett sufficiently alleges that the City Defendants acted with malice by proceeding against him because they acted without probable cause and not to do justice but rather because they failed to identify his primary attacker. The City Defendants argue that Mr. Smollett does not plausibly allege that they acted with improper motives based on their false statements about the evidence and the fact that they ignored key evidence. (City Defs.' Mem. In Supp., at 11.) This argument inaccurately cherry-picks from both Mr. Smollett's allegations and the pleading standard for malice.

"Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 349, 733 N.E.2d 835, 842 (1st Dist. 2000) (citation omitted) (reversing summary judgment of malicious prosecution claim based on malice and probable cause elements). A "trier of fact may infer malice from lack of probable cause if there is no credible evidence which refutes that inference." *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 647, 784 N.E.2d 258, 270 (1st Dist. 2002) (citing *Rodgers*, 315 Ill.App.3d at 349, 733 N.E.2d 835); *see also Smith v. Burge*, 222 F. Supp. 2d 669, 692 (N.D. Ill. 2016) ("Malice can be inferred when a defendant lacks probable cause and the circumstances indicate a lack of good faith." (citation and quotations omitted)).

Allegations showing that defendants were motivated by something other than bringing a guilty party to justice plausibly alleges malice. In *Burge*, the plaintiff alleged that the defendants coerced and fabricated a confession during his interrogation. 222 F. Supp. 2d at 692. On that basis, the court concluded the plaintiff "plausibly alleged malice by contending that" the defendants "were motivated by something other than bringing a guilty party to justice." *Id.* (finding also that because the plaintiff sufficiently alleged the absence of probable cause, the court could infer malice).

Like the *Burge* case, Mr. Smollett alleges that reasons other than bringing a guilty party to justice motivated the City Defendants and, as discussed above, that they lacked probable cause, each of which independently supports plausible allegations of malice. Mr. Smollett properly

12

alleges that the City Defendants facilitated false statements by the Osundairo Brothers (Countercl. ¶ 125); disregarded and ignored the facts showing the purported evidence against Mr. Smollett was false (*id.* ¶ 126); knowingly made false statements and covered up exculpatory evidence (*id.* ¶¶ 127-28); and leaked admittedly false information to prosecute Mr. Smollett (*id.* ¶ 129). The City Defendants took all of these actions to "solve" the high-profile attack on Mr. Smollett in the face of mounting public pressure (*id.* ¶ 132), where they had failed to otherwise identify and/or gather sufficient evidence against the guilty parties (*see id.* ¶¶ 97-109). These allegations plausibly establish that, in the face of public pressure to end the investigation, the City Defendants proceeded against Mr. Smollett in the absence of probable cause rather than continuing the investigation to bring the guilty parties to justice. Accordingly, Mr. Smollett plausibly alleges that the City Defendants acted with malice and the Court should reject their argument to the contrary.

## II. Mr. Smollett's Claim under Section 1983 Plausibly States that the City Defendants Deprived Him of His Constitutional Rights Under Color of Law.

For Mr. Smollett's Section 1983 claim, the City Defendants first argue that it should be dismissed because it is styled under a heading of malicious prosecution without identifying the underlying constitutional amendment. (City Defs.' Mem. In Supp., at 12.) As discussed below, this argument elevates form over substance, and the latter, which is the focus for purposes of the Rule 12(b)(6) motion, plausibly states a claim. Second, the City Defendants argue that to the extent Mr. Smollett alleges a constitutional claim, it would fail because he "failed to plead a lack of probable cause." (*Id.* at 13.) As discussed above, what the City Defendants call "fail[ure] to plead a lack of probable cause" is actually arguing that Mr. Smollett has not yet *proved* a lack of probable cause, which is beyond the scope of Rule 12(b)(6). More importantly, however, this contention demonstrates that Mr. Smollett's allegations give the City Defendants fair notice of claim for relief sought under Section 1983. Despite the malicious prosecution heading, the factual allegations plausibly state a claim under Section 1983 for the City Defendants' violation of Mr. Smollett's Fourth Amendment rights.

