IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:19-cv-04547 |
| JUSSIE SMOLLETT, | ) Honorable Virginia M. Kendall |
| Defendant. | ) |
| JUSSIE SMOLLETT, | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| CITY OF CHICAGO, MICHAEL THEIS, EDWARD WODNICKI, EDDIE JOHNSON, JOHN and JANE DOE DEFENDANTS 1-10, ABIMBOLA OSUNDAIRO, and OLABINJO, OSUNDAIRO | ) |
| Counterclaim-Defendants. | ) |

**THE CITY DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SMOLLETT'S COUNTERCLAIMS**

Counterclaim-Defendants Eddie Johnson, Edward Wodnicki, Michael Theis, and John and Jane Doe Defendants 1-10, and the City of Chicago (collectively "the City Defendants") submit this Reply in support of their motion to dismiss Counterclaim-Plaintiff Jussie Smollett's ("Smollett") Counterclaims.

### INTRODUCTION

The City Defendants' Motion to Dismiss argued that Smollett's claims fail because (1) he cannot plausibly allege that the criminal proceedings against him terminated in his favor; (2) his

1

own allegations demonstrate the existence of probable cause; and (3) he failed to sufficiently allege that the City Defendants acted with malice. In his Response, Smollett primarily argues that the City Defendants' arguments are more properly addressed at the summary judgment stage. More specifically, Smollett argues that (1) Cook County prosecutors' decision to *nolle prosequi* charges against him was a termination in his favor; (2) the statements that supported the City Defendants' probable cause finding were unreliable; and (3) the City Defendants' focus on Smollett instead of other potential suspects demonstrates malice.

Smollett's arguments fail. There is no need for the Court to wait until summary judgment to dismiss Smollett's counterclaims because Smollett's own allegations, as well as publicly available records of which the Court may take judicial notice, demonstrate that Smollett failed to allege the elements of a malicious prosecution claim. First, while some *nolle prosequi* decisions may terminate proceedings against a defendant, this case is unique. A special prosecutor is actively investigating Smollett, and a Cook County court has granted him authority to re-indict Smollett. Under these facts, Smollett's criminal proceedings have not terminated. Second, even if criminal proceedings had terminated, the proceedings did not terminate in Smollett's favor because, as Smollett's allegations and public records show, Smollett agreed to forfeit his bond and perform community service in return for the dismissal of charges against him. Third, Smollett's own allegations demonstrate that it was reasonable for the City Defendants to believe that he probably made a false police report. Fourth, the City Defendants' focus on Smollett as opposed to other improbable suspects is not indicative of malice.

**ARGUMENT**

I. **Smollett's Criminal Proceedings Did Not Terminate in His Favor.**

   A. **The Unique Facts in this Case Demonstrate that Smollett's Criminal Proceedings Have Not Terminated.**

Smollett first argues that because Cook County prosecutors dismissed his charges *nolle prosequi*, his criminal proceedings have fully terminated for purposes of a malicious prosecution claim. (Smollett's Resp. at 4-5.) This may be true in standard *nolle prosequi* cases like those cited by Smollett. Smollett's case, however, is unique. Less than three months after Smollett's *nolle prosequi* dismissal, Judge Toomin of the Circuit Court of Cook County appointed a special prosecutor to re-investigate Smollett's conduct and if appropriate, re-institute criminal proceedings against him. (June 21, 2019 Order, 2019 MR 00014 at 21.) Judge Toomin did so after describing Smollett's purported attack as a "fantasy" and a "hoax the equal of any twisted television intrigue." (*Id.*) Smollett's situation—an ongoing investigation into the exact same crimes for which he was previously indicted and for which he may yet be re-indicted—is thus different than the standard *nolle prosequi* dismissal and instead more analogous to a dismissal without prejudice or with leave to reinstate. (*See* City Defendants' Mem. In Supp. at 5-6 (citing decisions holding that orders dismissing without prejudice or with leave to reinstate do not terminate case.))

