**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:19-cv-04547 |
| v. ) | |
| ) | Honorable Virginia M. Kendall |
| JUSSIE SMOLLETT, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| JUSSIE SMOLLETT, ) | |
| ) | |
| Counterclaim-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF CHICAGO, MICHAEL THEIS, ) | |
| EDWARD WODNICKI, EDDIE JOHNSON, ) | |
| JOHN and JANE DOE DEFENDANTS 1-10, ) | |
| ABIMBOLA OSUNDAIRO, and OLABINJO, ) | |
| OSUNDAIRO ) | |
| ) | |
| Counterclaim-Defendants. ) | |

## THE OSUNDAIRO BROTHERS MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS SMOLLETT'S COUNTERCLAIMS

Counterclaim-Defendants Olabinjo Osundairo and Abimbola Osundairo (collectively "the Brothers"), by and through their attorney, Gloria Virginia Schmidt Rodriguez, move this Honorable Court for an order dismissing Counterclaim-Plaintiff Jussie Smollett's ("Smollett") Counterclaims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). More specifically and as further explained below, Smollett has not and cannot meet the elements necessary to establish that he has pled a claim for which relief can be granted under the Illinois state law claim of malicious prosecution.

1

**BACKGROUND**

The Osundairo Brothers hereby adopt in its entirety the complete background section as described in the City Defendants' Memorandum of Law in Support of Its Motion to Dismiss Smollett's Counterclaims (Document #38, pages 2-4, filed December 16, 2019) as though fully stated herein.

**APPLICABLE LEGAL STANDARDS**

Federal Civil Procedure Rule 12 provides the defendant with enumerated defenses in challenging a plaintiff's claim against them at the outset of litigation. Fed. Rule 12(b)(6) specifically allows the defendant to dismiss a plaintiff's claim where the Court cannot grant relief upon it. A claim (or counterclaim) that cannot sufficiently plead relief from the Court should be dismissed as a matter of law. *Corcoran v. Chi. Park Dist.*, 875 F.2d 609, 611 (7th Cir. 1989). In applying this standard there is no differentiation between a claim and a counterclaim. *N. Trust Co. v. Peters*, 69 F.3d 123, 127 (7th Cir. 1995).

In its analysis of a 12(b)(6) challenge the Court must "construe all well-pleaded allegations of the counterclaim in the light most favorable" to the Plaintiff. *United Cent. Bank v. Davenport Estate, LLC*, 815 F.3d 315, 317 (7th Cir. 2016). "That said, to survive a motion to dismiss under Rule 12(b)(6), a counterclaim not only must provide fair notice of the claim's basis, but also must state facts showing that the requested claim is plausible, and not just possible, on its face." *United States ex rel. Cieszynski Lifewatch Servs., Inc.*, No. 13 CV 4052, 2016 WL 2771798, at *1 (N.D. Ill. May 13, 2016) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, while "detailed factual allegations" is not necessary to survive a motion to dismiss, the plaintiff must show the court that there exists a plausible and *prima facie* case in making their claim against defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The applicable state law for malicious prosecution requires that a plaintiff allege that all of the following elements have been met: "(1) the defendant commenced or continued a criminal proceeding against him, (2) the proceeding was terminated in his favor, (3) there was no probable cause for the proceeding, (4) the defendant acted maliciously, and (5) he was damaged by the proceeding." *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). Smollett fails to meet all the elements.

The Illinois Code of Criminal Procedure states the following under Article 110A: "Malicious Prosecution; Costs: If it appears that there is no just reason to fear the commission of the offense, the defendant shall be discharged. If the court is of the opinion that the prosecution was commenced maliciously without probable cause, the court may enter judgment against the complainant for the costs of the prosecution." (725 ILCS 5/110A-25.)

## ARGUMENT

I. **Analyzing the elements of Smollett's claims with the Illinois state law for malicious prosecution shows that Smollett does not meet any of the elements.**

Illinois malicious prosecution caselaw dates to the 1800s. Repeatedly and throughout the decades the Court has maintained the belief that the court system (in both civil and criminal arenas) are "open to every citizen; and every man has a right to come into a court of justice and claim what he deems to be his right without fear of being prosecuted for heavy damages." *Smith v. Michigan Buggy Co.*, 175 Ill. 619 at 628, 51 N.E. at 571 (1898).

