IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, <br><br> Plaintiff, <br><br> v. <br><br> JUSSIE SMOLLETT, an individual, <br><br> Defendant. | Case No. 1:19-cv-04547 |
| JUSSIE SMOLLETT, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, MICHAEL THEIS, EDWARD WODNICKI, EDDIE JOHNSON, JOHN and JANE DOE DEFENDANTS 1-10, ABIMBOLA OSUNDAIRO, and OLABINJO OSUNDAIRO <br><br> Counterclaim-Defendants. | |

**RESPONSE TO THE OSUNDAIRO DEFENDANTS' MOTION TO DISMISS
SMOLLETT'S COUNTERCLAIM**

Counterclaim-Plaintiff Jussie Smollett, by and through his attorneys, The Quinlan Law Firm LLC, hereby respectfully submits his response in opposition to the motion to dismiss his Counterclaim filed by Counterclaim-Defendants Abimbola Osundairo and Olabinjo Osundairo (collectively "the Osundairo brothers" or "Defendants"),[1] and states as follows:

---

[1] Mr. Smollett submits this response while reserving and without waiving his objection to Gloria V. Schmidt Rodriguez appearing as counsel for the Osundairo brothers. Prior to Ms. Schmidt's appearance in this matter as counsel, Mr. Smollett's counsel informed her of his objection to her appearing as counsel for the Osundairo brothers in this matter and that he intends to take her

1

**INTRODUCTION**

The Court should deny the Osundairo brothers' motion to dismiss because Mr. Smollett has plausibly alleged that Defendants commenced or continued the criminal proceeding against him, that the dismissal of the criminal proceedings against Mr. Smollett was a termination of the proceedings against him, that defendants had no probable cause to inform police or a grand jury that Mr. Smollett was not the victim of a homophobic and racist assault, that defendants acted maliciously, and that Mr. Smollett was damaged. Accordingly, Mr. Smollett has alleged the elements of malicious prosecution specifically against the Osundairo brothers. The Osundairo brothers' argument to dismiss the counterclaim is rife with grandstanding to inject factual allegations that have no place in a motion to dismiss and cursory, inapposite legal support. For these reasons, as discussed further below, Mr. Smollett respectfully submits that the Court should deny Defendants' motion to dismiss in its entirety.

**LEGAL STANDARD**

To evaluate a motion to dismiss a complaint under Rule 12(b)(6), the Court "'accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the plaintiffs' favor.'" *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) (citation omitted). "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (quoting Fed. R. Civ. P. 8(a)(2)). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), a plaintiff must plead facts sufficient to show that his claim has substantive plausibility. *Johnson*, 574 U.S. at 12.

*Ashcroft v. Iqbal* does not hold that the plaintiff must present a *prima facie* case. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") To survive a motion to dismiss under 12(b)(6), a pleading need only contain allegations which

deposition and seek documents from her regarding her communications with the Chicago Police Department, the Cook County State's Attorney's Office, and the media regarding the attack on Mr. Smollett.

"plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Hill v. Serv. Employees Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017) (internal quotation marks and citation omitted).

## ARGUMENT

By his claim for state law malicious prosecution, Mr. Smollett seeks to recover damages as a result of Defendants' providing false and misleading statements to police, thereby causing an unprecedented 16-count indictment against Mr. Smollett, the victim of a racist and homophobic attack, which Cook County prosecutors quickly dismissed in its entirety. In their motion to dismiss, Defendants argue that Mr. Smollett failed to adequately plead the elements of a state law malicious prosecution claim. Defendants substantially rely on the City of Chicago's motion to dismiss and reply brief even though Defendants are distinct actors as private citizens who provided false and misleading testimony to the police, thereby causing Mr. Smollett's unlawful arrest. Mr. Smollett's allegations in his counterclaim demonstrate that Defendants commenced and continued the criminal proceedings against Mr. Smollett, that the criminal proceedings terminated in Mr. Smollett's favor, that Defendants lacked probable cause to make their false claims to police which caused Mr. Smollett's arrest, that Defendants acted with malice, and that Mr. Smollett was damaged as a result. Defendants' arguments to the contrary fail for the reasons stated below.

