**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, a municipal corporation, | |
| Plaintiff, | Case No. 1:19-cv-04547-VMK |
| v. | Magistrate Judge Sunil R. Harjani |
| JUSSIE SMOLLETT, an individual, | |
| Defendant. | |

## DEFENDANT JUSSIE SMOLLETT'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant Jussie Smollett, by and through his attorneys, respectfully submits this Reply in Support of the Motion to Compel Production of Documents from the City of Chicago ("City"):

### INTRODUCTION

As we see millions across the country rise up to protest and expose police misconduct, the City, by its refusal to produce the requested documents, is choosing to actively resist a citizen's lawful efforts to reveal dishonesty, directly relating to the charges against him, throughout the department, including the police superintendent who oversaw and publicly commented on the investigation of Mr. Smollett's report of a vicious hate crime and assault. Indeed, the City's opposition to the motion to compel puts the cart before the horse and largely fails to appreciate that this case remains in the discovery phase.[1] Allegations are not proven facts, but the City improperly assumes that it has already proven that Mr. Smollett made false statements to the CPD.

---

[1] Furthermore, considering that the City goes to the effort of disparaging Mr. Smollett by characterizing his discovery requests as attempting to "muddy the waters" three times in its opposition, it is ironic that, among other things, the City interjected and attached a letter from Mr. Smollett's counsel in the prior criminal matter, which has no bearing on the instant motion. *See* ECF No. 98, at 3 & ECF No. 98-2.

(*See, e.g.*, ECF No. 98, at 1, 2, 6.) Moreover, in so doing, the City conspicuously omits the role of individuals at CPD that concluded that Mr. Smollett allegedly made false statements to the CPD. (*See, e.g.*, *id.* at 2 ("Interviews, financial records, and other evidence revealed that contrary to Smollett's statements, Smollett himself had orchestrated his own attack by paying the Osundairo brothers to stage the attack.").) Relatedly, by stating: "Smollett is on trial, not Eddie Johnson," as a premise to oppose the motion to compel, the City improperly seeks to narrow the scope of discoverable information. (*Id.*) As in any other case, the evidence and witnesses involved in the facts and circumstances at issue here are subject to discovery, including information bearing on a witness's credibility or that may be used for impeachment. Mr. Smollett is entitled to seek discovery to prepare his defense to the City's claims.

Importantly, there is no dispute that former Chicago Police Department ("CPD") Superintendent Eddie Johnson was involved in the investigation of the January 29, 2019, attack on Mr. Smollett. This is not surprising; as the City and the Court have recognized, the attack on Mr. Smollett was a "high-profile hate crime and physical assault." (*See* ECF No. 25, at 5.) The City does not contend that Johnson did not participate in the Smollett investigation, or that he did not review the evidence and direct the investigation; rather it attempts to attenuate Johnson's involvement by offering an affidavit from a detective stating that, to the best of *his* knowledge, Johnson "was not involved in the day-to-day investigation of Smollett's report." (ECF No. 98-1, ¶ 5.) On that basis, the City asserts that "[a]ny knowledge [Johnson] had was at most second or third hand" (ECF No. 98, at 6), and posits that Johnson was uninvolved with Smollett's investigation "as with any of the thousands of investigations that took place while he was Superintendent." (*id.* at 5-6). But it is a false equivalence for the City to suggest that the Smollett investigation was like any other investigation taking place while Johnson was Superintendent.

Moreover, the City's logic suggests that any superior officer that relies on direct reports, rather than conducting an investigation herself, does not participate in an investigation—that is wrong.

Mr. Smollett has consistently maintained that he did not make any false statements to the CPD, and so his defense requires discovery to rebut the CPD's false narrative—most visibly furthered by Johnson's statements to the media—that he somehow orchestrated an attack on himself. Former Superintendent Johnson made nearly a dozen public statements regarding the particulars of the Smollett investigation between January 29, 2019, and April 11, 2019, when the City brought its lawsuit against Mr. Smollett. These statements include at least nine occasions where he discussed details of the investigation, furthered the position that Mr. Smollett perpetrated a hoax, and answered questions from reporters.[2] At the discovery stage of these proceedings, these are relevant predicate facts bearing on the City's decision to bring claims against Mr. Smollett.

