IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:19-cv-04547 ) |
| JUSSIE SMOLLETT, | ) Honorable Virginia M. Kendall ) |
| Defendant. | ) Magistrate Judge Sunil Harjani ) |

**CITY OF CHICAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL THE FEDERAL BUREAU OF INVESTIGATION TO COMPLY WITH ITS DOCUMENT SUBPOENA**

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff City of Chicago (the "City"), moves to compel the Federal Bureau of Investigation ("FBI") to comply with a document subpoena ("Subpoena") for federal investigative materials ("Materials") related to Jussie Smollett. The FBI and the United States Attorney's Office for the Northern District of Illinois (the "USAO"), the FBI's representative within the Department of Justice, have declined to produce the Materials because they claim there is an ongoing criminal investigation and that disclosing the Materials would impair the investigation's effectiveness and violate grand jury secrecy. While the City recognizes the importance of grand jury secrecy and criminal investigations, given the facts in this case, the Court should compel production of the Materials.

The Materials are highly relevant to the City's case against Smollett. The City alleges that Smollett orchestrated a fake racist and homophobic assault against himself. The Materials relate to the FBI's investigation of a racist and homophobic letter and a threatening phone call that Smollett received days before his attack, as well as the attack itself. The Materials thus bear directly on the primary question in this case—whether or not Smollett faked his attack.

1

Weighed against this vital relevance, the FBI's objections do not support withholding the Materials. Federal Rule of Criminal Procedure 6(e) and the Supreme Court both expressly allow disclosure of grand jury materials in connection with a judicial proceeding where, as here, the materials sought are necessary to avoid an injustice and the need for disclosure outweighs the need for grand jury secrecy. In this case, it would be fundamentally unjust and against the public interest for the City—which is the first government agency scheduled to take sworn testimony from Smollett and other key witnesses—to be without access to Materials that Smollett himself has received from the Office of the Special Prosecutor ("Special Prosecutor") as part of Smollett's criminal case. Smollett should not have an informational advantage merely because he is a criminal defendant in a parallel case. And given the media scrutiny, multiple indictments, and public disclosure of key facts, the need for grand jury secrecy in this case is uniquely minimal. The Court should order disclosure of the Materials so the City can fairly litigate its case and ensure that justice is served.

## BACKGROUND

The City presumes the Court's familiarity with the factual background in this case given the past motion practice. In sum, this case is about Smollett's alleged racist and homophobic attack on January 29, 2019. The City is seeking to recover the investigative costs it incurred because Smollett made false statements to Chicago Police Department ("CPD") officers about his supposed attack. (Compl. ¶¶ 37-54.)

On January 22, 2019, a week before his alleged attack, Smollett purportedly received a threatening letter at the Fox production studios in Chicago. (*Id.* ¶ 10.) The letter, of which both parties have received pictures in discovery, contained an unknown substance. The letter also contained racist and homophobic imagery and slurs similar to those used in Smollett's alleged

2

attack, including a depiction of a noose. CPD and the FBI responded to reports of the letter, and as the media has reported, the FBI opened an investigation.[1] In an interview with CPD, Smollett's attackers, the Osundairo brothers, indicated that one of Smollett's motives for asking them to stage the attack was Smollett's belief that Fox did not adequately respond to the letter.

In an effort to determine whether the FBI uncovered any evidence about Smollett faking the threatening letter or his attack, the City sent the Subpoena to the FBI on November 25, 2019. The Subpoena requests documents and communications relating to Smollett's attack, the threatening letter, and a similar threatening phone call Smollett allegedly received days before the attack, as well as any documents the FBI provided to the Special Prosecutor. (Ex. A, City's Subpoena to FBI.) The City conferred with the FBI and USAO several times, but on July 29, 2020, the FBI stated:

> After consulting with the United States Attorney's Office, the FBI's representative within the Department of Justice, we are unable to comply with your subpoena. Your subpoena would require the FBI to reveal information acquired as part of an ongoing criminal investigation. Disclosure at this time would reveal and impair the effectiveness of investigatory records and techniques complied for law enforcement purposes. 28 C.F.R. § 16.26(b)(5). Moreover, to the extent the FBI possesses information that would have been obtained via the Grand Jury that would present an obstacle in complying with your subpoena. 28 C.F.R. § 16.26(1). (Ex. B, FBI's Resp. to City's Subpoena.)

