UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| Plaintiff, | ) ) ) | 19 CV 4547 |
| v. | ) ) ) | Honorable Virginia M. Kendall<br>Magistrate Judge Sunil Harjani |
| JUSSIE SMOLLETT, | ) ) | |
| Defendant | ) | |

**UNITED STATES' RESPONSE TO CITY OF CHICAGO'S MOTION TO COMPEL THE FBI TO COMPLY WITH ITS DOCUMENT SUBPOENA**

The United States, by its undersigned counsel, hereby responds to the City of Chicago's Motion to Compel the Federal Bureau of Investigation ("FBI") to Comply with Its Document Subpoena. R. 119, 120. In its motion and supporting memorandum, the City claims that it is entitled to federal investigative materials related to the FBI's ongoing investigation involving Jussie Smollett, including grand jury materials, because "the materials sought are necessary to avoid an injustice and the need for disclosure outweighs the need for grand jury secrecy." R. 119 at 3.

The City has no legal basis to obtain these materials, and as to non-grand jury materials sought by the subpoena, this Court should deny the motion and quash the subpoena. With respect to any grand jury that the City seeks, the government requests that this Court refer the matter to Chief Judge Pallmeyer, who oversees the grand jury, as explained further below.

# BACKGROUND

## *Investigative Facts*

On or about January 22, 2019, a letter addressed to Smollett was sent to a production studio in Chicago. The letter contained racist and homophobic language, and the envelope contained white powder later determined to be acetaminophen and protein. The FBI, in conjunction with the U.S. Attorney's Office, opened an investigation, which remains ongoing.

Following his January 29, 2019 report to the Chicago Police Department ("CPD") that he was assaulted, Smollett was charged in the Circuit Court of Cook County. The charges were later dismissed. A special prosecutor was appointed, and the special prosecutor charged Smollett a second time.

## *The City's Lawsuit and Subpoena*

In April 2019, the City of Chicago sued Smollett to recover costs it incurred in the course of its investigation of the events of January 29, 2019.

On approximately November 25, 2019, the City sent a subpoena to FBI seeking documents and communications related to Smollett's alleged attack, the letter, and any documents the FBI provided the special prosecutor. Specifically, the subpoena requested the following:

> Any and all Documents or Communications relating to the Incident [on January 29, 2019], including but not limited to any investigative conclusions, any investigative notes, and any recordings or transcriptions of interviews.
>
> Any and all Documents or Communications relating to the threatening letter Defendant allegedly received on January 22, 2019 at the Fox production studio at 1445 S. Rockwell Street, including but not limited to any investigative

conclusions, any investigative notes, and any recordings or transcriptions of interviews.

Any and all Documents or Communications relating to the threatening phone call Defendant allegedly received on January 26, 2019, including but not limited to any investigative conclusions, any investigative notes, and any recordings or transcriptions of interviews.

Any and all Documents provided to Special Prosecutor Dan Webb.

R. 120-1.

The FBI responded that it was unable to comply with the subpoena, because the response would require the FBI to "reveal information acquired as part of an ongoing criminal investigation," as well as would "reveal and impair the effectiveness of investigatory records and techniques complied for law enforcement purposes," neither of which disclosures were permitted under 28 C.F.R. § 16.26(b)(5). R. 120-2. In addition, the FBI explained, to the extent the information requested was obtained via grand jury subpoena, disclosure was prohibited by federal rule. *Id*. (citing 28 C.F.R. § 16.26(1)).

## ARGUMENT

### I. The Court Should Deny the Request for FBI Documents About An Ongoing Criminal Investigation

This Court should deny the motion to compel the FBI to produce documents that relate to an ongoing criminal investigation, and should quash the subpoena.

The FBI's investigatory materials are protected from civil discovery by the law enforcement investigatory privilege.[1] *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d

---

[1] After a litigant shows the privilege applies, a court should balance the litigant's need for access against the public's interest in nondisclosure. *Id.*; *see also Hernandez v. Longini,* 1997

3

1122, 1125–26 (7th Cir. 1997); *In re The City of N.Y.*, 607 F.3d 923, 944, 948 (2nd Cir. 2010). The privilege is predicated on a public interest in minimizing disclosure of documents that would tend to reveal "law enforcement techniques and procedures," "undermine the confidentiality of sources," "endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation," "hamper future law enforcement efforts by enabling adversaries of law enforcement to evade detection," or "otherwise interfere with an investigation." *In re The City of N.Y.*, 607 F.3d 923, 944, 948 (2nd Cir. 2010) (internal marks and alterations omitted); *see also United States v. Winner,* 641 F.2d 825, 831 (10th Cir. 1981) ("The law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of ... investigatory files.").