The factual allegations sufficiently give the City Defendants fair notice of his claim for relief under Section 1983 and the claim is substantively plausible even without citation to the

Fourth Amendment. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (holding that despite not citing Section 1983 in their complaint, "[h]aving informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). Under the Federal Rules, "the complaint need contain only factual allegations that give the defendant fair notice of the claim for relief and show the claim has 'substantive plausibility.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015) (citation omitted); *see also Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 988 (N.D. Ill. 2009) ("Under Rule 8 and the federal regime, '[n]otice is what counts. Not facts; not elements of 'causes of action'; not legal theories.'") (quoting *Hefferman v. Bass*, 467 F.3d 596, 600 (7th Cir. 2006)). Mr. Smollett submits the following to clarify his Section 1983 claim, as "the Seventh Circuit allows a plaintiff to supplement allegations in responding to a Rule 12(b)(6) motion, provided the supplemental allegations are consistent with the complaint." *SEC v. River N. Equity LLC*, No. 19 C 1711, 2019 WL 6527971, at *2 (N.D. Ill. Dec. 4, 2019) (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 745-46 n.1 (7th Cir. 2012)).

Under Seventh Circuit precedent, "[t]o survive a motion to dismiss a § 1983 claim, a plaintiff must allege facts which show that the defendant(s) deprived him of a right secured by the Constitution . . . that the deprivation of that right resulted from the defendant(s) acting under color of law." *Garagher v. Marzullo*, 478 F. Supp. 2d 1008, 1011 (N.D. Ill. 2006) (citing *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005)). The Seventh Circuit recognizes that there is a constitutional right under the Fourth Amendment not to be held in custody without probable cause. *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). In *Mitchell v. City of Elgin*, 912 F.3d 1012 (7th Cir. 2019), the Seventh Circuit held that "[t]o the extent that her claim is one for unlawful detention without probable cause, it may survive beyond the pleading stage . . . ." 912 F.3d at 1015 (reversing the dismissal of a claim under Section 1983 for wrongful detention where the City of Elgin police arrested Mitchell, she immediately posted a bond, and was released the same day); *see also Anderson v. La Penna*, No. 18-C-6159, 2019 WL 1239667, at *3 (N.D. Ill. Mar. 18, 2019) ("By alleging he was detained without probable cause, plaintiff has stated a claim under *Manuel*.").

Under this standard, the substance of Mr. Smollett's allegations plausibly state a claim under Section 1983 for the deprivation of his Fourth Amendment rights. The City Defendants, under color of law and at the direction and with authorization of Eddie Johnson, a policymaker for the City of Chicago acting with deliberate indifference to Mr. Smollett's rights, arrested and detained Mr. Smollett in custody for approximately 10 hours on February 21, 2019. (Countercl. ¶¶ 66, 145, 147, 154, 159.) As discussed above, Mr. Smollett alleges that the City Defendants did not have probable cause to arrest and detain him. (*See also id.* ¶¶ 139-40, 148, 157 (alleging that the City Defendants acted under color of law in acting to institute criminal proceedings against Mr. Smollett, and that they were aware there was no probable cause to do so.).) And these actions by the City Defendants directly and proximately caused the deprivation of Mr. Smollett's right to be free of detention without probable cause and his injuries. (*Id.* ¶ 159.) In sum, Mr. Smollett alleges that the City Defendants, under color of law, wrongfully arrested and detained him without probable cause, causing Mr. Smollett damages. These allegations plausibly allege a claim under Section 1983 and sufficiently put City Defendants on notice of the claim for relief.

## CONCLUSION

WHEREFORE, the City Defendants' Motion to Dismiss Smollett's Counterclaim should be denied in its entirety. If, however, the Court grants the City Defendants' motion in whole or in part, Mr. Smollett respectfully requests that the Court's order be without prejudice so that Mr. Smollett may cure any defects through an amended Counterclaim. *See Runnion*, 786 F.3d at 519-20 ("a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed. We have said this repeatedly.").

Date: January 15, 2020

Respectfully submitted,

/s/ David E. Hutchinson
William J. Quinlan
David E. Hutchinson
THE QUINLAN LAW FIRM, LLC
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 883-5500
wjq@quinlanfirm.com
dhutchinson@quinlanfirm.com
*Attorneys for Defendant /
Counterclaim-Plaintiff Jussie Smollett*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

/s/ Nicole Griesbach