Under these facts, Smollett's criminal proceedings have not "finally terminated," and his malicious prosecution claim accordingly fails. *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 754 (N.Y. 2000) (noting that a malicious prosecution plaintiff must show that "a proceeding was *finally* terminated" and explaining that a "disposition of the criminal action which does not terminate it but permits it to be renewed cannot serve as a foundation for the malicious prosecution action") (citation omitted) (emphasis in original); *see also Singleton v. N.Y.*, No. 98 Civ. 414, 1998 WL 438530, at *2 (S.D.N.Y. July 31, 1998) ("Because plaintiff has not alleged that the state court

3

proceedings have terminated in his favor—indeed, they appear to be ongoing—his . . . malicious prosecution claims must be dismissed.").

### B. Smollett's Own Allegations and Public Records Show That His Proceedings Did Not Terminate in His Favor.

Smollett next argues that discovery is necessary to determine whether his criminal proceedings terminated in his favor. (Smollett's Resp. at 6.) Contrary to Smollett's contention, however, this is not a case where additional facts are required to determine the prosecutor's reasons for dismissing charges.

First, Smollett himself alleges that the City's stated reason for dismissing the charges against him was because he agreed to forfeit his bond and perform community service. (Countercl. ¶¶ 111, 113.) Second, Smollett's affirmative defenses assert that he paid $10,000 "as payment in full in connection with the dismissal of charges against him." (Ans. ¶ 68.) Third, numerous credible public records confirm that Smollett's charges were dismissed in return for his agreement to forfeit bond and do community service. In addition to the newspaper articles the City Defendants cited in their opening brief in which the prosecutors explicitly stated that the dismissal was not indicative of Smollett's innocence,[1] the Certified Statement of Disposition states that Smollett forfeited his cash bond on the day the charges were dismissed. (Certified Statement of Disposition 2019 CR 310401 at 4.) Moreover, both Judge Toomin's Order and the transcript from the dismissal hearing quote the prosecutor as stating that the dismissal was fair because of "Smollett's volunteer service in the community and his agreement to forfeit his bond to the City

---

[1] (*See* City Defendants' Mem. In Supp. at 7 n.3.) Smollett takes issue with the City Defendants' citation of newspaper articles, but Smollett himself cited multiple newspaper articles in his briefing in this case. (*See* Smollett's Mot. to Dismiss at 3, ECF #15; Smollett's Reply in Supp. of his Mot. to Dismiss at 1, ECF #23.) In any case, Smollett's own allegations and court records that Smollett does not contest independently demonstrate that the criminal proceedings did not terminate in Smollett's favor.

of Chicago." (June 21, 2019 Order, 2019 MR 00014 at 4; Ex. A, Tr. of March 26, 2019 Hr'g at 2.[2])

These facts and allegations reveal how this case is different from the cases upon which Smollett relies. In *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976 (N.D. Ill. 2009), the plaintiff made no allegations relating to why his proceedings were terminated and there were no relevant public records. The court thus refused to dismiss the case because it was "not clear why the prosecutor" dismissed the charges. *Id.* And in *Lindsey v. Tews*, No. 09 C 1078, 2009 WL 2589524, at *2 (N.D. Ill. Aug. 19, 2009), the plaintiff did not forfeit his bond and claimed that he performed community service not due to his criminal charges but rather as "a requirement for high school graduation." *Id.* As such, the court found that the dismissal of the plaintiff's criminal case was not "necessarily a compromise." *Id.*

Unlike *Gardunio* and *Lindsey*, there is no mystery as to why Smollett's charges were dismissed. Smollett's own allegations, his affirmative defenses, and court records all demonstrate that prosecutors dismissed Smollett's case as a compromise in return for his agreement to perform community service and forfeit his bond, not because he was innocent. *See Swick v. Liautaud*, 169 Ill. 2d 504, 513 (1996) (voluntary dismissal "is not indicative of the innocence of the accused when [it] is the result of an agreement or compromise with the accused"); *Cheatham v. City of Chi.*, No. 16 C 3015, 2018 WL 2096373, at *2, 6 (N.D. Ill. May 7, 2018) (J. Kendall) (rejecting malicious prosecution claim where plaintiff agreed to community service as part of agreed resolution with prosecutors); *Selby v. Bd. of Trustees of Moraine Valley Cmty. Coll., Dist. No. 524*, No. 16 C 3489, 2018 WL 988091, at *12 (N.D. Ill. Feb. 20, 2018) (same); *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d

---

[2] The City Defendants had requested but not received this transcript at the time they filed their motion to dismiss. It is attached here as Exhibit A.