Accordingly, malicious prosecution claims tend to be disfavored in Illinois. *Cult Awareness Network v. Church of Scientology International.* 177 Ill.2d at 286, 226 Ill.Dec. 604 (1997). The courts have also held that people who have probable cause to believe that a crime was committed and who act in good faith are not liable for malicious prosecution. *Allen v. Berger*, 336 Ill. App. 3d 675 (2002).

Essentially, Smollett is arguing that his felony prosecution under Case #19-110327101 (hereinafter referred to as the "criminal case") stemmed from some joint conspiracy between the Chicago Police Department and the Brothers to portray his version of events as a lie. In doing so, Smollett's unattainable position is that the Brothers and the City of Chicago had nothing better to do than conjure up criminal charges against him with no probable cause and with malice, and further alleges that the criminal case terminated in Smollett's favor, and that Smollett was damaged by the proceeding.

### A. The Brothers did not commence or continue a criminal proceeding against Smollett.

It is undisputed that on February 13, 2019, the Brothers were taken into police custody over suspicion that they were the alleged attackers against Smollett. It is also undisputed that during their detainment, they made the decision to cooperate with police and provided voluntary statements about their knowledge of the incident and involvement. It is also undisputed that they received no benefit (i.e. immunity agreement or plea deal) for doing so by the police, the State's Attorney's office, or anyone else. They were summoned to the grand jury and provided their statements under oath. (*See* State Attorney's Bond Proffer in the criminal case against Actor Jussie Smollett, **https://www.chicagotribune.com/news/breaking/ct-jussie-smollett-bond-proffer-20190221-htmlstory.html**.)

The City of Chicago artfully discusses the argument that Smollett's criminal case has not terminated nor terminated in his favor in their memorandum of law supporting their motion to dismiss Smollett's counterclaims. (Document #38, Section A, pages 5-8, filed December 16, 2019). Their memorandum also reiterates the actions and court order of the Honorable Cook County Chief Judge Michael Toomin in appointing a special prosecutor with the authority and power to re-indict Smollett. Therefore, for the sake of judicial economy and brevity, the Brothers

hereby further adopt the City of Chicago's argument as to this point and as listed in their memorandum (*See* Section A, pages 5-8, filed December 16, 2019) as though fully stated herein.

Beyond that incorporation, the Brothers also maintain the position that Smollett's allegation of "prosecution" is ambiguous, as we cannot ascertain which prosecution Smollett references. There is the (1) criminal prosecution beginning from Smollett's arrest on February 21, 2019 and ending with the dismissal and sealing of his criminal file on March 26, 2019; (2) the civil proceeding between April and June 2019 wherein the media gallantly sought to unseal Smollett's records; (3) the quasi-criminal proceedings from June 2019 through the present under Case# 19 MR 00014, wherein upon reviewing the unsealed records, concerned citizen and retired Judge Sheila O'Brien's petition to appoint a special prosecutor was granted; (4) the initial complaint wherein the City of Chicago filed suit against Smollett for violating the City's False Statements Ordinance (FSO) and Cost Recovery Ordinance (CRO) in April 2019; and (5) the independent investigation currently being conducted by Dan Webb as appointed Special Prosecutor.

With respect to the first section, the Brothers were under no threat or fear of prosecution when they made their statements to police. Their statements were not coerced nor concocted by anyone or anything other than the truth about their involvement and personal knowledge of the incident. Moreover, their statements were consistent with the evidence already obtained by the Chicago Police Department; indeed, the information provided by the Brothers independently corroborated the police's extensive investigation up to that point having used other witness interviews, "surveillance videos, Office of Emergency Management pod videos, in-car taxi camera videos, rideshare records, bank records, and a store receipt" (Document #1, Image 38-2, Complaint filed by City of Chicago on April 11, 2019 in the Circuit Court of Cook County Law Division.) Therefore, the Brothers' role in the criminal prosecution against Smollett was only apparent after Smollett claimed to the police that his playfight with the Osundairo Brothers was real.