First, Mr. Smollett plausibly states that Defendants commenced or continued the criminal proceedings against Mr. Smollett because the allegations of the counterclaim properly pleaded that Defendants played a significant role in causing the criminal proceedings against Mr. Smollett. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 46, 131 N.E.3d 488, 500 (Ill. 2019). Chicago Police Department ("CPD") personnel arrested and charged Mr. Smollett with disorderly conduct solely on the basis of Defendants' uncorroborated false allegations that Mr. Smollett lied to police that the Defendants made to avoid criminal liability. (*See* Countercl. ¶ 124). CPD did not independently corroborate the Osundairo brothers' false allegations against Mr. Smollett and the case against Mr. Smollett rested entirely on the Osundairo brothers' uncorroborated and self-serving statements.

3

(*See* Countercl. ¶¶ 44, 80.) Therefore, Mr. Smollett plausibly alleged that Defendants commenced or continued the criminal proceedings against him.

Second, although Defendants claim the criminal proceedings did not terminate in Mr. Smollett's favor, relying heavily on their incorporated arguments of the City of Chicago, Mr. Smollett demonstrated that the criminal proceedings terminated in his favor and in a manner that indicated his innocence. (*See* Countercl., ¶ 135.) As Mr. Smollett extensively addressed in his response in opposition to the City of Chicago's motion to dismiss (*see* Brief in Opp., at 4-9), Mr. Smollett demonstrated the criminal proceeding terminated in his favor and due to his innocence when Cook County prosecutors dismissed all charges against Mr. Smollett *nolle prosequi*. *Swick v. Liautaud*, 169 Ill. 2d 504, 512-13, 662 N.E.2d 1238, 1242-43 (Ill. 1996). The allegations are sufficient to show that the proceedings terminated in his favor in a manner indicative of his innocence because it was improbable that he could be found guilty. *Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, 2016 WL 6270768, at *21 (N.D. Ill. Oct. 26, 2016), *aff'd*, 931 F.3d 592 (7th Cir. 2019).

Third, with respect to probable cause, Defendants' argument adopting the City of Chicago's brief is inapplicable because the determination of probable turns on the *Defendants'* probable cause when they made false statements to the police. *Gvozden v. Mill Run Tours, Inc.*, No. 10-CV-4595, 2016 WL 930514, at *2 (N.D. Ill. Mar. 11, 2016) ("in false arrest cases, the probable cause analysis focuses on whether the defendant who is alleged to have procured the plaintiff's arrest had 'reasonable grounds to believe that an offense was committed by the plaintiff.'") (quoting *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 73, 791 N.E.2d 1206, 1220 (1st Dist. 2003)). Mr. Smollett demonstrated Defendants had no basis to claim Mr. Smollett was not the victim of a vicious hate crime. Further, Mr. Smollett's response to the City's motion to dismiss sufficiently addressed the lack of objective probable cause given the independent witnesses corroborating Mr. Smollett's account and the lack of corroborating evidence supporting Defendants' false account.

4

Fourth, the facts as pleaded properly give rise to the inference that Defendants acted with malice. It is undisputed that on February 14, 2019, police arrested the Osundairo brothers. (*See* Counterclaim ¶ 23.) It is undisputed that the Osundairo brothers admitted to police and informed a grand jury that they participated in a crime. It is also undisputed that Defendants have neither been charged nor indicted for conspiracy (disorderly conduct) or any other crime in connection with this matter. Moreover, Mr. Smollett alleges that Defendants provided false and self-serving testimony to police in order to avoid criminal charges being filed against them, and that Defendants knew those statements were false. (*See* Countercl., ¶¶ 41-47, 119, 124.) Accordingly, Mr. Smollett has shown that Defendants did not act to bring a party to justice, and therefore acted with malice. *See Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 349, 733 N.E.2d 835, 842 (1st Dist. 2000) ("Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice"). Defendants fail to state why Mr. Smollett is foreclosed from bringing an action for malicious prosecution against them. Indeed, under Illinois law "liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Collier v. City of Chicago*, No. 14 C 2157, 2015 WL 5081408, at *9 (N.D. Ill. Aug. 26, 2015) (citation and internal quotations omitted).