---

[2] *See Jussie Smollett case: Chicago Police superintendent's full remarks*, NBC NEWS (Feb. 21, 2019), *available at* https://www.nbcnews.com/news/us-news/jussie-smollett-case-chicago-police-superintendent-s-full-remarks-n974026; *Chicago police chief details turning point for Jussie Smollett*, CNN (Feb. 25, 2019), *available at* https://www.youtube.com/watch?v=L-QH6ggDWIg; *Chicago police chief speaks out on Jussie Smollett case*, ABC NEWS (Feb. 25, 2019), *available at* https://abcnews.go.com/GMA/News/video/chicago-policechief-speaks-jussie-smollett-case-61294750; *The Morning Show Interviewed CPD Superintendent Eddie Johnson*, 107.5 WGCI (Feb. 25, 2019), *available at* https://www.youtube.com/watch?v=yigA-SV55eQ; *CPD Supt. Eddie Johnson on Jussie Smollett case*, WGN News (Mar. 1, 2019), *available at* https://www.youtube.com/watch?v=bBV9-m34N2A; *Chicago police slam decision in Jussie Smollett case*, CNN (Mar. 26, 2019), *available at* https://www.cnn.com/videos/us/2019/03/26/cnngo-chicago-pd-mayor-rahm-emanuel-jussie-smollett-charges-dropped-reaction-sot.cnn; *Time to 'turn the page' on Jussie Smollett: Eddie Johnson*, CHICAGO SUN-TIMES (Mar. 29, 2019), *available at* https://www.youtube.com/watch?v=JD-1Rsz9z2c; *Supt. Eddie Johnson Discussing Crime Statistics & Jussie Smollett*, WCIU (Apr. 1, 2019), *available at* https://www.wciu.com/videos/thejam/supt-eddie-johnson-discussing-crime-statistics-jussie-smollett; *Chicago's Top Cop Eddie Johnson on Smollett, Lightfoot*, PBS/Chicago Tonight (Apr. 4, 2019), *available at* https://www.wciu.com/videos/thejam/supt-eddie-johnson-discussing-crime-statistics-jussie-smollett.

In discovery, the basis for Chicago Mayor Lori Lightfoot's decision to fire Johnson because he "intentionally misled the people of Chicago and he intentionally misled [her]"[3] is directly probative of Johnson's credibility and will inform Mr. Smollett's defense regarding Johnson's conduct in high-profile investigations, including the Smollett investigation, where Johnson has misled the City and the public. To that end, Mr. Smollett issued discovery requests to the City, a subpoena to a consultant to the City involved in Johnson's termination, and a subpoena to the Chicago Office of Inspector General ("OIG"), regarding Johnson's termination and the OIG investigation Mayor Lightfoot relied upon in deciding to terminate him. (*See* ECF No. 88, at 4-5.)

Since that time, the City has been playing games with the Court and Mr. Smollett regarding these materials, particularly the OIG documents. The City's January 29, 2020, motion to quash only raised a procedural objection to the OIG, essentially requesting more time to respond, thus implying that it would make at least some production. (ECF No. 57.) As the Court will recall, on February 19, 2020, the City requested an additional 28 days to respond to the OIG subpoena, did not raise any relevance objection, and represented in open court that it had possession, custody, or control over the OIG documents. Yet when the City finally responded to the requests for the Johnson termination documents, it refused to produce anything. (*See* ECF No. 88-1, at 44, 52-61, 63-68.)

For two reasons, it is noteworthy that on April 15, 2020, Mayor Lightfoot expressed that she wanted the OIG's final report regarding Johnson to be released to the public, but explained: "[T]hat's a question for the IG"; and "I don't control what the IG does."[4] First, it suggests that that

---

[3] Fran Spielman and Michael Sneed, *CPD superintendent fired: Eddie Johnson 'intentionally misled the people of Chicago and he intentionally misled me,' Lightfoot says*, CHICAGO SUN-TIMES (Dec. 2, 2019), available at https://chicago.suntimes.com/cityhall/2019/12/2/20991764/chicago-police-superintendent-eddie-johnson-fired-cpd-lori-lightfoot.