In a June 12, 2020 hearing in Smollett's criminal case, the City learned that the Special Prosecutor was planning to produce "federal materials" to Smollett in discovery. (June 12, 2020 Status Hr'g, 2019 MR 00014.) These federal materials would have been responsive to the City's existing request for all documents received in Smollett's criminal case. Smollett has objected, however, citing Illinois Supreme Court Rule 415(c) and a protective order entered in the criminal case limiting disclosure of the federal materials. (Ex. C, Smollett's Resp.)

---

[1] Madeline Buckley, *FBI Investigation into Threatening Letter Sent to 'Empire' Actor Jussie Smollett Remains a Loose End*, CHI. TRIB., Mar. 27, 2019, *available at* https://www.chicagotribune.com/news/breaking/ct-met-jussie-smollett-fbi-20190327-story.html.

In a further effort to access the Materials, the City issued a subpoena to the Special Prosecutor on July 10, 2020. The Special Prosecutor stated that it cannot produce the Materials without a court order. The Special Prosecutor explained that when providing the Materials, the USAO stated that the Materials are subject to a federal court order and that the Special Prosecutor could only disclose the Materials in connection with Smollett's criminal case. (Ex. D, Special Prosecutor's Resp.) The City conferred with the Special Prosecutor on August 5, 2020, and the Special Prosecutor reiterated that it received the Materials subject to a court order that it has not seen, and that it can only produce the Materials with a court order.

## ARGUMENT

As discussed below, the Court should compel the FBI to produce the Materials. First, the Materials are directly relevant to the key issue in this case—whether or not Smollett faked his attack. Second, the FBI's objections lack merit: Rule 6(e) and federal courts expressly allow disclosure of grand jury and other law enforcement materials in connection with a judicial proceeding where, as here, the materials sought are necessary to avoid an injustice and the need for disclosure outweighs the need for grand jury secrecy.

I. **The Materials Are Highly Relevant in this Case**

"The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at *2 (N.D. Ill. Nov. 15, 2017) (citation omitted). Rule 26 provides that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 directs courts to consider factors such as "the parties' relative access to relevant information," "the importance of the discovery," and "whether the burden or expense of the

proposed discovery outweighs its likely benefit." *Id.* In determining the scope of discovery under Rule 26, relevance is construed broadly," *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 1429521, at *4 (N.D. Ill. Mar. 18, 2020), and information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

While the City does not know exactly what evidence the FBI possesses relating to Smollett, the Subpoena requests limited and specific information that is highly relevant to this case. The Subpoena seeks information relating to the FBI's investigation of a racist and homophobic letter that Smollett allegedly received on January 22, 2019, a threatening phone call that Smollett allegedly received on January 26, 2019, and the January 29, 2019 attack at issue in this lawsuit. The City's central claim in this case is that Smollett faked his January 29 attack, so any information about that attack is directly relevant. Information relating to the January 22 letter and January 26 phone call is also highly relevant because those incidents appear to be directly related to the attack. The letter, which was received seven days before the attack, included racist and homophobic language and a noose strikingly similar to that used in the attack. And the January 26 threatening call occurred a mere three days before Smollett was allegedly attacked.

If the FBI has information indicating that Smollett also faked the threatening letter and phone call—or that the Osundairo brothers were involved—that information would be key evidence at trial or in Smollett's deposition. Any such evidence would be probative of Smollett's motive (drawing attention to himself from his employer, Fox, and the public); absence of mistake (Smollett knew that the Osundairo brothers were his attackers and collaborated with them previously); and intent, preparation, and plan (the letter, call, and attack, all of which took place within a week and were strikingly similar, were part of Smollett's concerted effort to draw attention to himself as a hate crime victim). *See, e.g.*, *United States v. Ferrell*, No. 11 CR 595, 2013 WL