There is a "strong presumption against lifting the privilege," *Dellwood Farms,* 128 F.3d at 1125-26, especially where a criminal investigation is ongoing, *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 189 (N.D. Ill. 2019). The Seventh Circuit has explained that a request, like the City's, for files related to an ongoing criminal investigation has the effect of "thrust[ing]" the courts "too deeply into the criminal investigative process":

> Unlike France, Italy, and other European countries in which judicial officers control the investigation of crimes, the United States places the control of such investigations firmly in the executive branch, subject only to such limited judicial intervention as may be necessary to secure constitutional and other recognized legal rights of suspects and defendants. The plaintiffs in these civil

---

WL 754041, *3-4 (N.D. Ill. 1997) (law enforcement investigatory privilege arises under common law and is "incorporated under Fed. R. Civ. P. 26(b)").

4

>suits, who are seeking to obtain material from the government's criminal investigation, are not criminal suspects or defendants. They thus have no definite legal right to the fruits of the FBI's investigative endeavors conducted in confidence; and it seems to us that neither should they have a right to force the government to tip its hand to criminal suspects and defendants by disclosing the fruits of the surreptitious (but presumably lawful) surveillance that the FBI conducted.

*Dellwood Farms,* 128 F.3d at 1125.

Consistent with this privilege, 28 C.F.R. § 16.26(b) identifies circumstances under which "disclosure will not be made by any Department [of Justice] official," in response to a demand. Included among those circumstances are where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26(b)(5).

The FBI reasonably declined to produce materials in response to the City's subpoena. The materials in question relate to an ongoing federal investigation into the letter received on January 22, 2019, and the purported attack of January 29, 2019. The federal government has a legitimate interest in preserving the confidentiality of those materials.

The City claims a strong interest in disclosure of the FBI's investigatory materials because those materials "bear directly on the primary question" of "whether or not Smollett faked his attack." R. 119. The City argues that, because the federal investigation has not resulted in charges and that the details of Smollett's state

5

prosecutions are public knowledge, the federal government no longer has a legitimate interest in the privacy of its investigative files. R. 119, 120.

The Seventh Circuit has held that a civil party's strong desire to obtain investigative materials does not warrant disclosure where there is a pending criminal investigation. It explained in *Dellwood Farms,* 128 F.3d at 1125, that a request like the City's is, fundamentally, a request that "the district court . . . mediate between their desire to expedite their civil litigation and the government's conduct of its criminal investigation. That is not a proper judicial role." The City (or any interested party in a criminal investigation, including a victim) "cannot force the government to prosecute the criminal; equally he cannot say to the government, 'Speed up your investigation, or get out of the way, because I want to seek a civil remedy.'" *Id.* Instead, "the control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights." *Id.* at 1126. Accordingly, the City's request for FBI files should be denied.

## II. The Court Should Refer the Litigation Regarding Grand Jury Materials to Chief Judge Pallmeyer

Any grand jury materials the City seeks are subject to the protections of Rule 6(e). *See* Fed. R. Civ. P. 6(e) (the government "must not disclose a matter occurring before the grand jury" unless a limited exception is applicable); 28 C.F.R. § 16.26(b)(1) (prohibiting DOJ officials from disclosing, in response to a subpoena, materials protected by Rule 6(e)).

Local Rule of Criminal Procedure 6.1 provides that "[t]he chief judge shall supervise the operations of the grand jury," and that "[a]ll matters pertaining to

6

grand juries shall be heard by the chief judge or his or her designee." As another court in this district has explained, "[b]ecause the secrecy of a federal grand jury is essential, jurisdiction over matters proceeding before the grand jury is vested in the United States district court that supervises the grand jury." *Markarian v. Alloian*, 836 F. Supp. 529, 531 (N.D. Ill. 1993) (Norgle, J.). For example, in *In re: Watts Coordinated Pretrial Proceedings*, Case No. 19 CV 1717 (N.D. Ill.) (Wood, J.), plaintiffs in consolidated civil cases sought grand jury material and Title III wiretaps related to federal charges. While Judge Wood was assigned to the civil case and oversaw the motion for access to Title III wiretaps, Chief Judge Pallmeyer adjudicated the motion as it related to grand jury material. Case No. 19 CV 1717, R. 153 at 1 n.1.

The same approach is appropriate here. Accordingly, the government requests that this Court refer the portion of the motion that seeks grand jury material to the Chief Judge. If this Court disagrees, or if, upon referral, the Chief Judge designates this Court to adjudicate the motion regarding the grand jury material, the government requests the opportunity to supplement this response.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   s/ Andrianna Kastanek
      ANDRIANNA KASTANEK
      Assistant United States Attorney
      219 South Dearborn Street, Room 500
      Chicago, Illinois 60604
      (312) 886-0974
      andrianna.kastanek@usdoj.gov