40, 46–47 (1980) (rejecting malicious prosecution claim where plaintiff agreed to repay money taken in theft); *Gray v. Burke*, 466 F. Supp. 2d 991, 995 (N.D. Ill. 2006) (same).

Discovery is thus not necessary. Rather, just as other courts have done under similar circumstances, the Court should dismiss Smollett's Illinois malicious prosecution claim because his criminal case has not terminated in his favor. *See Coleman v. Vill. of Evergreen Park*, 2017 IL App (1st) 161492-U, ¶ 20 (upholding dismissal of malicious prosecution action because State's decision to *nolle prosequi* charge was not indicative of plaintiff's innocence); *Ingram v. Jones*, No. 95 C 2631, 1995 WL 745849, at *7 (N.D. Ill. Nov. 29, 1995), *opinion modified but upheld on denial of reconsideration sub nom. Ingram By & Through Ingram v. Jones*, No. 95 C 2631, 1997 WL 323538 (N.D. Ill. June 9, 1997) (dismissing malicious prosecution claim for lack of favorable termination where charges were dismissed *nolle prosequi*); *Knight v. Carmike Cinemas*, No. CIV.A. 11-280, 2011 WL 3665379, at *9 (D. Del. Aug. 22, 2011) (same); *Dennis v. Evans,* Civ. A. No. 1:09–0656, 2011 WL 900911, at *8 (M.D. Pa. Feb. 2, 2011), *adopted by* 2011 WL 901187 (M.D. Pa. Mar. 14, 2011) (same).

**II.     Based on Smollett's Own Allegations, There Was Probable Cause to Bring Criminal Charges Against Him.**

Smollett next argues that he has sufficiently pled a lack of probable cause because he alleged that the Osundairo Brothers' statements were self-serving, and because he alleged possible explanations for the evidence corroborating the Brothers' statements. (Smollett's Resp. at 10-11.) In making this argument, Smollett relies almost entirely on *Smith v. Burge*, 222 F. Supp. 3d 669 (N.D. Ill. 2016). The facts in that case, however, are very different than those here. In *Smith*, the plaintiff alleged the defendant police officers coerced his confession, invented a story implicating him, used note cards to help remember the fake story, fabricated evidence, and used blatantly racist language when they told the plaintiff that no jury would believe him over a white police officer.

6

*Id.* at 690-91. Based on those extreme allegations, the court found that it could reasonably infer that the plaintiff's confession was unreliable and thus found that he had sufficiently alleged a lack of probable cause. *Id.*

In contrast to *Smith*, here, there are no allegations of racist statements by police, no allegations of coercion, and no allegations that the City Defendants fabricated any evidence. Rather, Smollett's own allegations provide ample support for the City Defendants' reasonable belief that the Osundairo Brothers' statements were reliable and conclusion that Smollett's police report was false. According to the counterclaims, Smollett reported that his attackers were strangers and the primary attacker was "white-skinned." (Countercl. ¶ 13-14.) But the City Defendants' investigation identified the Osundairo Brothers, dark-skinned Nigerians who were known to Smollett and one of whom is friends with Smollett, as his attackers. (*Id.* ¶ 23.)[3] The Osundairo Brothers admitted that they had attacked Smollett and that the attack was a hoax orchestrated by Smollett. (*Id.* ¶ 36.) Further investigation revealed that Smollett knew his attackers well, communicated and met with them before the attack, asked for their help "on the low," and paid them $3,500 shortly before the attack. (*Id.* ¶¶ 73, 74, 82, 86, 87-88.) In contrast to *Smith*, these allegations confirm that it was entirely reasonable for the City Defendants to rely on the Osundairo Brothers' statements and believe that Smollett made a false report to CPD.

Smollett places great emphasis on the fact that the Osundairo Brothers' statements were "self-serving" and claims that they were thus an invalid basis for probable cause. (Smollett's Resp.