The City of Chicago's criminal case also did not solely rest upon the evidence provided by the Brothers. (*See* State Attorney's Bond Proffer in the criminal case against Actor Jussie Smollett, **https://www.chicagotribune.com/news/breaking/ct-jussie-smollett-bond-proffer-20190221-htmlstory.html**.) The several police officers, sergeants, detectives, and personnel who dutifully and faithfully investigated the allegation of this "hate crime" provided the foundation for the State's interest in prosecuting Smollett, especially considering that for a city of nearly 3 million people plagued by gun violence, it only had 77 real reported hate crimes in 2018. (*See* Chicago Police Department 2018 Annual Report, **http://home.chicagopolice.org/wp-content/uploads/2019/07/2018AnnualReport-05July19.pdf**.) In summation, the statements the Brothers provided to police were made in good faith; they did not sign or commence any criminal petitions or complaints against Smollett; they were not members of the grand jury and had no authority over the grand jury's decision to indict or on how many counts; and certainly had no power to prosecute him on any criminal charges.

With respect to the aforementioned sections 2 through 5, the Brothers had no role in the proceedings whatsoever. To wit: their statements and conduct was not used by the media to support their motion to unseal Smollett's records and allow the saga to unfold; their statements were not referenced in Judge Watkin's Order Unsealing Smollett's criminal file; their statements were not referred to in Judge O'Brien's petition; and ultimately, the special prosecutor and the special prosecutor alone will decide whether to indict charges upon Smollett.

Given that the Brothers' were not and are not the complainants, petitioners, or plaintiffs in any cause against Smollett, and given that the criminal proceeding itself does not exist by order of the court in Case# 19 MR 00014, Smollett has not met the burden of showing that the Counterclaim/Third-Party Defendant Brothers commenced or continued in any proceedings against Smollett. Because Smollett cannot meet this first element, his entire argument fails.

**B. But even if Smollett met the first element, he cannot show that the criminal proceeding terminated at all nor terminated in his favor.**

The City of Chicago argues in their Reply in Support of their Motion to Dismiss filed January 29, 2020, Document # 56, Section I, Articles A and B, pages 3 – 6, the various reasons why Smollett cannot meet the second element of a malicious prosecution claim. The argument and position the Brothers maintain on this point are duplicative of the issues, facts, and points of law raised in the City's reply brief. Therefore, the Brothers adopt said sections of the above-mentioned as though fully stated herein.

Additionally, the Courts have specifically held that a malicious prosecution action "cannot move forward where the underlying criminal proceedings were terminated for any reason other than the innocence of the accused." *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (Ill. 1996), *Bruce v. City of Chicago* (N.D. Ill. 2012). As a matter of public policy, this makes sense as the State has an interest in the ability to *nolle prosequi* charges where it so desires in the interests of public safety and justice. If every defendant could claim malicious prosecution against the State—where the State abandoned charges against a defendant for whatever good faith reason—then such a liability would negate the usefulness of the power to yield dismissals in the first place.

**C. There was plenty of probable cause for the City to bring criminal charges against Smollett.**

The City of Chicago argues in their Reply in Support of their Motion to Dismiss filed January 29, 2020, Document # 56, Section II, pages 6 – 9, and in their Memorandum of Law in Support of Its Motion to Dismiss Smollett's Counterclaims (Document #38, Article B, pages 8 – 10, filed December 16, 2019), the various reasons why probable cause existed in the criminal case. The argument and position the Brothers maintain on this point are duplicative of the issues, facts, and points of law raised in the City's reply brief. Therefore, the Brothers adopt said sections of the

above as though fully stated herein.