Finally, Mr. Smollett alleges damages resulting from the criminal proceedings instigated against him in February 2019. Defendants improperly claim Mr. Smollett was required to allege special damages because "if the malicious prosecution is based on the institution of criminal proceedings, no showing of special injury is required." *Voga v. Nelson*, 115 Ill. App. 3d 679, 682, 450 N.E.2d 1364, 1367 (2d Dist. 1983). "The commencement of a criminal proceeding is the filing of a complaint, an information, or an indictment." *Rodgers*, 315 Ill. App. 3d at 346, 733 N.E.2d at 840 (citing 725 ILCS 5/111-1). Here, Mr. Smollett alleges a felony complaint was filed and a felony indictment returned against him alleging 16 counts of disorderly conduct. (*See* Countercl., ¶¶ 47-50.) Defendants rely on entirely inapposite authority for their claim that Mr. Smollett alleged "questionable" damages. (*See* Defs.' Mem. in Supp., at 8.) The cases Defendants cite, *Smith v. Michigan Buggy Co.*, 175 Ill. 619, 624, 51 N.E. 569 (Ill. 1898) and *Cult Awareness Network v.*

5

*Church of Scientology Intern.*, 685 N.E.2d 1347, 177 Ill.2d 267 (Ill. 1997), concerned *civil* cases that served as the basis for the malicious prosecution claim rather than criminal prosecution. Thus, contrary to Defendants' contentions, Mr. Smollett adequately pleads each of the elements for state law malicious prosecution against Defendants.

In sum, Mr. Smollett states a claim for state law malicious prosecution against the Defendants because under Illinois law he plausibly alleged that the Osundairo brothers commenced or continued the criminal proceedings against him, the proceedings terminated in his favor, the Osundairo brothers lacked probable cause, they acted with malice, and Mr. Smollett suffered damages as a result.

> **A. Mr. Smollett alleges that the Osundairo brothers played a significant role in the criminal proceedings which sufficiently pleads that they commenced or continued the criminal prosecution against him.**

Mr. Smollett plausibly alleges the Osundairo brothers commenced or continued the criminal prosecution against Mr. Smollett because they played a significant role in Mr. Smollett's arrest and indictment. (*See* Countercl., ¶¶ 119-124.) As an initial matter, Defendants contention that it is ambiguous which prosecution Mr. Smollett is referring to (*see* Defs.' Mem. in Supp., at 5) is belied by the plain language of the counterclaim. (*See* Countercl., ¶¶ 116-137.) The sole basis for Mr. Smollett's malicious prosecution claim is the criminal prosecution that was dismissed on March 26, 2019. Defendants improperly suggest alternative factual allegations in their motion to dismiss. (*See* Defs.' Mem. in Supp., at 4-6.) Rather, it is undisputed that police arrested Defendants on February 14, 2019 (*see* Countercl., ¶ 23), that Defendants admitted to police and informed a grand jury that they participated in a crime, (*see id.* ¶¶ 41, 46), and that Defendants have neither been charged nor indicted for conspiracy (disorderly conduct) or any other crime in connection with this matter. Defendants knew they gave false statements to police and the grand jury to avoid criminal liability, and it was entirely on the basis of their statements that Mr. Smollett was charged and indicted. (Countercl., ¶¶ 41-47, 119, 124.) Therefore, Mr. Smollett's allegations satisfy the first element for the tort of malicious prosecution.

Mr. Smollett sufficiently alleges that Defendants played a significant role in the criminal proceedings brought and eventually dismissed against Mr. Smollett. The Illinois Supreme Court recently articulated the "significant role" assessment to determine whether a party "commenced or continued" the criminal prosecution. *Beaman*, 2019 IL 122654, ¶ 46, 131 N.E.3d at 500. The significant role assessment focuses on whether the defendants proximately caused the criminal prosecution. *Id.* ¶ 45 ("This significant role assessment necessarily includes those persons whose participation in the criminal case was so 'active and positive' to 'amount of advice and co-operation' or those persons who . . . knowingly provided misinformation to him or her."). Here, the Osundairo brothers' participation in the criminal case, through their false statements to police and to the grand jury, was so active and positive that it amounted to advice and co-operation, and shows that Defendants knowingly provided misinformation to prosecutors and police.