[4] Fran Spielman, *Lightfoot blames inspector general for not releasing report on incident that got Eddie Johnson fired*, CHICAGO SUN-TIMES (Apr. 15, 2020), *available at*

4

the City's repeated representations in this litigation that it has custody or control over the OIG documents are false, and it is banking on the Court not to call its bluff. (*See* ECF No. 98, at 11 ("the City does have custody over the requested documents").) Second, if the mayor wants the OIG report to be public, what is the possible harm or burden in producing it in this litigation where a protective order is in place? Mr. Smollett should be allowed to obtain these materials in discovery, and the parties can later determine what may or may not be admissible at trial.

Finally, the City's protest that it has already produced over 11,000 pages of responsive documents is in no way indicative of the thoroughness or completeness of its production. The overwhelming majority of the City's production to date are summary reports from the investigative file, including inventory and responses to warrants or subpoenas; it is bereft of any of the internal documents communications surrounding those reports and materials, which are part and parcel of discovery in civil litigation. Even if the City is correct that Johnson's involvement with the Smollett investigation involved direct reports, documents or communications evidencing as much have not been produced. The City should not be rewarded for withholding responsive materials in a lawsuit it initiated.

## ARGUMENT

### I. Eddie Johnson's Termination Is Relevant to Mr. Smollett's Defense and a Proper Subject of Discovery.

The City's claims against Mr. Smollett are based on the investigation and decisions made by the individuals at CPD, under Johnson's direction and authority. That the City seeks to protect Johnson from involvement in this matter, for example by not mentioning him in the complaint or its initial disclosures, does not make it true. As the City and CPD sought to try its case in the court of public opinion, Johnson's involvement in the Smollett investigation is evident from the public

https://chicago.suntimes.com/city-hall/2020/4/15/21222666/eddie-johnson-fired-drinking-driving-inspector-general-report-lightfoot-bridgeport.

record, including Johnson's numerous appearances, statements, and interviews. (*See, e.g.,* footnote 2, above.) Despite the City's contention to the contrary, the Smollett investigation was an extraordinary event, not just one of "any of the thousands of investigations that took place while [Johnson] was Superintendent." (ECF No. 98, at 5-6.)

Mr. Smollett's defense in this case in part challenges the veracity and credibility of the assertions and conclusions originating at the CPD under former Superintendent Johnson. As it stands, Johnson is expected to be called as a witness in this matter. It is premature for the City to suggest that the apex doctrine forecloses calling Johnson as a witness before the City produces Johnson's documents and communications related to the Smollett investigation. Johnson was the head of the CPD overseeing the Smollett investigation, which was probably the highest-profile case in the country in early 2019. As noted above, Johnson regularly spoke publicly about high-level and granular details about the investigation and his conclusions about the investigation. The City wrongly suggests that he was merely a receptacle for second-hand information. (*See* ECF No. 98, at 9-10.)

The findings of the investigation and termination of Johnson are unquestionably relevant to Mr. Smollett's defense and similarly situated public officials have been compelled to produce documents and even testify after publicly speaking on related matters. In a separate case brought by a wrongly incriminated criminal defendant whom former Governor Ryan pardoned, after Governor Ryan talked on Oprah about his commutation of death-sentences he was later compelled to produce documents and provide testimony in the civil case. *See Howard v. City of Chicago*, No. 03 C 8481, 2006 WL 2331096, at *8 (N.D. Ill. Aug. 10, 2006) ("Having voluntarily agreed to respond publicly to questions from a talk show host on the basis for his decision to pardon the Plaintiffs and the evidence he considered in making that decision, Ryan cannot now claim a privilege to refuse to give testimony in a civil case on that same topic."). Additionally, in another

suit by police officers against the City, after former mayor of Chicago Rahm Emanuel spoke publicly about the police "code of silence" the district court denied a motion *in limine* to bar any evidence of Emanuel's comments regarding the existence of a code of silence or attempts to call him to testify at trial. *Spalding et al v. City of Chicago et al*, N.D. IL CASE #: 1:12-cv-08777, docket entry 255. Although the City claims that Johnson is not a party to this case and will not be required to testify at trial, such an objection is premature during discovery when a "non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. Critically, Mr. Smollett is not seeking at this moment to compel Johnson's testimony, rather simply seeking documents relating to Johnson's dishonesty and credibility and which are likely to lead to the discovery of admissible evidence.