2636108, at *9 (N.D. Ill. June 12, 2013), *aff'd in relevant part,* 816 F.3d 433 (7th Cir. 2015) (admitting contemporaneous, similar bad acts under Rule 404(b) as probative of motive, plan, knowledge, and intent). Further, if Smollett testifies that he did not fake the January 29 attack, evidence indicating that he faked the letter or the phone call could be used to impeach his credibility. *DeLeon-Reyes*, 2020 WL 1429521, at *4 (noting that if defendants claim they never engaged in misconduct, "404(b) evidence [would be] relevant for impeachment purposes"). And even if the Materials are not admissible at trial or are inconclusive, they are certainly relevant now, at the discovery phase, when "[r]elevance] [ ] is a low bar to meet." *Id.* (holding that 404(b) evidence of other bad acts is relevant at discovery phase because it "could make it more likely" that defendants had the intent, motive, or plan to commit the misdeeds alleged by plaintiffs).

Put simply, the Materials bear directly on the central question in this case—whether or not Smollett faked his attack. Indeed, the USAO, Smollett, and Special Prosecutor have all not suggested otherwise.

## II. The FBI's Objections Do Not Apply in this Case

Citing 28 C.F.R. § 16.26(b)(1) and § 16.26 (b)(5), the FBI stated that it cannot comply with the Subpoena because the information requested is part of an "ongoing criminal investigation." The FBI argued that disclosure would "impair the effectiveness of investigatory records" and violate grand jury secrecy. Neither argument is compelling.

### A. Rule 6(e) Specifically Provides for Disclosure of Grand Jury Materials in this Case

According to 28 C.F.R. § 16.26(b)(1), the Department of Justice may not disclose materials in a manner that would violate the "grand jury secrecy rule, F. R. Cr. P., Rule 6(e)." Rule 6(e) prohibits government attorneys from disclosing grand jury materials, unless certain exceptions apply. Specifically, it states that "[t]he court may authorize disclosure—at a time, in a manner, and

6

subject to any other conditions that it directs—of a grand-jury matter: preliminarily to or in connection with a judicial proceeding." F. R. Crim. P 6(e)(3)(E)(i).[2] To invoke this exception, a party "must show [1] that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that the request is structured to cover only material so needed." *United States v. Tingle*, 880 F.3d 850, 855–56 (7th Cir. 2018), *cert. denied,* 138 S. Ct. 1567 (2018) (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)); *see also Hernly v. United States*, 832 F.2d 980, 984 (7th Cir. 1987) ("The standard set forth in *Douglas Oil* is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others."). Each element of this test is satisfied here.

**First**, the City needs the Materials to avoid injustice. This case has a unique history. After Smollett's initial criminal charges were dropped, the City brought this civil suit and the Special Prosecutor was appointed to re-investigate Smollett's criminal case. The USAO provided the Materials to the Special Prosecutor, and after Smollett was again indicted, the Special Prosecutor produced the Materials to Smollett as part of the criminal case. Now, over a year after the City filed suit, the USAO has not brought charges against Smollett. The City's case is proceeding, however, with depositions scheduled in the coming weeks—making the City the first government agency scheduled to take sworn testimony from Smollett and other key witnesses. But Smollett has gained access to relevant evidence that he can use in defending against the City's claims. By contrast, the City lacks access to this evidence—which may be critical to impeach or test the credibility of key witnesses and "avoid misleading the trier of fact." *Mitchell v. City of Chi.*, No.

---

[2] *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981) (history of Rule 6 "reveals that it contemplates disclosure in the course of parallel civil proceedings.")

18 C 7357, 2019 WL 3287844, at *2 (N.D. Ill. July 22, 2019) (allowing disclosure of grand jury materials to test credibility of key witnesses) (quoting *Douglas Oil*, 441 U.S. at 222).

Recognizing the importance of evenhanded discovery and the injustice associated with inequitable access to discovery, federal courts have consistently allowed disclosure of grand jury materials in the interest of justice where, as here, one party has access to the materials and the other does not. *See, e.g.*, *In re Cement-Concrete Block, Chi. Area*, 381 F. Supp. 1108, 1111 (N.D. Ill. 1974) (granting State of Illinois' motion to compel production of federal grand jury materials in antitrust enforcement action because it would be "highly inequitable and adverse to the principles of federal discovery to allow the defendants in a civil suit access to grand jury transcripts but not the plaintiffs"); *Sec. & Exch. Comm'n v. Nat'l Student Mktg. Corp.*, 430 F. Supp. 639, 641 (D.D.C. 1977) (it would be "inequitable, discriminatory and contrary to the principles of federal discovery" to allow defendant access to grand jury materials and not SEC attorneys); *U.S. Indus., Inc. v. U.S. Dist. Court for S. Dist. of Cal., Cent. Div.*, 345 F.2d 18, 23 (9th Cir. 1965) (it would be "highly inequitable and averse to the principles of federal discovery to allow one party access to a government document and not the other").