---

[3] As Smollett alleges, he went on Good Morning America after the attack. (Countercl. ¶ 22.) In that interview, Smollett himself confirmed that the Brothers, pictured in a surveillance photo obtained by police, were his attackers. *See* Good Morning America, *Jussie Smollett Tells ABC News' Robin Roberts He's Pissed Off' After Vicious Attack*, ABC NEWS, Mar. 26, 2019, *available at* https://www.goodmorningamerica.com/culture/story/jussie-smollett-tells-abc-news-robin-roberts-pissed-61047347 (stating "I don't have any doubt in my mind that's them."). *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (upholding judicial notice of public admission).

at 11.) But under Illinois law, police may reasonably rely on "information from other persons" to form probable cause, even if they do not "verify the correctness of each item of information so obtained." *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72-73 (1st Dist. 2003). Put differently, as the Seventh Circuit has explained, probable cause does not "require law enforcement officers to delay arresting a suspect until after they have conclusively resolved each and every inconsistency or contradiction in a [witness or] victim's account." *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999), *as amended* (Jan. 7, 2000). And police often must rely on witnesses with self-serving motivations. The fact that witnesses may avoid criminal liability by cooperating does not undermine their reliability for purposes of probable cause, especially when other evidence corroborates their story, as it did here. *See, e.g.*, *State v. Arrington*, 8 A.3d 483, 490 (Vt. 2010) (finding witness statement reliable enough to support probable cause despite witness's self-interest in reducing criminal exposure because other facts confirmed accuracy of statement); *People v. Taylor*, 2018 IL App (1st) 152820-U, ¶¶ 29-30 (finding jury was entitled to find self-serving witness testimony reliable because other evidence corroborated testimony).

Smollett also offers alternative explanations for some of the evidence against him. (Smollett's Resp. at 11.) But probable cause does not require that the police negate every possible theory or "investigate every potentially exculpatory detail." *Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 494 (7th Cir. 2011) (rejecting malicious prosecution claim in part due to existence of probable cause); *see also Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 169 (E.D.N.Y. 2016) ("the police are not obligated to pursue every lead that may yield evidence beneficial to the accused") (citation omitted); *Vance v. N.J. Div. of Law & Pub. Safety*, No. CV 12-4006 (KM)(MAH), 2017 WL 3895553, at *10 (D.N.J. Sept. 5, 2017) (finding probable cause does not "require that a prosecutor explore every potentially exculpatory lead before filing a criminal

complaint"). Rather, probable cause merely requires an honest suspicion that Smollett committed a crime. Smollett's own allegations demonstrate the substantial evidence supporting the City Defendants' honest suspicion that his police report was false. Accordingly, the Court should dismiss Smollett's claim. *See Coleman*, 2017 IL App (1st) 161492-U, ¶¶ 22-23 (upholding dismissal of malicious prosecution claim on probable cause element where a single witness incriminated plaintiff and circumstantial evidence corroborated the witness's statement); *Stockley v. Joyce*, No. 4:18-CV-873 CAS, 2019 WL 630049, at *23 (E.D. Mo. Feb. 14, 2019) (dismissing malicious prosecution claim and finding probable cause existed despite "minor inconsistencies or omissions by a malicious prosecution defendant").

### III. Smollett Has Not Sufficiently Alleged That the City Defendants Acted with Malice.

Smollett argues that he has sufficiently pled malice because he alleged that the City Defendants did not have probable cause and because they supposedly pursued Smollett "not to do justice." (Smollett's Resp. at 11.) In making this argument, Smollett again relies entirely on *Smith v. Burge*. Again, the facts in that case are drastically different than those here. In that case, the plaintiff alleged that the defendants tortured him, used racist language, put a plastic bag over his head, threatened to suffocate him, and then after this abuse, coerced a fabricated confession. *Smith*, 222 F. Supp. 3d at 692. Citing these specific allegations, the court found that the plaintiff had sufficiently alleged malice.

This case is quite different. First, as discussed above, Smollett has not sufficiently alleged a lack of probable cause, and for that reason alone, Smollett fails the malice element. *Turner v. City of Chi.*, 91 Ill. App. 3d 931, 937 (1st Dist. 1980). ("malice may not be inferred where probable cause exists"). Second, in contrast to *Smith*, here, there are no allegations of physical torture, threats, personal animus, or the type of extreme acts of bad faith by police officers that might

9

support a finding of malice. Instead, Smollett claims that the City Defendants focused on Smollett because they failed to find his primary attacker. But Smollett has already publicly confirmed that the Osundairo Brothers were indeed his attackers.[4] And the allegations in his counterclaims demonstrate that the City Defendants identified the Osundairo Brothers as his attackers, interviewed them and obtained an admission that they had attacked him as a hoax orchestrated by Smollett, and then uncovered substantial evidence corroborating the Brothers' story—including other witnesses and messages, meetings, and payments between the Brothers and Smollett. (Countercl. ¶¶ 23, 36, 73, 74, 82, 86, 87-88.)