### D. Smollett has not and cannot sufficiently plead that the Brothers acted with malice.

The Brothers hereby adopt the legal arguments of the City of Chicago as argued in their Reply in Support of their Motion to Dismiss filed January 29, 2020 (Document # 56, Section III, pages 9 – 10) and in their Memorandum of Law in Support of Its Motion to Dismiss Smollett's Counterclaims (Document #38, Section I, Article C, pages 10 – 12, filed December 16, 2019) as though fully stated herein as the listed facts and points of law are duplicative of the Brothers position. The Brothers additionally state that on January 1, 1996, the Illinois legislature enforced House Bill 1732 and 0116, which called for a measure of protection to a defendant where the court opined that the prosecution of that defendant in a criminal proceeding was maliciously brought. (*See* Illinois Public Acts 83-334 and 89-234, eff. 1-1-96.) The criminal court in Smollett's matter had ample opportunities to opine whether Smollett was the victim of any malicious prosecution, and by virtue of the existing facts we can see that the criminal court did not indeed make any such opinion. Likewise, Smollett could have brought attention to this issue and possibly sought relief in the criminal matter pursuant to 725 ILCS 5/110A-25 as the victim of a malicious prosecution, yet he failed to do so at the outset of his arrest. He only brings forth his present claim as retaliation against the City of Chicago for seeking reimbursement as allowed under the law and with no burdens about further wasting the City's resources.

### E. Damage to Smollett as alleged is questionable.

In reviewing the last element of malicious prosecution, one must view whether Smollett was indeed damaged by the criminal proceeding. The Illinois landmark case *Swick v. Liataud*, 169 Ill. 2d 504 (1996) guides us in that a successful civil claim for malicious prosecution must prove special damages "beyond the usual expense, time, or annoyance" in defending the underlying suit.

Further caselaw advises that in distinction with criminal proceedings, the special damage is met by an "arrest or seizure of property." *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 624, 51 N.E. 569 (1898) as cited in *Cult Awareness Network v. Church of Scientology Intern.,* 685 N.E.2d 1347, 177 Ill.2d 267, 226 Ill.Dec. 604 (Ill. 1997).

In this case, Smollett's arrest was expunged not only once but twice, by virtue of the Cook County Circuit Court Judge Steven Watkin's order dated March 26, 2019 (*see* **https://www.chicagotribune.com/news/breaking/ct-met-jussie-smollett-sealed-court-records-20190523-story.html**) and then again by Judge Toomin's order entirely vacating the criminal case. To date, Smollett stands unaccounted for his conduct, yet he is claiming he was damaged for "the ordinary trouble and expense which arise from ordinary forms of legal controversy," and for which must be "endured by the law-abiding citizen as one of the inevitable burdens, which men must sustain under civil government." *Smith*, 175 Ill. at 629, 51 N.E. 569 cited in *Cult Awareness Network v. Church of Scientology Intern*., 685 N.E.2d 1347, 177 Ill.2d 267, 226 Ill.Dec. 604 (Ill. 1997).

To that end Smollett's scheme was accomplished; he has gained national and international fame while avoiding any admission of guilt for his conduct against the City of Chicago; he voluntarily forfeited his bond as consideration for some unknown form of *quid pro quo* agreement with the State's Attorney's Office; and he received widespread media attention for his personal agenda against President Donald J. Trump and for his perceived lack of enthusiasm by Fox studios in paying attention to his purported hate mail.

## CONCLUSION

In closing, any position asserting that "but for" the Brothers' statements to the police Smollett would not be facing civil prosecution for violating the FSO and CRO municipal ordinances by the City of Chicago is a far cry from a plausible claim. The Brothers were not the

complainants or petitioners in any of the prosecution(s) that occurred against Smollett, and they continue to have no claims against him.  By Smollett bringing this counterclaim against the City, the police, and the detectives individually, Smollett is weaponizing the sacrifice made by the personnel in investigating the crime he reported occurred against him.  He is also taking further advantage of the Brothers for their role in telling the truth about their involvement.  Smollett's counterclaims do not meet the elements needed to survive a 12(b)(6) motion to dismiss, and indeed are sanctionable on its face.  Accordingly, Smollett's counterclaims should be dismissed in its entirety against <u>all</u> the Counterclaim-Defendants, with prejudice.

Dated: January 29, 2020                     Respectfully Submitted,


                                            /s/ Gloria Virginia Schmidt Rodriguez

                                            The Gloria Law Group
                                            9 N County, Suite 202
                                            Waukegan, IL 60085
                                            847-672-8888
                                            gloria@gloriaslaw.com

                                            *Attorney for Osundairo Brothers*


## CERTIFICATE OF SERVICE

I certify that on January 29, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

                                            /s/ Gloria Virginia Schmidt Rodriguez