Defendants assertion that they were under no threat or fear of prosecution when they made their false statements to police (*see* Defs.' Mem. in Supp, at 5) is both false and improper on a motion to dismiss. Taking the allegations of the counterclaim as true, when the Osundairo brothers were under arrest, they first told police that they had no involvement, and only changed their story at the "eleventh hour," falsely claiming they participated in a false attack on Mr. Smollett so that CPD would release them without criminal charges. (*See* Countercl., ¶¶ 30, 36, 42-43.) Here, Defendants cannot argue for dismissal by asserting that their statements were consistent with evidence already obtained by the CPD, given Mr. Smollett's clear allegations that the entire basis of the criminal proceedings against Mr. Smollett were Defendants' false and self-serving statements to police and a grand jury. (*See id.* ¶ 124.)

Mr. Smollett also sufficiently alleges Defendants' proximately caused his criminal prosecution. "Legal causation will be attributed to a private citizen only if the plaintiff can demonstrate that the defendant (1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest" *Ferrell v. Harrington*, No. 07 C 3027, 2007 WL 3307026, at *3 (N.D. Ill. Nov. 2, 2007) (*quoting Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922

7

(7th Cir.2001) (citing *Geisberger v. Vella*, 62 Ill.App.3d 941, 943, 20 Ill.Dec. 114, 379 N.E.2d 947, 949 (1978))). Here Mr. Smollett plainly alleges that Defendants knowingly made false statements to the police, and that those false statements served as the basis for Mr. Smollett's criminal prosecution. (*See* Countercl., ¶¶ 119-120). Mr. Smollett further alleges that the police had no independent basis for charging Mr. Smollett and that Defendants' false statements were never independently corroborated. (*See id.* ¶¶ 44, 64, 80.) Therefore, Defendants cannot properly claim in a motion to dismiss that Mr. Smollett failed to allege Defendants knowingly made false statements to the police which served as the basis for the State's criminal prosecution of Mr. Smollett.

Defendants' argument that they had no role in the criminal proceedings against Mr. Smollett improperly relies on numerous allegations of fact that fall outside the allegations in the counterclaim. For one, they argue that they had no role in the proceedings and that the City of Chicago's case did not solely depend on the Osundairo brothers' statements. (*See* Defs.' Mem. in Supp., at 5-6). Second, Defendants improperly refer to proceedings which Mr. Smollett has not filed any action concerning (*id.*); the relief sought presently concerns only Mr. Smollett's wrongful criminal prosecution in February 2019 and dismissed in March 2019 (*see* Countercl., ¶¶ 116-137). Third, Defendants improperly inject allegations about the purported circumstances surrounding the dismissal of charges rather than the pleading itself, which is inappropriate for a motion to dismiss. *See Kinney v. Dominick's Finer Foods, Inc.*, 780 F. Supp. 1178, 1182 (N.D. Ill. 1991) ("The introduction, however, of additional facts in [defendant's] brief was improper in a Rule 12(b)(6) motion which is strictly a procedural device to test the sufficiency of the plaintiff's pleadings.") (citing *Yeksigian v. Nappi*, 900 F.2d 101 (7th Cir.1990)). Moreover, Defendants failed to request the Court take judicial notice of the news articles cited to support their claims, and in any case, it would be improper to consider the content of those articles. *See Bardney v. United States*, 151 F.3d 1032 (7th Cir. 1998) (noting that it would be improper for the district court to take judicial notice and rely on the content of articles). Mr. Smollett's counterclaim, taken as true, plausibly alleges Defendants knowingly provided false information to the police and to a grand

8

jury, and that it was on the basis of their false statements, which were not independently corroborated, that the City of Chicago initiated its unlawful criminal prosecution of Mr. Smollett. (*See* Countercl., ¶¶ 116-137.) Similarly, Defendants cannot inject that they acted in good faith (*see* Defs.' Mot. in Supp., at 3, 6) to challenge the facial sufficiency of Mr. Smollett's allegations they knowingly made false statements to the police (*see* Countercl., ¶¶ 66-110, 119, 125-32).