Mr. Smollett's request for production of documents concerning Johnson's termination is relevant because it strikes to the serious issue of the City seeking the prosecution of someone they knew to be innocent. "A claim that police officers violated their sworn duty by knowingly seeking the prosecution and conviction of a person whom they knew to be innocent (and did so through multiple constitutional violations) strikes at the heart of the integrity of our criminal justice system. It is among the most serious charges that can be leveled against law enforcement." *Evans v. City of Chicago*, 231 F.R.D. 302, 317 (N.D. Ill. 2005). Here, Mr. Smollett maintains his innocence, that the City and CPD knew Mr. Smollett was innocent, and that the City has relentlessly pursued Mr. Smollett even after the charges against Mr. Smollett were dismissed. Johnson's statements made during the initial investigation into Mr. Smollett's report of a vicious hate crime and assault displayed knowledge of granular details, meaning that Johnson did not have simply a bird's eye view as the City maintains. Indeed, Johnson's statements occurred during the time criminal charges were brought against Mr. Smollett and leading up to the City's filing suit. Accordingly, discovery

relating to Johnson's termination on the basis of his lack of truthfulness strikes to the heart of Mr. Smollett's defense. *See Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 625 (N.D. Ill. 2016) ("Bias in its myriad forms is always relevant and never collateral.") (*citing United States v. Abel*, 469 U.S. 45, 105 S. Ct. 465 (1994), and *United States v. Lindemann,* 85 F.3d 1232, 1243 (7th Cir. 1996)).

Moreover, the Court has not issued any *in limine* ruling barring admission of evidence of Eddie Johnson's truthfulness and therefore the City cannot sustain an objection to producing the requested documents on the basis of relevance. *Evans v. City of Chicago*, 231 F.R.D. 302, 310 (N.D. Ill. 2005) ("given that there are no *in limine* rulings at this time barring the admission of that evidence, we cannot say that the information sought by the police officer defendants is outside the scope of 'relevance' as defined in Rule 26, at least insofar as the police officer defendants seek documents and testimony to probe the basis for the pardon."). Documents from Johnson's termination may lead to evidence of Johnson's lack of truthfulness during the early 2019 investigation of Mr. Smollett's report of being assaulted and subsequent decision by the City to pursue a civil claim against Mr. Smollett knowing Mr. Smollett's innocence. This is similar to *Evans* where the court denied the motion to quash deposition subpoena for former Governor Ryan: "We cannot say that Mr. Ryan would be unable to give any testimony—'the process taken by Mr. Ryan and the Governor's staff to determine what evidence they uncovered that led them to make a recommendation regarding Mr. Evans's clemency petition'—that would fall outside of an applicable privilege." *Evans*, 231 F.R.D. at 320. Here, Mr. Smollett's request for documents from Johnson's termination is relevant to the process the City took in bringing and prosecuting claims against Mr. Smollett.

## II.     Mr. Smollett Should Be Allowed to Obtain Discovery to Defend Himself Against the City's Claims.

In its Opposition, the City improperly attempts to argue its case and focus on trial admissibility in a discovery dispute. That is not the law. Matters relevant to a party's defense need "not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The City has not claimed the requested documents are privileged, and the City cannot show that Johnson's lack of truthfulness while acting as superintendent of Chicago police is not relevant to the subject matter of the pending action. "Document requests under Rule 34 of the Federal Rules of Civil Procedure are governed by the liberal standard set forth in Rule 26(b)(1), which permits discovery 'regarding any matter not privileged, which is relevant to the subject matter involved in the pending action.' . . . Even information that is not admissible at trial may be sought as long as the information sought to be discovered 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). Relevance is "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case, without limitation to the issues raised by the pleadings. Relevancy cannot be equated with admissibility at trial or the narrow issues presented by the facts. The test of relevancy is the subject matter of the action." *Id.*

Mr. Smollett's discovery request is relevant because it is germane, and any argument by the City that the request must be "competent" or "admissible" is without merit during this stage of the proceedings. *See* 8 WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2008 (3d ed.) ("'relevant' is synonymous with 'germane,' and that it should not be read as meaning 'competent' or 'admissible.' The Supreme Court confirmed the correctness of this view in 1948 when it added the final sentence to Rule 26(b)(1), stating explicitly that it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably

9

calculated to lead to the discovery of admissible evidence."). Even if the documents Mr. Smollett requests are hearsay or otherwise inadmissible at trial, that "does not bar discovery if it is relevant to the subject matter of the action and there is a reasonable possibility that the information sought may provide a lead to other evidence that will be admissible. Questions of admissibility are best left until trial." *Id.*; *see also Howard v. City of Chicago*, No. 03 C 8481, 2006 WL 2331096, at *3 (N.D. Ill. Aug. 10, 2006) ("Discovery must be 'relevant to the subject matter involved in the action.' Fed.R.Civ.P. 26(b)(1). However, the scope of relevant discovery is not limited to evidence admissible at trial, but extends to 'discovery [that] appears reasonably calculated to lead to admissible evidence.'" ).

The City attempts to distract from the issue of relevance during discovery by focusing on the potential admissibility at trial of Johnson's testimony. This is not the standard during discovery, which instead looks to whether the information sought is relevant to the subject matter of the action. *Howard*, No. 03 C 8481, 2006 WL 2331096, at *4 ("Whether the judges who will preside at the trials of the four cases will permit or preclude the admission of the evidence sought in the subpoenas is a matter not before this court. As discussed above, decisions on the admissibility of evidence at trial are reserved for the trial judge."). Indeed, after Johnson gave such public comments on Mr. Smollett's case the City cannot now complain that Mr. Johnson's termination is not likely to lead to the discovery of admissible evidence. Because the City cannot show there is no possibility the information sought by Mr. Smollett will be relevant, the city must comply with the discovery request. *Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 386 (N.D. Ill. 1990) ("a request for discovery must be complied with unless it is clear that there is no possibility that the information sought may be relevant to the subject matter of the litigation."). Due to "the broad construction given to discovery requests," the City has "a heavy burden to show why discovery should be denied." *Id.* at 389. The City has not, and cannot, meet this burden.

At this stage in the proceedings, relevancy must be broadly construed "and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). The City attempts to limit the merits (or lack thereof) of its case against Mr. Smollett, which is antithetical to the function of discovery. *Id.* ("Discovery is designed to help define and clarify the issues, and is not limited to the merits of a case, since a variety of fact-oriented issues may arise during litigation that are not related to the merits.") (*citing Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). Here, Mr. Smollett's document requests are reasonably calculated to lead to evidence as to why the City wrongly began investigating Mr. Smollett as a suspect and levelled false charges against Mr. Smollett.

Similarly, former Governor Ryan was required to sit for a deposition so that pardoned former criminal defendants could question Ryan "about why he issued the pardons, what facts he reviewed and considered when he issued the pardons, whom he consulted when he made the pardon decisions, and whether any new evidence that has come to light would have changed his decision." *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 995 (N.D. Ill. 2006). The discovery sought went to the core of the defenses and the court found that the information sought was "relevant to the subject matter of the action, and thus within the scope of discovery. Whether the judges who will preside at the trials of the four cases will permit or preclude the admission of the evidence sought in the subpoenas is a matter not before this court. As discussed above, decisions on the admissibility of evidence at trial are reserved for the trial judge." *Id.* Here, Mr. Smollett's discovery request is related to the subject-matter of the litigation and therefore relevant.

**CONCLUSION**

As noted above, at this stage in the proceedings Mr. Smollett is not required to show admissibility, but rather the burden is on the City to show that the discovery request is protected by privilege or irrelevant. The City has shown neither and instead has improperly focused on the admissibility of the documents and the likelihood that Johnson will be called to testify at trial. This is simply a red herring. The law is clear, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action, and here Mr. Smollett's discovery request directly relates to the subject matter of the action by implicating the City's maligned response to his report of a vicious hate crime and assault.

WHEREFORE, for the foregoing reasons, Defendant Jussie Smollet respectfully requests that the Court grant the motion to compel (ECF No. 88), and any further relief that the Court deems just.

Date: June 5, 2020

THE QUINLAN LAW FIRM, LLC

/s/ David E. Hutchinson
Attorneys for Defendant Jussie Smollett

William J. Quinlan
David E. Hutchinson
Kamil Z. Merchant
THE QUINLAN LAW FIRM, LLC
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 883-5500
wjq@quinlanfirm.com
dhutchinson@quinlanfirm.com
kmerchant@quinlanfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.


/s/ Nicole Griesbach