As the Supreme Court has long recognized, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Justice requires that Smollett and the City have such "mutual knowledge"—it would be "highly inequitable and adverse to the principles of federal discovery" to allow Smollett to have an informational advantage or the opportunity to surprise the City in this litigation merely because he is also facing parallel criminal charges. *In re Cement*, 381 F. Supp. at 1111; *see also Am. Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260 (N.D. Ill. 1985) (discovery

8

seeks to facilitate "evenhanded development of the facts underlying a dispute, so that justice [is] not shaped by surprise").

**Second**, the need for disclosure in this case is greater than the need for continued secrecy. As discussed above, the need for disclosure here is substantial. Smollett already possesses the federal Materials, and the City needs these highly relevant Materials to fairly try its case against Smollett with all available evidence and to ensure that Smollett is not afforded a strategic and informational advantage by litigating the City's case before his criminal case.

In contrast, the need for continued secrecy is minimal. The Supreme Court has identified five interests to consider in assessing the need for continued grand jury secrecy: (1) "if pre-indictment proceedings were made public . . . witnesses would be hesitant to come forward voluntarily"; (2) "witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements"; (3) "the risk that those about to be indicted would flee"; (4) the risk that those indicted "would try to influence individual grand jurors to vote against indictment"; and (5) "preserving the secrecy of the proceedings [assures] that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil*, 441 U.S. at 218–19.

Very little about this case is secret. Two separate state grand juries have indicted Smollett, and he is currently facing criminal charges. The local and national media has extensively covered every detail of this case, reported on the names and backgrounds of the key witnesses, and even reported on the FBI's investigation into Smollett.[3] Smollett himself discussed his attack in detail

---

[3] *See, e.g.*, Elisha Fieldstadt & Andrew Blankstein, *Jussie Smollett Charged with Felony for Alleged False Report of Hate-Crime Attack*, CNBC, Feb. 20, 2019, https://www.cnbc.com/2019/02/21/jussie-smollett-charged-with-felony-for-alleged-false-report-of-attack.html (reporting on Smollett's indictment, cooperation of Abel and Ola Osundairo, and involvement of Frank Gatson and Brandon Moore); Buckley, *supra* note 1 (reporting on FBI investigation into threatening letter).

and proclaimed his innocence on Good Morning America, (Compl. ¶ 51), and his attorney has publicly discussed details of the case.[4] Thousands of pages of the CPD investigative file and the State's Attorney's files relating to this case have been released to the public via FOIA requests.[5]

Given these unique facts, the *Douglas Oil* considerations demonstrate minimal need for secrecy. Smollett has already been indicted (twice), so there is no risk that producing the Materials to the City will enable Smollett "to influence grand jurors to vote against indictment" or prevent Smollett from being "held up to public ridicule" as a result of the indictment. *Douglas Oil*, 441 U.S. at 218–19. And because Smollett, the USAO, and the Special Prosecutor already have the Materials, there is likewise no risk that producing the Materials to the City will cause Smollett to "flee" or exact "retribution" against grand jurors. *Id.* In similar situations, courts have ordered disclosure because "the policy reasons supporting the rule of secrecy have been vitiated by a prior disclosure." *In re Cement*, 381 F. Supp. at 1111; *see also Mitchell*, 2019 WL 3287844, at *3 (authorizing disclosure where many of grand jury witness statements' were public); *In re Grand Jury Proceedings GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1301 (4th Cir. 1986) (need for secrecy "is seriously eroded if the grand jury materials have already been disclosed, particularly if the disclosure was to the target of the grand jury investigation").[6]

---

[4] Adam Carolla & Mark Geragos, Reasonable Doubt Podcast, Apr. 6, 2019, https://reasonabledoubtpodcast.com/2019/04/jussie-smolletts-lawyer-tina-glandian/ (Tina Glandian, Smollett's attorney, discusses "everything involving the attack and the reasoning behind it").