Far from leading to a plausible inference of malice, and unlike the cases Smollett cites, these allegations show that the City Defendants conducted a legitimate investigation and the available evidence led them to reasonably believe in good faith that Smollett orchestrated his own attack. *Sorrell*, 162 F. Supp. 3d 156, 170 (E.D.N.Y. 2016) ("Actual malice is lacking when a police officer reasonably chooses between conflicting evidence"). Accordingly, the Court should dismiss Smollett's claim against the City Defendants for insufficient allegations of malice. *See Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (upholding dismissal of malicious prosecution claim because plaintiff's malice allegations were conclusory and lacked facts showing bad faith).

### IV. Smollett's Federal Malicious Prosecution Claim Also Fails.

As the City Defendants explained in their opening brief, there is no federal malicious prosecution right of action under the Fourth or Fourteenth Amendments. Smollett's federal claim therefore fails. *See Neita v. City of Chi.*, No. 19 C 595, 2019 WL 5682838, at *4 (N.D. Ill. Nov.

---

[4] *See* Good Morning America, *Jussie Smollett Tells ABC News' Robin Roberts He's Pissed Off' After Vicious Attack*, ABC NEWS, Mar. 26, 2019, *available at* https://www.goodmorningamerica.com/culture/story/jussie-smollett-tells-abc-news-robin-roberts-pissed-61047347 (stating "I don't have any doubt in my mind that's them.")

10

1, 2019) ("there is no right of action for malicious prosecution based on the Fourth Amendment") (citing *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("There is no such thing as a constitutional right not to be prosecuted without probable cause") (quotation omitted)); *Lewis v. City of Chi.*, 914 F.3d 472, 475 (7th Cir. 2019) (citing *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918-19 (2017)).

Recognizing this deficiency, Smollett attempts to convert his malicious prosecution claim to a constitutional claim under the Fourth Amendment for his alleged unlawful detention without probable cause. (Smollett's Resp. at 14.) To the extent the Court accepts Smollett's newly styled theory, it should still dismiss this claim. The counterclaim—which was attempting to allege a malicious prosecution claim, not an unlawful detention claim—makes only passing, conclusory references to Smollett's purported wrongful arrest and pretrial detention or custody. As this Court held in a similar case less than a month ago, if Smollett wishes to allege a Fourth Amendment deprivation of liberty claim, he must plead it specifically instead of attempting to shoehorn it into allegations of malicious prosecution. *See Blackmon v. City of Chi.*, No. 19 C 767, 2020 WL 60188, at *4 (N.D. Ill. Jan. 6, 2020) (dismissing claim that plaintiff initially styled as federal malicious prosecution and converted in briefing to a deprivation of liberty without probable cause claim because his complaint contained malicious prosecution allegations and there were "no allegations connecting the loss of liberty to any kind of arrest or pretrial detention or custody"); *see also, e.g.*, *Brown v. City of Chi.*, No. 18 C 7064, 2019 WL 4694685, at *5-6 (Sept. 26, 2019) (dismissing Fourth Amendment malicious prosecution claim where the allegations "all . . . concern the institution of judicial proceedings against Plaintiff and not his detention").

Finally, even if the Court determines that Smollett's malicious prosecution allegations somehow make out a Fourth Amendment deprivation of liberty claim, it should still dismiss this

11

claim because, as discussed above, Smollett's allegations do not plausibly support a lack of probable cause.

## CONCLUSION

For the aforementioned reasons, the Court should dismiss Smollett's counterclaims against the City Defendants in their entirety with prejudice.


Dated: January 29, 2020

Respectfully submitted,

/s/ Renai S. Rodney
Renai S. Rodney
Jennifer K. Bagby
Elie T. Zenner
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, IL 60602
312-744-0200
renai.rodney@cityofchicago.org
elie.zenner@cityofchicago.org

*Attorneys for Counterclaim City Defendants*

## CERTIFICATE OF SERVICE

I certify that on January 29, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/ Elie T. Zenner