In addition to depending on allegations outside the counterclaim, Defendants misunderstand the legal standard for malicious prosecution. Further, Illinois law does not limit liability for malicious prosecution claims to situations where the defendant signed the criminal complaint against the plaintiff, but rather "'extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present.'" *Collier v. City of Chicago*, No. 14 C 2157, 2015 WL 5081408, at *9 (N.D. Ill. Aug. 26, 2015) (*quoting Rodgers*, 315 Ill. App. 3d at 348, 733 N.E.2d at 842). Where, as here, the plaintiff alleges the defendant knowingly made false statements to police which resulted in criminal prosecution of the plaintiff, the plaintiff has properly alleged a claim for malicious prosecution. *Ferrell v. Harrington*, No. 07 C 3027, 2007 WL 3307026, at *3 (N.D. Ill. Nov. 2, 2007).

Taking the properly pleaded allegations of the counterclaim as true for the present motion to dismiss, Mr. Smollett sufficiently pleaded that Defendants knowingly provided false information to police for which they received a benefit (*see* Countercl., ¶¶ 119-124.). *See Wallace v. City of Zion*, No. 11C2859, 2011 WL 3205495, at *5 (N.D. Ill. July 28, 2011) ("Construing the facts in Plaintiffs' favor, they have alleged that Jones made false statements contributing to the commencement of the criminal proceedings against them when he reported Plaintiffs to the police for wrongdoing although they allege that they did nothing wrong."). In *Wallace*, the defendant Jones, a library security supervisor, verbally harassed the plaintiffs. When the plaintiffs reported Jones to his supervisors, Jones called the police. Police violently arrested the plaintiffs (a family of three with a 2-year-old) as plaintiffs were walking away from the library. *Id.* at *2. After charges were dropped against the plaintiffs, the plaintiffs brought a malicious prosecution action against several defendants, including the library security supervisor who was a private citizen, claiming

9

they acted in concert to cause plaintiffs to be falsely criminally charged. *Id.* at *3. Similarly, here, Mr. Smollett alleges the Osundairo brothers' false statements contributed to the commencement of the criminal proceedings against Mr. Smollett. Indeed, even in the case Defendants rely on to claim that they acted in good faith, *Allen v. Berger*, 336 Ill. App. 3d 675, 784 N.E.2d 367 (1st Dist. 2002), the court found that "when a person makes a knowingly false report to a prosecuting officer, the resulting prosecution is attributable to that person." 784 N.E.2d at 370 (finding that, when taking the allegations of the complaint as true on a motion to dismiss, the defendants provided false information to the Cook County State's Attorney and to a grand jury which led to the plaintiff's criminal prosecution). Thus, Mr. Smollett plausibly alleges Defendants commenced or continued the criminal prosecution against him.

   **B.**  **Mr. Smollett plausibly alleges that the criminal proceedings against him terminated in a manner indicative of his innocence.**

In arguing that Mr. Smollett failed to allege the criminal proceeding terminated in his favor, Defendants primarily rely on the City of Chicago's Reply in Support of their Motion to Dismiss. (*See* Defs.' Mem. in Supp., at 7.) However, Mr. Smollett alleges the criminal proceeding terminated in March 2019 in a manner indicative of his innocence. (*See* Countercl., ¶¶ 111, 135.) Defendants incorrectly contend that that *Swick* supports dismissal here. In *Swick*, the Illinois Supreme Court recognized that "a *nolle prosequi* 'is not a final disposition of a case but * * * is a procedure which reverts the matter to the same condition which existed before the commencement of the prosecution.'" 662 N.E.2d at 1242 (quoting *People v. Woolsey*, 139 Ill. 2d 157, 564 N.E.2d 764 (Ill. 1990)). Importantly, in *Swick*, the court adopted the majority rule "that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused." *Id.* at 1242-43 (citations omitted); *see also Ferguson v. City of Chicago*, 213 Ill. 2d 94, 102, 820 N.E. 2d 455, 460 (Ill. 2004) ("Because the charges in *Swick* were nol-prossed, there was no dispute that the criminal proceeding had been terminated."). This "majority rule best reflects the need to balance an individual's right to be free from unreasonable criminal

10

prosecutions with the public policy which favors the exposure of crime." *Swick*, 662 N.E.2d at 1243 (citing *Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 411 N.E.2d 229 (Ill. 1980)).