[5] *Read the Chicago Police Investigative File on the Jussie Smollett Case*, CHI. TRIB., Mar. 27, 2019, https://www.chicagotribune.com/news/breaking/ct-jussie-smollett-chicago-police-case-file-20190327-htmlstory.html.

[6] The FBI's argument that grand jury secrecy is required because its investigation is "ongoing" is unconvincing. There have been no federal charges against Smollett despite the key events taking place almost two years ago, the USAO providing the Materials to the Special Prosecutor months ago, and Smollett having been indicted twice. The USAO appears to have ceded its criminal case to the Special Prosecutor. Even if this were not true and there was an active federal investigation, courts have still allowed disclosure where, as here, the need for disclosure outweighs the need for secrecy. *See, e.g.*, *Capitol Indem. Corp. v. First Minn. Const. Co.*, 405 F. Supp. 929, 931 (D. Mass. 1975) (allowing disclosure despite ongoing criminal investigation because "the work of the grand jury would not be disrupted or delayed"); *Oracle Corp. v. SAP AG*, 566 F. Supp. 2d 1010, 1013 (N.D. Cal. 2008) (same).

Moreover, any concerns about the public disclosure of these Materials is unwarranted because (1) the Materials will remain confidential subject to the existing protective order in this case, *see Mitchell*, 2019 WL 3287844, at *4 (ordering disclosure of grand jury materials subject to protective order); and (2) disclosure to government attorneys "poses less risk of further leakage or improper use than would disclosure to private parties or the general public." *United States v. Rogan*, No. 02 C 3310, 2005 WL 2861033, at *4 (N.D. Ill. Oct. 27, 2005) (disclosing grand jury materials to civil government attorneys); *see also United States v. John Doe, Inc.*, 481 U.S. 102, 105-06 (1987) ("[w]e made it clear that the concerns that underline the policy of grand jury secrecy are implicated to a much lesser extent when the disclosure merely involves Government attorneys").

**Third**, the City's request is structured to cover only the information it needs. The City does not know precisely what evidence the FBI possesses, so the City requested information specifically related to (a) Smollett's alleged attack, (b) the threatening letter and phone call Smollett allegedly received days before the attack, and (c) the evidence that the USAO produced to the Special Prosecutor and the Special Prosecutor produced to Smollett. The City needs this evidence to fairly litigate its case against Smollett, to ensure Smollett is not afforded an unfair advantage, and to seek justice on behalf of the City and its residents for the costs incurred investigating Smollett's false reports. That said, the City has no objection to the Court reviewing *in camera* the Materials to determine the precise scope of what the FBI should provide to the City, should the Court deem it necessary. *See Lucas v. Turner*, 725 F.2d 1095, 1106 (7th Cir. 1984).

In sum, given the minimal need for grand jury secrecy, it is in the interest of justice and the public interest that the City—the first government agency to take sworn testimony from many key witnesses and test its case against Smollett—be granted access to the Materials already in

11

Smollett's possession. *See Rogan*, 2005 WL 2861033, at *6 (authorizing disclosure due to "strong public interest in investigating possible fraud, the involvement of the Government," and the defendant's access to the materials).

### B. Disclosure Will Not Impair the Effectiveness of the FBI's Investigatory Records

The FBI's other objection is that is has an "ongoing investigation," and disclosing the federal materials would "reveal and impair the effectiveness of investigatory records and techniques compiled for law enforcement purpose." (Ex. B, FBI's Response (citing 28 C.F.R. § 16.26(b)(5). This objection invokes the law enforcement investigatory privilege, the purpose of which is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, at *3 (N.D. Ill. Nov. 13, 1997). This privilege, however, is not absolute. *Id.* "The party claiming the privilege [ ] bears the burden of justifying application of the privilege . . . [and must] through competent declarations, show[] the court what law enforcement interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be." *Doe v. Hudgins*, 175 F.R.D. 511, 514–15 (N.D. Ill. 1997). And even if there are law enforcement interests that might be harmed, a party can still overcome the privilege if the moving party "shows that [its] need for the information outweighs the harm" to law enforcement. *Rodriguez v. City of Chi.*, 329 F.R.D. 182, 189 (N.D. Ill. 2019).