Here, Mr. Smollett alleges the Cook County prosecutors promptly dismissed all 16 counts of the criminal indictment against him a mere two and a half weeks after filing the high-profile indictment. (*See* Countercl., ¶¶ 111, 135.) The criminal proceedings terminated via a *nolle prosequi* order in a manner indicative of Mr. Smollett's innocence. (*Id.* ¶ 135.) As explained in *Swick*, the *nolle prosequi* reverts the matter back to the pre-prosecution condition. Accordingly, the Cook County prosecutors' *nolle prosequi* of the proceedings against Mr. Smollett terminated the proceedings for purposes of a malicious prosecution claim. Additionally, Defendants' injection of Judge Toomin's Order and the subsequent investigation of special prosecutor Dan Webb have no bearing on the issue of whether the proceedings against Mr. Smollett terminated. Mr. Smollett has plausibly pleaded that the City Defendants lacked any reliable evidence or probable cause to commence proceedings against him, as discussed further below, and the prosecutors' prompt dismissal of the 16-count indictment in such a high-profile case indicates that they recognized they had no case to prosecute.

Here, Ms. Smollett plausibly pleads that the proceedings were terminated in his favor in a manner indicative of his innocence because it was improbable that he could be found guilty. *Ruiz-Cortez v. City of Chicago*, No. 11 C 1420, 2016 WL 6270768, at *21 (N.D. Ill. Oct. 26, 2016), *aff'd*, 931 F.3d 592 (7th Cir. 2019). Mr. Smollett's claims that Defendants' changed their story at or near their release and falsely told police that the hate crime Mr. Smollett suffered was a hoax (*see* Countercl., ¶ 36), and that Defendants did so only after changing their story at the eleventh hour to avoid criminal charges (*see id.* ¶ 43), without independent corroboration, (*see id.* ¶ 44), indicated that the charges could not be sustained against Mr. Smollett given his independently corroborated statements. (*See id.* ¶¶ 98, 105, 142.)[2]

---

[2] Mr. Smollett recognizes that Special Prosecutor Dan Webb filed new charges against Mr. Smollett in the Circuit Court of Cook County last month. Mr. Smollett maintains that the prior criminal proceedings terminated properly, and he has challenged the propriety those charges and

### C. Mr. Smollett sufficiently alleged Defendants lacked probable cause to falsely tell the police that Mr. Smollett allegedly lied about the hate crime committed against him.

Mr. Smollett adequately pleads that Defendants lacked probable cause to claim, and therefore falsely state to police, that Mr. Smollett allegedly arranged for a hoax hate crime. (*See* Countercl., ¶ 36.) Defendants incorrectly argue that Mr. Smollett's malicious prosecution claim fails because his allegations show that "there was plenty of probable cause for *the City* to bring criminal charges against [Mr.] Smollett." (*See* Defs.' Mem. in Supp., at 7 (emphasis added).) Defendants solely rely on the City of Chicago's arguments in contesting probable cause here, however, "in false arrest cases, the probable cause analysis focuses on whether the defendant who is alleged to have procured the plaintiff's arrest had "reasonable grounds to believe that an offense was committed by the plaintiff.'" *Gvozden v. Mill Run Tours, Inc.*, No. 10-CV-4595, 2016 WL 930514, at *2 (N.D. Ill. Mar. 11, 2016) (quoting *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 73, 791 N.E.2d 1206, 1220 (1st Dist. 2003)). Defendants' memorandum in support of their motion to dismiss fails to raise any argument other than adopting the City's reply brief. (*See* Def's Mem. in Supp., at 7.) Moreover, Mr. Smollett sufficiently alleges Defendants lacked probable cause to make their false and self-serving statements to the police and to a grand jury that Defendants and Mr. Smollett somehow conspired to fake a hate crime.