The FBI's assertion of the investigatory privilege fails for several reasons. First, the FBI has failed to make the required threshold showing of how disclosing the Materials to the City subject to the protective order would cause harm, what law enforcement techniques would be

12

impaired, and the level of harm caused. For this reason alone, the Court should reject the FBI's privilege assertion. *See Hernandez*, 1997 WL 754041, at *4 (ordering disclosure despite invocation of investigatory privilege because government failed "to provide any particularity as to what documents are privileged and why they merit such protection"); *Lewis v. City of Chi.*, No. 04 C 3904, 2004 WL 2608302, at *2 (N.D. Ill. Nov. 16, 2004) (rejecting investigatory privilege because government failed to satisfy "threshold procedural requirement" of "lodg[ing] formal claim of privilege . . . specifying with particularity the information for which protection is sought . . . explain[ing] why the information falls within the scope of the privilege.").

Second, even if the FBI had attempted to meet it burden, any harm to law enforcement appears minimal under these facts. This case, like the parallel criminal case, is not complex—it rests entirely on whether or not Smollett made false police reports about a hate crime. It is highly unlikely that novel law enforcement techniques are at issue. *Id.* (rejecting privilege because information did not reveal any "confidential investigative techniques").

Moreover, there is no risk that the existence of the investigation or key witnesses or information will be revealed in a way that will harm the investigation. As discussed above, the media has already reported on the FBI investigation and all the key witnesses, and the CPD and State's Attorney's files have been released publicly. *See BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 364 (D.D.C. 2018) (rejecting privilege and allowing disclosure despite ongoing investigation because "unprecedented amount of information . . . [wa]s already in public domain" and there was "critical need" for information). And Smollett not only has already been indicted, but also possesses the requested Materials, thereby eliminating any risk that he will be tipped off to the FBI's investigation or its witnesses. Moreover, disclosure of these Materials to the City would not result in disclosure to the public—the Materials would remain confidential

subject to the existing protective order. *See Preston v. Unknown Chi. Police Officer No. 1*, No. 10 C 0136, 2010 WL 3273711, at *2 (N.D. Ill. Aug. 16, 2010) (rejecting privilege claim and granting motion to compel in part because investigatory materials could be reviewed confidentially by moving party's counsel without impacting other witnesses yet to be interviewed or confidentiality of existing witnesses); *Rodriguez*, 329 F.R.D. at 189–90 (same).

Third, the City's need for the Materials outweighs any harm to law enforcement. As described above, the City is not aware of any way in which disclosure will harm the FBI's investigative goals. Presumably the FBI shared the Materials with the Special Prosecutor to ensure it had all relevant evidence to try its case against Smollett. Far from harming this aim, producing the Materials to the City will support the City's parallel effort to ensure that justice is served. Weighed against any harm that might exist, the City's need is significant. The Materials are directly related to the City's claims. Smollett already possesses the Materials, and the City's case is moving forward with depositions scheduled this month. The City needs these highly relevant Materials to fairly litigate its case against Smollett and ensure that justice is served.

## CONCLUSION

For the reasons detailed above, the City respectfully requests that the Court compel the FBI to produce the documents in its possession related to Jussie Smollett.

Dated: September 9, 2020　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Elie T. Zenner
　　　　　　　　　　　　　　　　　　Renai S. Rodney
　　　　　　　　　　　　　　　　　　Jennifer K. Bagby
　　　　　　　　　　　　　　　　　　Elie T. Zenner
　　　　　　　　　　　　　　　　　　City of Chicago Department of Law
　　　　　　　　　　　　　　　　　　121 North LaSalle Street, Room 600
　　　　　　　　　　　　　　　　　　Chicago, IL 60602
　　　　　　　　　　　　　　　　　　312-744-0200
　　　　　　　　　　　　　　　　　　elie.zenner@cityofchicago.org

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff City of Chicago*

## CERTIFICATE OF SERVICE

  I certify that on September 9, 2020, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/ Elie T. Zenner