For state law malicious prosecution, "[p]robable cause is a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Smith v. Burge*, 222 F. Supp. 3d 669, 690 (N.D. Ill. 2016) (internal citations and quotations omitted). "Probable cause exists at the time of arrest when reasonably trustworthy information, facts and circumstances would lead a prudent person to believe that a suspect had committed or was committing a crime." *Neiman v. Keane*, 232

---

the authority of the Special Prosecutor to bring new charges, both in a motion to dismiss filed in the circuit court and in a motion for a supervisory order filed in the Illinois Supreme Court. Also, the new charges are distinguishable in that they include six counts of disorderly conduct compared to the 16 counts in the prior criminal proceedings. In the event that the Court determines that the circumstances at this time do not indicate that the prior proceedings terminated, Mr. Smollett respectfully requests that any dismissal of his claim be without prejudice so that he may reassert his claim at such a time when the proceedings have terminated.

F.3d 577, 580 (7th Cir. 2000) (citing *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir.1999)). Whether probable cause exists or is lacking is a factual determination. *See, e.g.*, *Guzell v. Hiller*, 223 F.3d 518, 522 (7th Cir. 2000) (reversing as premature the district court's Rule 12 (b)(6) dismissal of false arrest claim based on lack of probable cause).

Here, the Osundairo brothers changed their story from initially telling CPD that they had nothing to do with any crime to falsely alleging, at the end of their time in custody, that Mr. Smollett somehow falsely claimed to have been a victim of a horrendous hate crime. (*See* Countercl., ¶ 36.) Defendants thus implicated themselves in wrongdoing at least by claiming to have taken part in a conspiracy allegedly to commit felony disorderly conduct, but were released without charges. (*See* Countercl., ¶ 41.) Thus, Mr. Smollett demonstrated the Osundairo Brothers' provided false, self-serving, and "clearly not reliable" statements to conspire with CPD to close the sprawling, high-profile investigation into the attack on Mr. Smollett(*see* Countercl., ¶¶ 43-44, 79-81, 132, 144-45), which adequately pleads a lack of probable cause. *See Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642-646, 784 N.E.2d 258, 266-271 (1st Dist. 2002) (reversing the trial court's order granting summary judgment in favor of defendants on malicious prosecution claim on the basis that the facts failed to show that any of the statements proffered to support probable cause were reliable). The felony complaint against Mr. Smollett was based on the Osundairo Brothers' unreliable and self-serving statements without any further investigation or independent corroboration by the Chicago Police Department." (*Id.* ¶ 145.) In sum, Mr. Smollett alleges that Defendants lacked any reasonable basis to believe that he was not the victim of a vicious hatecrime, and so the Court should reject their argument that the counterclaim fails to adequately plead lack of probable cause.

### D. Mr. Smollett properly alleges that Defendants acted with malice.

Mr. Smollett sufficiently alleges that Defendants acted with malice by providing false statements to the police and to the grand jury. "Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice." *Rodgers v. Peoples Gas, Light & Coke Co.*,

13

315 Ill. App. 3d 340, 349, 733 N.E.2d 835, 842 (1st Dist. 2000). Defendants acted without probable cause and not to do justice, but to implicate an innocent party so as to secure their own freedom. Additionally, CPD obtained text messages sent between the Osundairo brothers exhibiting strong homophobic sentiment. (*See* Countercl., ¶ 94.) In addition, Mr. Smollett properly alleges that Defendants acted with malice when they knowingly gave false information to police without any probable cause to do so. *Collier v. City of Chicago*, No. 14 C 2157, 2015 WL 5081408, at *8 (N.D. Ill. Aug. 26, 2015) (*quoting Johnson v. Target Stores, Inc.*, 341 Ill.App.3d 56, 77, 791 N.E.2d 1206, 1223 (2003)) ("malice may be inferred from lack of probable cause when 'there is no other credible evidence which refutes that inference.'"). Moreover, at this juncture, the well-pleaded allegations of the counterclaim must be taken as true and Defendants failed to show these allegations were insufficient. Accordingly, Mr. Smollett plausibly alleges that Defendants acted with malice, by acting without probable cause and not to bring a party to justice, and the Court should reject their argument to the contrary. *Wallace v. City of Zion*, No. 11C2859, 2011 WL 3205495, at *5 (N.D. Ill. July 28, 2011) ("Plaintiffs also allege that Jones acted with malice and reckless indifference to their rights. Accordingly, Plaintiffs have alleged sufficient facts stating a claim for malicious prosecution against Jones that is plausible on its face.).

  **E. Mr. Smollett sufficiently alleges that damages from Defendants' false statements.**

  Defendants improperly suggest that Mr. Smollett was required to allege special damages when he alleges Defendants' false statements resulted in his criminal prosecution for which he now seeks damages in tort for malicious prosecution. Mr. Smollett alleges that Defendants' conduct has caused him substantial economic damages, reputational harm, humiliation, mental anguish, and extreme emotional distress. (*See* Countercl., ¶ 136.) Yet Defendants argue that Mr. Smollett claims damages for the trouble and expense arising from a legal controversy. (*See* Defs.' Mem. in Supp., at 8-9.) Defendants completely miscast the alleged damages to fit their argument, which is based entirely on inapposite authority.

14

Both *Smith v. Michigan Buggy Co.*, 175 Ill. 619 (1898), and *Cult Awareness Network v. Church of Scientology Intern.*, 685 N.E.2d 1347 (1997), involved malicious prosecution claims based on an underlying civil suit. "Although a plaintiff alleging malicious prosecution based on a civil proceeding must establish some 'special injury' beyond the usual expense, annoyance, and inconvenience of defending a lawsuit, a plaintiff alleging malicious prosecution based on a criminal proceeding need not show special injury." *St. Paul Fire & Marine Ins. Co. v. City of Zion*, 2014 IL App (2d) 131312, ¶ 15, 18 N.E.3d 193, 197 (citing *Voga v. Nelson*, 115 Ill. App. 3d 679, 682, 450 N.E.2d 1364, 1367 (1983) ("the proper rule for malicious prosecution actions based on the institution of criminal proceedings is that no showing of special injury is required."). In *Voga*, the defendant swore out a false complaint against the plaintiff to the county State's Attorney resulting in the plaintiff's criminal prosecution and eventual jury verdict in favor the plaintiff. Analogously to why Mr. Smollett sufficiently alleged damage from the criminal prosecution without being required to demonstrate some 'special injury.' *Voga*, 115 Ill. App. 3d at 682 (*citing Gonzalez v. Chicago Steel Rule Die & Fabricators Co.* (1982), 106 Ill. App. 3d 848, 850, 445 N.E.2d 67) ("if the malicious prosecution is based on the institution of criminal proceedings, no showing of special injury is required."). Although a plaintiff is required to show special injury when the plaintiff's action is based on a wrongfully brought civil suit, a plaintiff claiming injury from criminal proceedings is not so required. *Id.* ("The instant case is a malicious prosecution action based on the institution of a criminal prosecution for aggravated battery. Thus, plaintiff was not required to present evidence of special injury.). Accordingly, Mr. Smollett properly pleads damages in the counterclaim based on applicable law.

## CONCLUSION

**WHEREFORE**, the Osundairo brothers' Motion to Dismiss Smollett's Counterclaim should be denied in its entirety. If, however, the Court grants Defendants' motion in whole or in part, Mr. Smollett respectfully requests that the Court's order be without prejudice so that Mr. Smollett may cure any defects through an amended counterclaim. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 519-20 (7th Cir. 2015) (reiterating that

a party should be given an opportunity to try to amend her complaint before the entire action is dismissed).

Date: March 2, 2020 Respectfully submitted,

/s/ William J. Quinlan

William J. Quinlan
David E. Hutchinson
THE QUINLAN LAW FIRM, LLC
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 883-5500
wjq@quinlanfirm.com
dhutchinson@quinlanfirm.com

*Attorneys for Defendant /
Counterclaim-Plaintiff Jussie Smollett*

16

## CERTIFICATE OF SERVICE

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

                                                                 /s/ Maya C. Hermerding